**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES HOUSE OF REPRESENTATIVES**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:14-cv-01967-RMC |
| | ) |
| **SYLVIA MATHEWS BURWELL**, in her official | ) |
| capacity as Secretary of Health and Human Services, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................1

Background ................................................................................................................3

I.    The Affordable Care Act ................................................................................3

II.    This Litigation ................................................................................................5

Argument ................................................................................................................7

I.    The House of Representatives Lacks Standing to Pursue This Action ...............7

    A.    The law of Article III standing protects the separation of powers .........7

    B.    The House has no legally protected interest in, and thus no actionable injury from, the manner in which the Executive Branch implements the law ................................................................................................9

        1.   "Vindication of the rule of law" is a generalized interest, which does not support standing ................................................................9

        2.   Congress cannot assert a legally cognizable interest in the manner in which federal law is implemented ................................................12

        3.   The separation of powers forecloses the House's claim of standing ...............16

        4.   Congress has a wide range of non-judicial measures that it may use to advance its interests ................................................................19

        5.   The House may not overcome the absence of any legally cognizable injury by asserting that the votes of its Members have been "nullified" .........20

II.    The House of Representatives Lacks a Cause of Action under the Declaratory Judgment Act ................................................................................................23

    A.    The Declaratory Judgment Act does not create a cause of action that is not provided for under other law ................................................................23

    B.    This Court should exercise its discretionary power under the Declaratory Judgment Act to dismiss the complaint ................................................24

Conclusion ................................................................................................................26

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page**

*Allen v. Wright*,
   468 U.S. 737 (1984) ................................................................................ 10

*Ange v. Bush*,
   752 F. Supp. 509 (D.D.C. 1990) ........................................................... 20

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) .................................................................................. 10

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ..................................................................... 2, 12, 24

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ...............................................................................12, 13

*C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*,
   310 F.3d 197 (D.C. Cir. 2002) ..............................................................23

*Campbell v. Clinton*,
   203 F.3d 19 (D.C. Cir. 2000) ...................................................... *passim*

*Chenoweth v. Clinton*,
   181 F.3d 112 (D.C. Cir. 1999) .............................................15, 19, 24, 26

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ......................................................................7, 8

*Coleman v. Miller*,
   307 U.S. 433 (1939) ..............................................................20, 21, 22

*Committee on Judiciary, U.S. House of Representatives v. Miers*,
   558 F. Supp. 2d 53 (D.D.C. 2008), *appeal dismissed*,
   No. 08-5357, 2009 WL 3568649 (D.C. Cir. 2009) ................................24

*Committee on Oversight and Gov't Reform, U.S. House of Representatives v. Holder*,
   979 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................24

*Common Cause v. Biden*,
   909 F. Supp. 2d 9 (D.D.C. 2012), *aff'd*, 748 F.3d 1280 (D.C. Cir.),
   *cert. denied*, 135 S. Ct. 451 (2014 ........................................................22

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ..................................................................................................6

*Daughtrey v. Carter,*
    584 F.2d 1050 (D.C. Cir. 1978) .................................................................11, 13, 25

*Dornan v. U.S. Sec'y of Defense,*
    851 F.2d 450 (D.C. Cir. 1988) ...............................................................................25

*Gem Cnty. Mosquito Abatement Dist. v. EPA,*
    398 F. Supp. 2d 1 (D.D.C. 2005), *appeal dismissed*, No. 05-5043,
    2005 WL 3789086 (D.C. Cir. 2005) ......................................................................23

*Harrington v. Bush,*
    553 F.2d 190 (D.C. Cir. 1977) .........................................................................15, 22

*Hollingsworth v. Perry,*
    133 S. Ct. 2652 (2013) ...............................................................................8, 10, 14

*Humphrey v. Baker,*
    848 F.2d 211 (D.C. Cir. 1988) ...............................................................................26

*INS v. Chadha,*
    462 U.S. 919 (1983) ...............................................................................................15

*Karcher v. May,*
    484 U.S. 72 (1987) .................................................................................................22

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...............................................................................7, 8, 10, 13

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803) ..................................................................................7

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ...............................................................................................24

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.,*
    501 U.S. 252 (1991) ...............................................................................................16

*Moore v. U.S. House of Representatives,*
    733 F.2d 946 (D.C. Cir. 1984) .................................................................................7

*Muskrat v. United States,*
    219 U.S. 346 (1911) ...............................................................................................18

iii

*Nat'l Fed'n of Indep. Business v. Sebelius*,
    132 S. Ct. 2566 (2012) ............................................................................3

*Nevada Comm'n on Ethics v. Carrigan*,
    131 S. Ct. 2343 (2011) ..........................................................................11

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................ *passim*

*Russell v. DeJongh*,
    491 F.3d 130 (3d Cir. 2007) ................................................................11

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ..............................................................................8

*Senate Select Comm. on Presidential Campaign Activities v. Nixon*,
    366 F. Supp. 51 (D.D.C. 1973) ...........................................................13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..............................................................................10

*The Confiscation Cases*,
    74 U.S. (7 Wall.) 454 (1869) ...............................................................13

*United Presbyterian Church in the U.S.A. v. Reagan*,
    738 F.2d 1375 (D.C. Cir. 1984) ...........................................................25

*United States v. Providence Journal Co.*,
    485 U.S. 693 (1988) ............................................................................13

*United States v. Richardson*,
    418 U.S. 166 (1974) ...................................................................8, 10, 13

*United States v. Windsor*,
    133 S. Ct. 2675 (2013) .................................................................. *passim*

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State*,
    454 U.S. 464 (1982) ..............................................................................9

*Walker v. Cheney*,
    230 F. Supp. 2d 51 (D.D.C. 2002) ...................................................8, 24

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..............................................................................7

iv

## Constitution and Statutes:

U.S. Const., art. I.................................................................................................... *passim*
U.S. Const., art. I, § 6, cl. 2......................................................................................13
U.S. Const., art. I, § 7, cl. 2......................................................................................19
U.S. Const., art. II, § 2, cl. 2 ....................................................................................13
U.S. Const., art. III ..................................................................................... *passim*
5 U.S.C. § 801 ..........................................................................................................19
5 U.S.C. § 808 ..........................................................................................................19
26 U.S.C. § 36B ..........................................................................................................3
26 U.S.C. § 36B(a)......................................................................................................4
26 U.S.C. § 4980H ......................................................................................................4
26 U.S.C. § 4980H(a) ..............................................................................................5, 6
26 U.S.C. § 4980H(b) .................................................................................................5
26 U.S.C. § 7805(a)....................................................................................................6
28 U.S.C. § 516 ........................................................................................................13
28 U.S.C. § 2201 ......................................................................................................23
42 U.S.C. § 18071 ......................................................................................................3
42 U.S.C. § 18071(a) .................................................................................................4
42 U.S.C. § 18071(c) .................................................................................................4
42 U.S.C. § 18082 ...................................................................................................3, 6
42 U.S.C. § 18082(c) .................................................................................................4
Pub. L. No. 111-148, 124 Stat. 119 (2010)................................................................3
Pub. L. No. 104-130, § 3(a)(1), 110 Stat. 1200, 1211 (1996)..................................16

## Rules and Regulations:

45 C.F.R. § 155.305(g) ..............................................................................................4
79 Fed. Reg. 8544 (Feb. 12, 2014) ........................................................................4, 5

## Legislative Materials:

156 Cong. Rec. H2153 (Mar. 21, 2010) .................................................................15
160 Cong. Rec. S1612 (Mar. 13, 2014) ...................................................................5
160 Cong. Rec. H3056 (Apr. 8, 2014) ...................................................................19
160 Cong. Rec. H7099 (July 30, 2014) ..................................................................15
H.R. 4138, 113th Cong. (2014) ...............................................................................5
H.R. Res. 676, 113th Cong. (2014) .........................................................................6

## Miscellaneous:

Alexis de Tocqueville, Democracy in America (H. Mansfield & D. Winthrop eds., 2000) .........18

**Introduction**

Through this lawsuit, the 114th House of Representatives seeks to superintend the Executive Branch's implementation of two provisions of the Affordable Care Act, a statute enacted by the 111th Congress.   Contrary to the House's allegations, the Executive Branch is faithfully implementing those provisions of law.   This Court, however, need not — and cannot — reach the merits of the House's claims, as jurisdiction is plainly lacking here.   *See Raines v. Byrd*, 521 U.S. 811 (1997).   A House of Congress may not — as it seeks to do here — maintain an action against the Executive Branch concerning its implementation of a statute.   This is "obviously not the regime that has obtained under our Constitution to date."   *Id.* at 828.

To the contrary, "[o]ur regime contemplates a more restricted role for Article III courts." *Id.*   Under Article III of the Constitution, federal courts may hear only actual cases or controversies:   that is, claims seeking redress for a concrete and particularized injury.   A generalized grievance — a plaintiff's mere interest in vindicating its views regarding the proper implementation of the law — cannot suffice.   This bedrock requirement for Article III jurisdiction applies equally to all plaintiffs, including Congressional ones.   Article III, therefore, does not permit a claim by a Congressional plaintiff that the Executive Branch has misapplied federal law.   As the Supreme Court has explained, standing may not be asserted on the basis of such a generalized claim of "the abstract dilution of institutional legislative power."   *Raines*, 521 U.S. at 826 (holding that individual Members of Congress lack Article III standing to challenge the constitutionality of the Line Item Veto Act).   Contrary to the entire premise of the plaintiff's suit here, the Supreme Court has made clear that federal courts do not sit to referee

this sort of an institutional dispute "between one or both Houses of Congress and the Executive Branch … on the basis of claimed injury to official authority or power."   *Id.*

The result could hardly be otherwise under our Constitutional system of the separation of powers.   Congress, through the process of bicameral passage of legislation and presentment to the President, enacts the laws.   The Executive Branch implements the laws.   And, in cases presenting a case or controversy requiring the adjudication of private rights, the Judicial Branch interprets the laws.   Under this system, "[o]nce Congress makes its choice in enacting legislation, its participation ends.   Congress can thereafter control the execution of its enactment only indirectly — by passing new legislation."   *Bowsher v. Synar*, 478 U.S. 714, 733-34 (1986).

The U.S. House of Representatives now asks this Court to decide a generalized, institutional dispute between the Executive Branch and one chamber of the Legislative Branch concerning the proper interpretation of federal law.   This novel tactic is unprecedented, and for good reason:   the House has no standing to bring this suit.   The House here asserts only that the Executive Branch is implementing statutory provisions, which were enacted by a previous Congress, in a manner different from what the current House would prefer.   Because the House does not suffer any concrete and particularized injury from the Executive Branch's implementation of federal law, this Court cannot decide the House's claim.

Moreover, even if it could overcome the Article III jurisdictional barrier to its suit, the House could not identify any cause of action for its claims.   The House appears to base its asserted cause of action in the Declaratory Judgment Act, but that statute creates only a remedy, not any judicially enforceable rights.   No other source of law, under either the Constitution or

existing statutes, gives the House the right to seek judicial relief to superintend the manner in which federal law is implemented.    If the House seeks to influence the execution of federal law, then, it may do so through the processes available to it under Article I of the Constitution, not through the vehicle of a suit in an Article III court.    Finally, even if a cause of action were theoretically available (which it is not), this Court should exercise its discretionary power under the Declaratory Judgment Act to dismiss this suit, which, if allowed to proceed, would upend the settled understanding of the separation of powers.

## Background

### I.    The Affordable Care Act

The 111th Congress enacted the Patient Protection and Affordable Care Act ("Affordable Care Act"), Pub. L. No. 111-148, 124 Stat. 119 (2010), "to increase the number of Americans covered by health insurance and decrease the cost of health care."   *Nat'l Fed'n of Indep. Business v. Sebelius*, 132 S. Ct. 2566, 2580 (2012).    The plaintiff here is the 114th United States House of Representatives.    It seeks to challenge the defendants' implementation of two components of the Affordable Care Act.

1.    In order to assist eligible individuals with the affordability of insurance on newly-created Exchanges, Congress enacted a system of premium tax credits, cost-sharing reduction payments, and advance payments of these subsidies.    26 U.S.C. § 36B; 42 U.S.C. §§ 18071, 18082.    The Act establishes federal premium tax credits to assist eligible individuals with household incomes from 100% to 400% of the federal poverty level to purchase insurance through the new Exchanges.    26 U.S.C. § 36B.    For eligible individuals with household income from 100% to 250% of the federal poverty level, the Act also provides for federal

payments to insurers to help cover those individuals' cost-sharing expenses (such as co-payments or deductibles) for insurance obtained through an Exchange.   42 U.S.C. § 18071(c)(2); 45 C.F.R. § 155.305(g).

The Affordable Care Act provides for a mandatory payment program of these subsidies by the Executive Branch.   The payment of the premium tax credit "shall be allowed" for eligible individuals.   26 U.S.C. § 36B(a).   Likewise, an eligible individual is statutorily entitled to receive cost-sharing reductions; the Act directs that the insurance issuer "shall reduce the cost-sharing under the plan" for such individuals under a formula specified by the statute. 42 U.S.C. § 18071(a)(2).   In turn, the insurance issuer has a legal right to payment for the amount of these cost-sharing reductions; "the Secretary shall make periodic and timely payments to the issuer equal to the value of the reductions."   42 U.S.C. § 18071(c)(3)(A).   The Act further directs that advance payments "shall" be made.   *E.g.*, 42 U.S.C. § 18082(c)(3).

2.   The Affordable Care Act also provides for a tax to be imposed on an applicable large employer if that employer fails to offer its full-time employees and their dependents health coverage that meets certain standards for affordable, minimum value coverage.   26 U.S.C. § 4980H.   In February 2014, the Department of the Treasury issued a final rule implementing Section 4980H.   79 Fed. Reg. 8544 (Feb. 12, 2014).   The rule reaffirmed transitional relief, which Treasury had previously announced, providing that the Section 4980H tax would not be imposed on any large employer for the 2014 tax year.   *Id.* at 8569-70.   The rule also provided for more limited transitional relief with respect to the 2015 tax year, in order to phase in its implementation.   In particular, a large employer with between 50 and 99 full-time employees will not be subject to a Section 4980H assessment for 2015, provided that it certifies that it has

4

maintained previously offered health coverage, and that it has not reduced the size of its workforce to meet this relief provision. *Id.* at 8574. In addition, for 2015, a large employer that offers coverage to at least 70% of its employees will be treated as offering coverage to its full-time employees (and thus would not be subject to a tax under Section 4980H(a), although it could be subject to a tax under Section 4980H(b)).[1] *Id.* at 8575. After 2015, that threshold rises to 95%. *Id.*

## II.    This Litigation

In March 2014, The 113th House of Representatives passed a bill entitled the "ENFORCE the Law Act," H.R. 4138, 113th Cong. (2014), which would have provided statutory authority for a suit by one or both Houses of Congress to challenge the manner in which executive officials implement federal laws. That bill was not passed by the Senate, and did not become law. Sponsors of the ENFORCE the Law Act acknowledged that, absent its enactment, "there is no standing of individual Members of Congress or even the entire body of the Senate or the body of the House to go to court" to challenge the implementation of existing federal law. *See* 160 Cong. Rec. S1612 (Mar. 13, 2014) (Sen. Blunt).

After failing in this attempt at legislation, the House pursued a different tactic. In July 2014, the House adopted a resolution, which purported to authorize the House to bring suit against Executive Branch officials to challenge the manner in which those officials implement

---

[1] An applicable large employer may be subject to a tax under Section 4980H in two ways. If that employer "fails to offer to its full-time employees (and their dependents) the opportunity to enroll" in health coverage, the employer may be subject to a tax under 26 U.S.C. § 4980H(a). Alternatively, if the employer does offer health coverage to its full-time employees and their dependents, but that coverage fails to meet the standards for minimum value and affordability, the employer may be subject to a tax under 26 U.S.C. § 4980H(b).

the Affordable Care Act.   H.R. Res. 676, 113th Cong. (2014).   The House now brings suit, pursuant to the authority that it purports to have granted to itself by adopting H.R. Res. 676. The complaint asserts that there has been no appropriation for payment of the statutorily-required reimbursement to insurers of the cost-sharing reductions.   The House's complaint also seeks to challenge Treasury's announcement of limited transitional relief for 2015 with respect to the Section 4980H large-employer tax, as well as the establishment of the 95% threshold for imposition of the Section 4980H(a) tax.   Compl. ¶¶ 51-108, ECF No. 1.

The House's statutory arguments are incorrect.   The cost sharing reduction payments are being made as part of a mandatory payment program that Congress has fully appropriated.   *See* 42 U.S.C. § 18082.   With respect to Section 4980H, Treasury exercised its rule making authority, as it has on numerous prior occasions, to interpret and to phase in the provisions of a newly enacted tax statute.   *See* 26 U.S.C. § 7805(a).   The merits of the House's complaint are not properly before this Court, however.   As shown below, this suit is not justiciable.

<u>Argument</u>

## I.    The House of Representatives Lacks Standing to Pursue This Action

### A.    The Law of Article III Standing Protects the Separation of Powers

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation omitted).   "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue."   *Raines*, 521 U.S. at 818.   The standing requirement protects the "overriding and time-honored concern about keeping the Judiciary's power within its

proper constitutional sphere." *Id.* at 820. *See also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."). The requirement of standing, accordingly, is "founded in concern about the proper — and properly limited — role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

In particular, Article III's case or controversy requirement ensures that courts exercise their proper role of determining the rights of parties, as opposed to exercising a general power of supervision over the government.  "'The province of the court,' … 'is, *solely*, to decide on the rights of individuals.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803)) (emphasis added). *See also Moore v. U.S. House of Representatives*, 733 F.2d 946, 959 (D.C. Cir. 1984) (Scalia, J., concurring in the judgment) ("we sit here neither to supervise the internal workings of the executive and legislative branches nor to umpire disputes between those branches regarding their respective powers"). To ensure that the courts perform this proper role, the Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines*, 521 U.S. at 819.

In order to establish "the irreducible constitutional minimum" of Article III standing, a plaintiff must adequately allege that it has suffered an injury in fact that is fairly traceable to the defendant's challenged actions, and that is redressible by the court. *Lujan*, 504 U.S. at 560-61. An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal

quotations omitted).   Legislators are not excused from this injury-in-fact requirement.   To the contrary, the Supreme Court has clearly established that Article III demands that any plaintiff, including a Congressional plaintiff, must demonstrate an injury in fact in order to invoke the court's jurisdiction.   *See Raines*, 521 U.S. at 830; *see also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662-63 (2013).   Moreover, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."   *Raines*, 521 U.S. at 819-20.

It is a foundational principle of Article III standing that "[o]ur system of government leaves many crucial decisions to the political processes," rather than directing the Judiciary to resolve every conceivable question under the laws of the United States.   *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974).   *See also United States v. Richardson*, 418 U.S. 166, 179 (1974); *Walker v. Cheney*, 230 F. Supp. 2d 51, 69 n.14 (D.D.C. 2002).   For the purposes of Article III standing, then, a plaintiff must establish that it has suffered its own legally cognizable injury, and it is simply irrelevant whether other parties could or could not bring a similar suit.   Thus, even if it were the case that "'no one would have standing'" if a particular plaintiff lacked standing, that "'is not a reason to find standing.'" *Clapper*, 133 S. Ct. at 1154 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 489 (1982) (internal quotation omitted)).

**B.** **The House Has No Legally Protected Interest in, and Thus No Actionable Injury from, the Manner in which the Executive Branch Implements the Law**

1. *"Vindication of the rule of law" is a generalized interest, which does not support standing*

The complaint fails to explain the basis for the House's asserted standing. It appears that the House seeks to maintain standing based on its assertion that the defendants are "usurping its Article I legislative authority" by misapplying a law enacted by a previous Congress. *E.g.*, Compl. ¶ 41. This assertion, however, is nothing more than a generalized claim that the Executive Branch is not acting in accordance with the law. Under this theory, a House of Congress could bring suit to challenge any allegedly incorrect interpretation of law by the Executive Branch. The Supreme Court has made clear, however, that standing may not be based on such a claim of an "abstract dilution of institutional legislative power" from the Executive's alleged failure to properly implement the law. *Raines*, 521 U.S. at 826.

In *Raines*, several Members of Congress challenged the constitutionality of the Line Item Veto Act of 1996, asserting that the statute had injured them by infringing on their power as legislators. 521 U.S. at 816. Although the Members had brought suit pursuant to a provision of the statute that authorized such a filing, the Supreme Court held that the plaintiffs lacked Article III standing. It noted that their claim asserted "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both Houses of Congress equally." *Id.* at 821. Because the plaintiffs' "claim of standing [was] based on a loss of political power, not loss of any private right," their asserted injury was not "concrete" for the purposes of Article III standing. *Id.*

9

In rejecting the plaintiffs' invitation to referee a generalized dispute concerning political power, the Supreme Court made clear in *Raines* that our constitutional system "contemplates a more restricted role for Article III courts," which is to protect "'the constitutional rights and liberties of individual citizens and minority groups against oppressive or discriminatory government action.'" *Id.* at 828-29 (quoting *Richardson*, 418 U.S. at 192 (Powell, J., concurring)). "'It is this role, not some amorphous general supervision of the operations of government, that has maintained public esteem for the federal courts and has permitted the peaceful coexistence of the countermajoritarian implications of judicial review and the democratic principles upon which our Federal Government in the final analysis rests.'" *Id.* at 829 (quoting *Richardson*, 418 U.S. at 192 (Powell, J., concurring)).

It is a foundational principle that a mere interest in the "vindication of the rule of law" is not a legally cognizable interest that could support a plaintiff's Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998). "[A]lthough a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Id.* at 107. Simply put, "'an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.'" *Hollingsworth*, 133 S. Ct. at 2662 (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)). *See also Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not do."); *Lujan*, 504 U.S. at

10

576-77.   It follows, therefore, that the House fails to allege a particularized, legally cognizable injury simply by asserting that the Executive Branch is not properly administering the law.

      This principle — that standing cannot be based on a generalized interest in vindicating the rule of law — applies fully in the context of an attempted suit by a Congressional entity. Members of Congress hold their seats "as trustee[s] for [their] constituents, not as a prerogative of personal power."   *Raines*, 521 U.S. at 821.   *See also Nevada Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2350 (2011) ("The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it.").   A legislative plaintiff, then, does not hold any legally protected interest in the proper application of the law that would be distinct from the interest held by every member of the public at large. Such an asserted injury, whether advanced by a member of Congress or a constituent, "is wholly abstract and widely dispersed," *Raines*, 521 U.S. at 829, and thus is not a legally cognizable injury for the purposes of Article III.   "Once a bill becomes law, a Congressman's interest in its enforcement is shared by, and indistinguishable from, that of any other member of the public." *Daughtrey v. Carter*, 584 F.2d 1050, 1057 (D.C. Cir. 1978).   *See also Russell v. DeJongh*, 491 F.3d 130, 134-35 (3d Cir. 2007) ("[T]he authorities appear to hold uniformly that an official's mere disobedience or flawed execution of a law for which a legislator voted … is not an injury in fact for standing purposes.   …   The principal reason for this is that once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government.").

2.       *Congress cannot assert a legally cognizable interest in the manner in which federal law is implemented*

The House may claim that its role in the enactment of legislation gives it a particularized injury when it disagrees with the manner in which the Executive Branch implements that legislation.   This claim cannot be reconciled with *Raines*, which explained that one Branch cannot assert standing based on a "claimed injury to official authority or power" arising from the actions of a coordinate Branch.   521 U.S. at 826.   In any event, the House's theory — that the legislative power is somehow "injured" by the Executive Branch's interpretation of existing law — is incoherent.   This theory confuses the role that Congress plays in enacting legislation with the role that the Executive Branch plays in implementing that legislation.   It is a fundamental constitutional principle that these two roles are distinct.   Simply put, Congress's power to enact legislation does not give it the power (either on its own or with the assistance of the Judiciary) to manage the implementation of federal law.

"The Constitution does not contemplate an active role for Congress in the supervision of officers charged with the execution of the laws it enacts."   *Bowsher v. Synar*, 478 U.S. at 722. To the contrary, "once Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly – by passing new legislation."   *Id.* at 733-34 (internal citations omitted).

The Article I legislative power does not vest the Legislative Branch with any power to bring litigation to vindicate federal law.   Rather, the "responsibility for conducting civil litigation in the courts of the United States for vindicating public rights … may be discharged only by persons who are 'Officers of the United States[.]'"   *Buckley v. Valeo*, 424 U.S. 1, 140

(1976) (quoting U.S. CONST., art. II, § 2, cl. 2).[2]   *See also id.* ("The Commission's enforcement power, exemplified by its discretionary power to seek judicial relief, is authority that cannot possibly be regarded as merely in aid of the legislative function of Congress.").[3]

This distinction between the enactment of federal law and the execution of federal law is critical to why the House lacks standing here.   Because Congress plays no direct role in the execution of federal law and has no continuing or distinct interest or stake in a bill once it becomes a law, Congress suffers no legally cognizable injury if that law (in Congress's view) is improperly administered.   It therefore may not assert standing to ask this Court to undertake the "'general supervision of the operations of government.'"   *Raines*, 521 U.S. at 829 (quoting *Richardson*, 418 U.S. at 192 (Powell, J., concurring)).   As Justice Scalia has recently explained, the Framers rejected a "system in which Congress can hale the Executive before the courts … to correct a perceived inadequacy in the execution of its laws."   *United States v. Windsor*, 133 S. Ct. 2675, 2703 (2013) (Scalia, J., dissenting).[4]

---

[2]   Underscoring this point, the Constitution forbids Members of Congress from serving as Executive Officers.   U.S. CONST., art. I, § 6, cl. 2.

[3]   *Buckley* disposes of the House's apparent assertion that it has the authority to bring this suit as "the United States, i.e., the United States House of Representatives, which is a component of the United States government."   Compl. ¶ 6.   As a constitutional matter, neither Congress nor one of its Houses may bring suit on behalf of the United States.   *See Buckley v. Valeo*, 424 U.S. at 140.   Instead, litigation on behalf of the United States is solely a function of the Executive Branch.   *See* 28 U.S.C. § 516; *United States v. Providence Journal Co.*, 485 U.S. 693, 701 (1988); *The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458-59 (1869); *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 56 n.8 (D.D.C. 1973).

[4]   Every Member of the Court who addressed the issue in *Windsor*, in which the House of Representatives intervened to defend the constitutionality of Section 3 of the Defense of Marriage Act, agreed that a House of Congress would not have standing to litigate whether the

13

The Supreme Court's recent decision in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), is instructive on this score.   The petitioners were the official proponents of a ballot initiative that adopted a state constitutional amendment.   A federal district court invalidated the initiative, and the state officials responsible for implementing the law declined to take an appeal.   The proponents of the initiative appealed, asserting standing due to their "unique, special, and distinct role" in "the process of enacting the law."   *Id.* at 2662 (internal quotations omitted).   The Supreme Court rejected this claim of standing.   "Petitioners have no role — special or otherwise — in the enforcement of Proposition 8.   …   They therefore have no 'personal stake' in defending its enforcement that is distinguishable from the general interest of every citizen of California."   *Id.* at 2663.

The same is true here.   The role that Congress played in enacting that statute does not give it, let alone one of its chambers, a "personal stake" in the manner in which that statute is now implemented.   The House accordingly does not have standing to bring suit to assert that the Executive Branch is improperly administering federal law.   *See Campbell v. Clinton*, 203 F.3d 19, 22 (D.C. Cir. 2000) (Congressional plaintiffs do not "have standing anytime a President

---

Executive Branch is properly implementing existing federal law.   The majority opinion did not have occasion to address the question of the House's Article III standing, holding that a private plaintiff's "claim for funds that the United States refuses to pay" gave the United States, represented by the Attorney General, Article III standing to proceed on appeal.   133 S. Ct. at 2686.   As noted in the text, in his dissent, Justice Scalia, joined by two other Justices on this issue, reasoned that the House lacked Article III standing.   *Id.* at 2703-04 (Scalia, J., dissenting).   Justice Alito separately dissented.   Writing only for himself with respect to this issue, he reasoned that "in the narrow category of cases in which a court strikes down an Act of Congress and the Executive declines to defend the Act," Congress has standing to defend the statute.   *Id.* at 2714 (Alito, J., dissenting).   Justice Alito, however, expressly distinguished cases concerning the proper "enforcement" of federal law, as opposed to the "defense" of the validity of the law.   *Id.* at 2714 n.3 (Alito, J., dissenting).

allegedly acts in excess of statutory authority").   This result does not change even if the House

frames the Executive's supposedly illegal action as a "usurpation" of its legislative authority,

including its appropriations authority.   The D.C. Circuit rejected the materially identical claim

in *Chenoweth v. Clinton*, 181 F.3d 112 (D.C. Cir. 1999), in which the Congressional plaintiffs

claimed injury as a result of what they characterized as "the President's successful effort to usurp

Congressional authority" by exceeding his statutory authority, and by spending funds that had

not been appropriated.   *Id.* at 116 (internal quotation omitted).   Applying the Supreme Court's

holding in *Raines*, the court of appeals held that such a claimed "usurpation" could not be

"sufficient to satisfy the standing requirement."   *Id.   See also Harrington v. Bush*, 553 F.2d

190, 213 (D.C. Cir. 1977) (agency's alleged misuse of appropriations "does not invade the

lawmaking power of Congress or appellant; all the traditional alternatives related to the 'power

of the purse' remain intact").

Moreover, the "Article I legislative power" that the House apparently invokes as the basis

for its standing, Compl. ¶ 41, is not one that the House may exercise on its own.[5]   The

legislative power may be exercised only through the Article I process of enacting law, which

includes the bicameral passage of a measure by both Houses of Congress and its presentment to

the President.   *See INS v. Chadha*, 462 U.S. 919, 954-55 (1983) (a Congressional

---

[5]   And in any event, the injury that the House asserts, even if it were legally cognizable (which it is not), would be an injury to the 111th Congress that enacted the Affordable Care Act, not to the 114th House of Representatives.   It is noteworthy that no Member of Congress who voted to enact the Affordable Care Act also voted to adopt H.R. Res. 676.   *Compare* 156 Cong. Rec. H2153 (Mar. 21, 2010) *with* 160 Cong. Rec. H7099 (July 30, 2014).   It would be particularly anomalous if legislators who opposed an enactment by the Congress later were able to sue purportedly to "vindicate" the implementation of legislation that they thought never should have been passed in the first place.

"[d]isagreement with the Attorney General's decision … no less than Congress' original choice to delegate to the Attorney General the authority to make that decision, involves determinations of policy that Congress can implement in only one way; bicameral passage [of a bill] followed by presentment to the President"). *See also Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 276 (1991). The House may not use the vehicle of a lawsuit to circumvent the Article I process for the enactment of legislation, which includes the participation of the Senate and the actual enactment of a bill into law.[6] There is no authority under the Constitution, therefore, for one House of Congress to seek to direct the implementation of federal law, apart from the bicameral enactment of legislation that is presented to the President. No matter how the House characterizes its asserted injury in its pleadings, then, it lacks any legally cognizable injury from the Executive Branch's alleged failure to implement the law properly.

3.       *The separation of powers forecloses the House's claim of standing*

As noted, the Constitution contemplates a carefully-defined separation of Congress's power to enact the law, the Executive's power to implement the law, and the Judiciary's power to interpret the law. The House seeks to upset this finely wrought balance by attempting to control the implementation of federal law, outside the Article I procedures for the enactment of

---

[6] *Raines* makes clear that Congress or the House would lack standing, even if (unlike here) that body purported to bring suit under authority granted by bicamerally-enacted legislation. The legislator plaintiffs in that case sued under a statutory provision that purportedly granted Members of Congress standing to sue. *See* Line Item Veto Act of 1996, Pub. L. No. 104-130, § 3(a)(1), 110 Stat. 1200, 1211. The Supreme Court held that such a statute could not overcome the Article III requirement of standing, even if it could overcome prudential barriers to suit, and that the legislator plaintiffs had not asserted the legally cognizable injury that is required for constitutional standing. *Raines*, 521 U.S. at 820 n.3.

legislation by bringing a suit premised on its disagreement with the Executive Branch's interpretation of that law.   Such a system would be unrecognizable to the Framers, or to Congresses and Administrations throughout this Nation's history.

As the Supreme Court recited in *Raines*, "[i]t is evident from several episodes in our history that in analogous confrontations between one or both Houses of Congress and the Executive Branch, no suit was brought on the basis of claimed injury to official authority or power."   521 U.S. at 826.   For example, the Tenure of Office Act, by purporting to limit the Presidential removal power, "was a thorn in the side of succeeding Presidents" during the Nineteenth Century.   *Id.*   Despite the "bitter political battle being waged between the President and Congress," it did not occur to any of the Presidents during this time "that they might challenge the Act in an Article III court."   *Id.* at 827.   "There would be nothing irrational about a system that granted standing in these cases [to Congress or to the Executive to resolve inter-Branch disputes]; some European constitutional courts operate under one or another variant of such a regime.   But it obviously is not the regime that has obtained under our Constitution to date.   Our regime contemplates a more restricted role for Article III courts …."   *Id.* (internal citations omitted).

Likewise with attempted suits by a Congressional entity against the Executive, an allegation of "the impairment of a branch's powers alone [cannot confer] standing to commence litigation" between the Branches.   *Windsor*, 133 S. Ct. at 2704 (Scalia, J., dissenting). Although *Raines* involved a suit by individual Members of Congress, the lack of standing for a House of Congress follows directly from the Court's reasoning there.   The explication in *Raines* of the history of inter-Branch conflicts, which were resolved without litigation, shows that we do

17

not have a "system in which Congress can hale the Executive before the courts not only to vindicate its own institutional powers to act, but to correct a perceived inadequacy in the execution of its laws." *Windsor*, 133 S. Ct. at 2703 (Scalia, J., dissenting). Such a system "would lay to rest Tocqueville's praise of our judicial system as one which 'intimately bind[s] the case made for the law with the case made for one man,' one in which legislation is 'no longer exposed to the daily aggression of the parties,' and in which '[t]he political question that [the judge] must resolve is linked to the interest' of private litigants." *Id.* at 2703-04 (Scalia, J., dissenting) (alterations in original; quoting Alexis de Tocqueville, DEMOCRACY IN AMERICA 97 (H. Mansfield & D. Winthrop eds., 2000)). If the House's theory of standing were to be adopted, the long-settled limitations of Article III standing "would be replaced by a system in which Congress and the Executive can pop immediately into court, in their institutional capacity, whenever the President refuses to implement a statute he believes to be unconstitutional, and whenever he implements a law in a manner that is not to Congress's liking." *Id.* at 2704 (Scalia, J., dissenting).

Neither the House nor the defendants could obtain an advisory opinion from an Article III court concerning the interpretation of the Affordable Care Act provisions that the House cites here. *See, e.g.*, *Muskrat v. United States*, 219 U.S. 346, 361-62 (1911). Those issues are no more suitable for resolution by an Article III court here merely because the House has put its request in the form of a complaint and named as defendants the officers of the Executive Branch who hold a different view.

18

4. *Congress has a wide range of non-judicial measures that it may use to advance its interests*

It would be particularly inappropriate to accord the House standing here, given the options that are otherwise available to it. To be clear, the House, like any other plaintiff, does not suffer a legally cognizable injury for the purposes of Article III simply because the Executive Branch has not followed its views regarding the proper implementation of federal law. The House's interest in vindicating its interpretation of pre-existing law is only a generalized one shared with every member of the public. This remains the case whether or not the House has alternative means available to itself to advance its views regarding the interpretation or implementation of the law. But, in any event, Congress has a wide range of non-judicial measures that it may use to advance its interests in the event it disagrees with the Executive Branch's implementation of a statute. Congress, for example, could repeal or amend the terms of the regulatory or appropriations authority that it has vested in the Executive Branch, under laws enacted through the Constitutionally-prescribed procedures of bicameralism and presentment. U.S. CONST., art. I, § 7, cl. 2; *see Raines*, 521 U.S. at 824; *Campbell*, 203 F.3d at 23; *Chenoweth*, 181 F.3d at 116.[7] Moreover, "[i]f majorities in both Houses of Congress care enough about the matter, they have available innumerable ways to compel executive action without a lawsuit – from refusing to confirm Presidential appointees to the elimination of

---

[7] Notably, under the Congressional Review Act, Congress may review regulations adopted by federal agencies, and it may bicamerally adopt joint resolutions of disapproval of those regulations. 5 U.S.C. §§ 801-08. The Department of the Treasury transmitted to Congress the very regulation implementing Section 4980H that the House now seeks to challenge. *See* 160 Cong. Rec. H3056 (Apr. 8, 2014). No resolution of disapproval under the Congressional Review Act was adopted, or even introduced, with respect to that regulation.

funding.   (Nothing says 'enforce the Act' quite like '… or you will have money for little else.')"   *Windsor*, 133 S. Ct. at 2704-05 (Scalia, J., dissenting) (ellipses in original).   In short, "Congress has a broad range of legislative authority it can use" to influence the implementation of federal law, "and therefore under *Raines* congressmen may not challenge [the Executive Branch's implementation of federal law] in federal court."   *Campbell*, 203 F.3d at 23.

This "does not suggest that any of the above options are appropriate or necessary." *Ange v. Bush*, 752 F. Supp. 509, 514 (D.D.C. 1990).   Nor does this "suggest that any of them would be politically popular for legislators."   *Id.*   Whether or not the House believes that it would be more convenient to bring a lawsuit than to invoke the procedures that Article I prescribes for Congress to affect matters outside the Legislative Branch, the point is that the resolution of this inter-Branch dispute "lies in the responsible exercise of existing powers already belonging to the political branches."   *Id.* at 515.

5.      *The House may not overcome the absence of any legally cognizable injury by asserting that the votes of its Members have been "nullified"*

Finally, the House may not assert standing based on any claim that its Members' votes have been "nullified" within the meaning of *Coleman v. Miller*, 307 U.S. 433 (1939).   *Coleman* upheld the standing of state legislators, in a case brought to the Supreme Court on direct review from a state supreme court, to litigate the alleged "nullification" of their votes against ratification of a constitutional amendment.   The basis for the result in *Coleman* is "very narrow," *Campbell*, 203 F.3d at 23, and clearly has no application here.

In *Coleman*, the Kansas State Senate deadlocked on a 20-to-20 vote to ratify a constitutional amendment, the state's Lieutenant Governor cast a deciding vote in favor of the

amendment, and the amendment was deemed ratified.   The state senators who voted against the amendment, joined by an additional senator, filed an action in the Kansas Supreme Court seeking "to compel a proper record of legislative action," contending that the federal Constitution did not permit the Lieutenant Governor to cast a vote.   307 U.S. at 437.   The state court accorded the senators standing as a matter of state law, but ruled against them on the merits.   The Supreme Court of the United States affirmed, and held that the senators had standing to assert a claim that their "votes against ratification [had] been overridden and virtually held for naught," where those votes "would have been sufficient to defeat ratification."   *Id.* at 438.

The Supreme Court has expressly recognized the limited nature of its holding in *Coleman*, and that holding has no application here.   As the Supreme Court has more recently put the matter, "[i]t is obvious, then, that our holding in *Coleman* stands (at most) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified."   *Raines*, 521 U.S. at 823 (internal citation omitted).   In other words, "[i]t would seem the Court used nullify to mean treating a vote that did not pass as if it had, or vice versa."   *Campbell*, 203 F.3d at 22.   "The Court did not suggest in *Raines* that the President 'nullifies' a congressional vote and thus legislators have standing whenever the government does something Congress voted against, still less that congressmen would have standing anytime a President allegedly acts in excess of statutory authority."   *Id.*

Moreover, for two additional reasons, the holding in *Coleman* could not apply in a case such as this one that is brought in federal court by Members of Congress.   First, it is significant

that the state court had treated the legislators' asserted injury "'as a basis for entertaining and deciding the federal questions.'"   *Raines*, 521 U.S. at 824 n.8 (quoting *Coleman*, 307 U.S. at 446).[8]   *Coleman*, then, could not apply in a case brought in the first instance in federal court. *Cf. Karcher v. May*, 484 U.S. 72, 81-82 (1987) (treating state legislators' authority to sue on behalf of their state government as a matter of New Jersey law).   Second, the holding of *Coleman* should not extend to a suit by federal legislators, because such a suit would raise "separation-of-powers concerns" that were not implicated in *Coleman*.   *Raines*, 521 U.S. at 824 n.8.   *See also Harrington v. Bush*, 553 F.2d at 205 n.67 ("A separation of powers issue arises as soon as the *Coleman* holding is extended to United States legislators."); *Common Cause v. Biden*, 909 F. Supp. 2d 9, 26-27 (D.D.C. 2012), *aff'd on other grounds*, 748 F.3d 1280 (D.C. Cir.), *cert. denied*, 135 S. Ct. 451 (2014).[9]

*Coleman*, then, is completely inapposite here.   There is no claim here seeking "a proper record of legislative action," *Coleman*, 307 U.S. at 437, concerning the validity of the votes of individual Members of the House.   To the contrary, it is common ground that the Affordable Care Act was validly enacted into law.   Instead, the House simply disagrees with the manner in which the defendants are implementing the Affordable Care Act, years after its enactment,

---

[8]   The Supreme Court in *Raines* noted that the appellees had raised these additional potential grounds upon which *Coleman* could be distinguished, but did not reach these grounds in its decision.   521 U.S. at 824 n.8.

[9]   *Coleman*, further, presented an "unusual situation" that has no application to the ordinary federal legislative process.   *Campbell*, 203 F.3d at 22.   After the constitutional amendment was "deemed ratified," there was substantial doubt whether the plaintiff legislators "could have done anything to reverse that position."   *Id.* at 22-23.   Here, in contrast, a majority of Congress retains the power to use the Article I legislative process; the defendants have not infringed on that power in any way.   *See Raines*, 521 U.S. at 824; *Campbell*, 203 F.3d at 23.

contending that the defendants have exceeded their statutory authority.   But "[t]he failure or refusal of the executive branch to execute accomplished legislation does not affect the legal status of such legislation; nor does it invade, usurp, or infringe upon a Congressman's power to make law."   *Daughtrey*, 584 F.2d at 1057.   The House, accordingly, has no standing, under a "nullification" theory or otherwise, to challenge the Executive Branch's implementation of federal law.

## II.      The House of Representatives Lacks a Cause of Action under the Declaratory Judgment Act

### A.      The Declaratory Judgment Act Does Not Create a Cause of Action that Is Not Provided for Under Other Law

Just as it has failed to justify its claim of standing, the House does not attempt to identify in its complaint any source of law that would provide a cause of action.   It simply recites that "[t]his Court has authority to issue a declaratory judgment" under the Declaratory Judgment Act, 28 U.S.C. § 2201.   Compl. ¶ 9.   Thus, the House apparently rests its complaint upon its belief that this statute provides it with a cause of action.   But the Declaratory Judgment Act creates only a remedy, and does not provide a plaintiff with any cause of action not provided for under other law.[10]   "Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right."   *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (internal quotation and alteration omitted).   *See also Gem Cnty. Mosquito Abatement Dist. v. EPA*, 398 F. Supp. 2d 1, 12 (D.D.C. 2005), *appeal dismissed*, No. 05-5043, 2005 WL 3789086 (D.C. Cir. 2005).

---

[10]   Moreover, the House overlooks that the Declaratory Judgment Act does not provide relief "with respect to Federal taxes."   28 U.S.C. § 2201.

No source of law, either statutory or constitutional, gives Congress as a whole — or the House acting alone — any cause of action to sue the Executive Branch to challenge the implementation of federal law.   To the contrary, as explained above, the House has no direct constitutional role in the implementation of law.   *See, e.g.*, *Bowsher v. Synar*, 478 U.S. at 733 ("once Congress makes its choice in enacting legislation, its participation ends.").   It is, accordingly, unsurprising that no Constitutional or statutory provision affords a House of Congress the right to patrol the execution of federal law through a lawsuit against the Executive Branch.   *See Walker v. Cheney*, 230 F. Supp. 2d at 73 ("the role of the Article III courts has not historically involved adjudication of disputes between Congress and the Executive Branch based on claimed injury to official authority or power").[11]

## B.     This Court Should Exercise Its Discretionary Power under the Declaratory Judgment Act to Dismiss the Complaint

In any event, even if a cause of action were available under the Declaratory Judgment Act, this Court should nonetheless exercise its discretionary power under that Act to dismiss the complaint.   The Declaratory Judgment Act "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."

---

[11]   Two decisions of this Court have concluded that Congress's Article I investigatory power accords a basis for a suit by a House committee to enforce a subpoena against an Executive official.   *See Committee on Oversight and Gov't Reform, U.S. House of Representatives v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013); *Committee on the Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008), *appeal dismissed*, No. 08-5357, 2009 WL 3568649 (D.C. Cir. 2009).   But there is no Article I power to implement federal law that is analogous to Congress's investigatory power.   Thus, even under the (incorrect) reasoning of these cases, the House would not have a cause of action to maintain the suit it seeks to prosecute here.   *See Miers*, 558 F. Supp. 2d at 75 ("[A]lthough Congress does not have the authority to enforce the laws of the nation, it does have the 'power of inquiry.'").

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal quotation omitted).   If ever there were a case for the exercise of such discretion, it would be this case.   So far as the defendants are aware, this suit is entirely without precedent; neither House of Congress has ever before attempted the tactic of declaring its own interpretation of existing law, and then suing over the Executive Branch's contrary interpretation.   This dispute between the Branches is, at its heart, a political one, and this Court should exercise its discretionary power to avoid entangling itself in this political dispute.

The courts in this Circuit have exercised this discretionary power to avoid enmeshing themselves in disputes among, or within, the political Branches.   Before the Supreme Court decided *Raines*, the D.C. Circuit occasionally accorded standing to legislators under narrow circumstances (which are not present here).[12]   The court of appeals also directed, however, that such suits should be dismissed as a matter of "equitable discretion," and that legislative plaintiffs should instead pursue the remedies available to them in the political process.   *See, e.g.*, *Dornan v. U.S. Sec'y of Defense*, 851 F.2d 450, 451 (D.C. Cir. 1988) (relying on doctrine of equitable discretion to summarily affirm dismissal of suit brought by Members of Congress "asking this

---

[12]   These cases reasoned that legislators would have standing to bring "a claim founded on injury to the legislator by distortion of the process by which a bill becomes law," but at the same time emphasized that, even under this theory, legislators could not bring a claim based on "a generalized grievance about the conduct of government."   *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984).   This line of authority was overruled by *Raines*.   *See Chenoweth*, 181 F.3d at 116.   In any event, the House has alleged only the latter sort of injury here, and so it would lack standing even under the D.C. Circuit's prior, and now overruled, case law.   *See, e.g.*, *Daughtrey*, 584 F.2d at 1057 (legislators do not have standing to challenge the manner in which the Executive Branch implements federal law).

court to tell the President how to carry out the duties of his office," because the plaintiffs could seek to enact legislation providing the same relief).

Although the House's lack of standing and lack of a cause of action make it unnecessary to engage in an equitable discretion analysis here, the same result would hold. The House seeks relief from this Court, but has a variety of legislative means available to counter the Executive Branch. Fundamental principles of the separation of powers dictate that legislators should pursue their legislative options, rather than using the courts to vent purely political grievances. "Under the doctrine of equitable discretion, the availability of an internally available remedy to Members of Congress means that it would be an abuse of discretion for the judiciary to entertain the action." *Humphrey v. Baker*, 848 F.2d 211, 214 (D.C. Cir. 1988). Thus, even if the House had Article III standing to pursue the claims it has alleged — and to be clear, it does not — this Court should nonetheless exercise its discretionary power under the Declaratory Judgment Act to dismiss the complaint. *See Chenoweth*, 181 F.3d at 116 (suit would be subject to dismissal as a matter of "equitable discretion," because Congress could enact legislation "were a sufficient number in each House so inclined," and "the parties' dispute is therefore fully susceptible to political resolution").

## Conclusion

For the foregoing reasons, the defendants respectfully request that the complaint be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of those rules.

26

Dated: January 26, 2015

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

KATHLEEN R. HARTNETT
Deputy Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

JENNIFER D. RICKETTS
Director

SHEILA LIEBER
Deputy Branch Director


    /s/ Joel McElvain
JOEL McELVAIN
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
(202) 514-2988
Joel.McElvain@usdoj.gov

*Counsel for the Defendants*