**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| UNITED STATES HOUSE OF REPRESENTATIVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-cv-01967-RMC |
| ) | |
| SYLVIA MATHEWS BURWELL, ) | |
| in her official capacity as Secretary of the United States ) | |
| Department of Health and Human Services, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

# EXHIBIT N

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES HOUSE OF          :
REPRESENTATIVES,                :
                                :        Docket No. CA 14-1967
          Plaintiff,            :
     vs.                        :          Washington, D.C.
                                :        Thursday, May 28, 2015
                                :             10:07 a.m.
SYLVIA M. BURWELL               :
                                :
          Defendant.            :
--------------------------x



TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:          ELENI ROUMEL, Esquire
                            KERRY W. KIRCHER, Esquire
                            TODD B. TATELMAN, Esquire
                            U.S. House of Representatives
                            219 Cannon Building
                            Washington, DC  20515

                            JONATHAN TURLEY, Esquire
                            George Washington University
                            Law School
                            2000 H Street, NW
                            Washington, DC  20052

For the Defendant:          JOEL MCELVAIN, Esquire
                            SHELIA LIEBER, Esquire
                            U.S. Department of Justice
                            20 Massachusetts Ave., NW
                            Washington, DC  20001

1   Appearances continued:

2   Court Reporter:              CRYSTAL M. PILGRIM, RPR, FCRR
                                 Official Court Reporter
3                                United States District Court
                                 District of Columbia
4                                333 Constitution Avenue, NW
                                 Washington, DC  20001

5

6   Proceedings recorded by machine shorthand, transcript produced
    by computer-aided transcription.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  Civil Action 14-1967, United

3   States House of Representatives versus Sylvia M. Burwell.  For

4   the plaintiff, Eleni Roumel, Kerry Kircher, Todd Tatelman and

5   Jonathan Turley.  For the defense, Joel McElvain and Sheila

6   Lieber.

7          THE COURT:  Good morning, everybody.

8          We're here today for oral argument on the government's,

9   the Government, the Executive's, so sorry, the Executive's

10  motion to dismiss the lawsuit filed by the House of

11  Representatives on the premise that the House of

12  Representatives does not have standing to sue the Executive.

13          Because it's the Executive's motion, I think the

14  Executive should start the argument.  Because the issue is

15  whether the lawsuit and the House of Representatives will

16  survive and they bear the burden, it bears the burden of

17  proving standing, I'm going to allow each party to argue twice.

18  That means you should think a little bit about how much time

19  you want to take for your first arguments so that we're not

20  here all day because we can't be because I have other things to

21  do.  It's not that I don't love you and think this is very

22  important, but I do have other things to do.

23          So let me say that I have read briefs, I've read all of

24  the briefs more than once.  I've read, I don't know that I've

25  read all of the cases that you've cited, but I've read a number

1  of them, and I am not finished thinking about it.

2      The other thing I wanted to assure everybody is that

3  this is a question of standing, and I'm not in the Government

4  philosophy business.  It's up to the congress and the President

5  to decide what the law is; that is, passing of laws.  They

6  pass, I just judge.  All right.

7      Sir, are you going to speak, Mr. McElvain?

8          MR. MCELVAIN:  Yes, I am, Your Honor.

9          THE COURT:  Well then if you would, please come

10  forward.  And it's nice to have you, sir.

11          MR. MCELVAIN:  It's nice to be here, Your Honor.

12          THE COURT:  Please.

13          MR. MCELVAIN:  Good morning, Your Honor, and may it

14  please the Court.  It is a foundational principle of Article

15  III that Courts are to adjudicate actual cases or

16  controversies, not to exercise a general power of supervision

17  over the workings of Government.

18      The House now asks this Court to ignore that principle

19  and to permit it to litigate an abstract dispute with the

20  executive branch over the implementation of federal law.

21          THE COURT:  You don't really think that.

22          MR. MCELVAIN:  As a matter of fact I do, Your Honor.

23          THE COURT:  Well I have a very hard time taking that

24  statement seriously, so why don't you tell me why you think

25  it's really so.

1        MR. MCELVAIN:  Well let me spin it out a little bit

2   more.  If I can refer the Court to the Supreme Court's decision

3   in Raines versus Byrd and a line of other precedents, which

4   make clear for three interconnected reasons that the House

5   lacks standing to litigate this abstract dispute.

6        First, under the settled precedent, the House lacks any

7   legally cognizable interest of its own in the administration of

8   law that has already been enacted.

9        Second, and it follows from the first principle, that the

10  only interest that the House can assert here is a general

11  interest in a desire to vindicate the rule of law.  But this is

12  a generalized interest which it shares with all of its

13  constituents, and such a generalized interest cannot support a

14  claim of a concrete and particularized injury, which is a

15  requirement of Article III standing.

16       Third, if standing were to be accorded to the House

17  here, that itself would violate fundamental principles of the

18  separation of powers.  Congress does not play a direct and

19  active role in the supervision of officials charged with the

20  executions of the laws it enacts after that statute is enacted.

21  That function is reserved to the executive branch, not to the

22  legislature.

23       What is more, in addition to those three interconnected

24  reasons why the House lacks standing, the House cannot identify

25  any cause of action that would permit it to proceed here.

1          THE COURT:  That is a different point.

2          MR. MCELVAIN:  That is a different point, yes, Your

3     Honor.

4          THE COURT:  Thank you.  Okay.

5          MR. MCELVAIN:  Yes.  So let me backtrack a little bit

6     and discuss the first of the three interrelated reasons

7     congress lacks a legally cognizable injury in the

8     administration of the law.  As the Supreme Court in Raines made

9     clear, a claim of, quote, an abstract dilution of institutional

10    legislative power --

11         THE COURT:  Well that part I know, that part I know.

12    What I'd like to understand is why you think that this is just

13    an abstract disagreement of law?

14       Your brief, which is very well written, doesn't actually

15    address what the House is complaining about.  You smooth it

16    over, you don't actually address it.

17         The House of Representatives is complaining that they

18    affirmatively debated, they affirmatively decided not to fund a

19    provision in the affirmative care -- no, Affordable Care Act --

20    wait ACA, okay.  Patient protection, whatever, statute.  Excuse

21    me, ma'am, I don't mean to be insulting to you.

22         They affirmatively voted no, no money for the offset

23    provisions.  The Senate agreed.  That's how the bill came out,

24    that's what the President signed.

25         MR. MCELVAIN:  And we disagree with that reading.  We

1  believe that there is a full appropriation for these payments,

2  so we have a disagreement over how the law is to be

3  implemented.

4       THE COURT:  Well I understand that you have a

5  disagreement over that, but I want to know where you find the

6  appropriation?

7       MR. MCELVAIN:  I need to back up a second and refer

8  to the Affordable Care Act.  So the Affordable Care Act

9  establishes a system of tax credits, cautionary reduction

10 subsidies and advanced payments of both.  All of these payments

11 are part a unified program of mandatory payments; the Act

12 directs that these are mandatorily to be paid.

13      THE COURT:  No, no, no, no.  Now where does the Act

14 declare that they're mandatorily to be paid?

15      MR. MCELVAIN:  This gets into the merits which we

16 haven't briefed, Your Honor.

17      THE COURT:  No, no, I'm sorry, it doesn't.  Because

18 the question to me, because everything that you've argued, oh,

19 this is just abstract and everything, it really depends on

20 whether you're right.

21      MR. MCELVAIN:  No, Your Honor.

22      THE COURT:  Is it really abstract or how close to the

23 bone has the secretaries come to the bone of the House of

24 Representatives' authority?  That's what I'm trying to figure

25 out.  You have described it, it's just a disagreement on

1  implementation of law, that happens all the time.  They don't

2  have any right to sue.

3        To the extent that's a fair statement, you're probably

4  right.  I just can't decide whether that's actually a fair

5  statement.  So you have to provide a detailed premise for why I

6  should accept the cast that you have put to what is I think a

7  very serious agreement.

8        Whether the House has standing is a matter that's

9  different from whether the actions of the secretaries are

10  lawful.

11            MR. MCELVAIN:  Correct.

12            THE COURT:  Okay.  That raises another question.  Do

13  the secretaries have different interests here?

14            MR. MCELVAIN:  No, Your Honor.

15            THE COURT:  What about under the Antideficiency Act?

16            MR. MCELVAIN:  The Antideficiency Act isn't

17  implicated because there is an appropriation for its payments.

18            THE COURT:  That's so circular.  Okay.

19        Now tell me where the appropriation is.

20            MR. MCELVAIN:  So under 31 USC 1324 there's an

21  appropriation available for the payment of the tax refunds

22  under Principles of Appropriations Law a unified program of

23  mandatory payments that Congress intended to be treated

24  together is paid from the same source.  So the same source is

25  available for all forms of the advanced payment of the subsidy.

1           That's our view of the merits, which again, we haven't

2    briefed here, which would require further explication.

3           THE COURT:  Well I'm not asking you to give me your

4    brief.  I understand that that comes next.

5           What I'm asking you is for an explanation as to why you

6    think it's merely a dispute over implementation instead of an

7    insult to the Constitution, which is what the House of

8    Representatives accuses.

9           MR. MCELVAIN:  Because in our understanding we have

10   an appropriation available to make these payments.  The House

11   disagrees and it's entitled to disagree.

12          THE COURT:  But you didn't in FY2014.

13          MR. MCELVAIN:  No, we've had a permanent

14   appropriation full-time.

15          THE COURT:  In the FY2014 budget the administration

16   asked for money for this specific purpose.  They didn't get any

17   money.

18          MR. MCELVAIN:  There was --

19          THE COURT:  Now wait.

20          MR. MCELVAIN:  I'm sorry.

21          THE COURT:  The administration asked for money, it

22   was voted down, the President signed the appropriation without

23   any money.  These are the facts that are in the complaint.  I'm

24   not saying -- that's what the complaint says.  The money was

25   spent anyway.

1            Now who came up with the idea that after all we asked

2      for it, we admitted we needed to ask for it, we agreed it

3      should be in our budget, but oh, we've come up with a legal

4      argument that we don't need to do that?

5            MR. MCELVAIN:  There was initially a request and then

6      later the administration realized that there was a permanent

7      appropriation that made the request unnecessary.

8            THE COURT:  Okay.  And so it's not just a question of

9      efficiency, which is what Secretary Burwell said?

10           MR. MCELVAIN:  Correct.  And there's an appropriation

11     available.  But again, just to back this up a moment, our view

12     of standing does not turn in any way whatsoever on the merits.

13           THE COURT:  Well, I appreciate that, that your view

14     doesn't.  But your argument turns to a certain extent on

15     whether there's a real disagreement here, a substantive

16     disagreement that the House of Representatives might be able to

17     have standing on.  And so you can disagree with me, but I

18     happen to be the judge.

19           MR. MCELVAIN:  Of course.

20           THE COURT:  So it's very helpful if you didn't stand

21     there and just nod your head.

22           MR. MCELVAIN:  I'm sorry, I meant no disrespect.

23           THE COURT:  I didn't take it as disrespectful.  I'm

24     just saying you have to grapple with me.  You can't just shake

25     your head and say no, no, I don't have to answer that question.

1   So deal with me about this.

2          MR. MCELVAIN:  Of course, Your Honor.

3          THE COURT:  Thank you.  I appreciate it.

4          MR. MCELVAIN:  At the end --

5          THE COURT:  Because I had trouble finding it in your

6   brief.  There are like three places where you allude to the

7   fact that, oh well, we think we have lawful money, but you

8   don't actually say anything.

9          MR. MCELVAIN:  Because we have not briefed the merits

10  because nothing of our standing theory turns on the merits.

11         THE COURT:  So if it --

12         MR. MCELVAIN:  You can assume that they are right and

13  they still lack standing to litigate here.

14         THE COURT:  Okay.  So then the breath of your

15  standing position is that the House of Representatives as an

16  equal branch of Government could never sue the President, the

17  Executive?  I don't want to say President because I don't want

18  to make this personal, so I'll try to call them the House and

19  you the Executive.  But I will of course goof, but bear with

20  me.

21         MR. MCELVAIN:  The House cannot sue the

22  administration, the executive branch, or the implementation of

23  existing federal law.  There may be other circumstances where a

24  congressional plaintiff could sue where there's a specific

25  concrete and particularized injury for that congressional

1  plaintiff.  But that's not what we have here.  This is very

2  different.

3           THE COURT:  Well what about Chadha?

4           MR. CRAWLEY:  I'm sorry?

5           THE COURT:  What about Chadha?

6           MR. MCELVAIN:  I think Chadha is, puts the capstone

7  on the Executive's theory here because Chadha made that the

8  legislature acts only through bicameralism and presentment.  It

9  can't do -- it can't --

10          THE COURT:  No, no, no, but I'm talking about

11 standing, I'm not talking about -- I'm talking about the fact

12 that without the House and the Senate there, there would have

13 been nobody to litigate because the attorney general was

14 agreeing.  Or am I on DOMA?  Maybe I'm on DOMA.  I could be

15 confusing them.

16          MR. MCELVAIN:  Well, actually Chadha and the DOMA

17 case are very similar in this respect.

18          THE COURT:  They are.

19          MR. MCELVAIN:  There was a private party whose rights

20 were at stakes in that case.  Chadha would have been deported

21 if the case came out one way, he wouldn't have been deported if

22 the case came out another way.  And Windsor, Ms. Windsor would

23 have received a tax refund one way or she wouldn't have.

24          THE COURT:  Except that everybody agreed below that

25 she should, and so the case really didn't have adversariness to

1  it without the House and the Senate.  And if they could

2  constitute legitimate adversaries for purposes of Supreme Court

3  review of DOMA, then why can they not constitute legitimate

4  adversaries here?

5          MR. MCELVAIN:  That's not the holding of Windsor.  If

6  you look to majority opinion in Windsor, what the Supreme Court

7  said was that the Article II case or controversy was the

8  dispute between Ms. Windsor and the executive branch which was

9  declining to issue the tax refund in the absence of a court

10 judgment directing it to do so.  That was the case or

11 controversy.

12         THE COURT:  But you cited me to Justice Scalia in

13 dissent.

14         MR. MCELVAIN:  Correct.

15         THE COURT:  So I went and I read Justice Scalia in

16 dissent, and he goes on and on and on about the need for the

17 House and Senate to be -- and goodness knows, Justice Scalia is

18 one who very firmly takes a very narrow view of standing.  But

19 he clearly writes that the House and Senate were the only

20 entities present that created adversariness for the Supreme

21 Court review because otherwise the attorney general wasn't

22 adverse to Ms. Windsor.

23         MR. MCELVAIN:  Justice Scalia's reason, and I do

24 commend his opinion to you because I think it's very persuasive

25 here.  But first, grounds not directly presented here, he

1    disagreed with the majority on whether the attorney general,

2    the President or the attorney general created a case or

3    controversy.  Having disposed of that, he then needed to turn

4    on to the alternative possibility as to whether the presence of

5    the House would have been a proper party petitioner I guess in

6    the case.

7        And he very clearly reasoned that under the logic of

8    Raines, the House could not present an Article III case or

9    controversy on its own because the legislative branch lacks any

10   cognizable injury in the administration of the laws.

11       So we've cited Justice Scalia's dissent to you not

12   because it's controlling, of course it's not, it's a dissent,

13   but because he has a very clear explication of what Raines

14   means and why Raines applies to a claim even by the House as a

15   whole.

16       THE COURT:  Okay.  So one of the things that you say

17   the House can do in the alternative is to pull funding.

18       MR. MCELVAIN:  Of course.

19       THE COURT:  It did that.

20       MR. MCELVAIN:  Well again, we disagree that they did

21   that.  We have a disagreement as to what the meaning of the

22   current appropriation statutes are.  But they could pass

23   another statute that says directly there shall be no funding

24   for this.  Of course we would comply with that.  And they have

25   any number of other tools.

1          They could repeal the underlying authority, they could

2    repeal the cautionary reductions whatsoever.  They could

3    decline consent to legislation on other issues that the

4    administration prefers.  They could decline confirmation of

5    nominees that the administration hopes to seek --

6              THE COURT:  The House can't do that though.

7              MR. MCELVAIN:  The congress can though.  I mean,

8    that's --

9              THE COURT:  Yes, well right now you have the House of

10   Representatives here.  They are the ones who do appropriating

11   and that's why they're here, because the Senate doesn't have

12   the same role in appropriations that the House does.

13             MR. MCELVAIN:  Actually, I think that's not quite

14   right.  There's actually an active dispute between the House

15   and the Senate as to what the powers of the respective Houses

16   are as to appropriations authority.  It's not really, it's not

17   here or there.

18             THE COURT:  It's neither.

19             MR. MCELVAIN:  It's neither here nor there for this

20   case.

21             THE COURT:  Right.  We don't actually have to resolve

22   that one.  I'm just going to look at standing if you don't

23   mind.  I'm having a hard enough time with this.

24        Okay.  I've interrupted you enough.  Keep going.

25             MR. MCELVAIN:  So to return to the three primary

1   reasons why the House lacks standing.  First, under the

2   reasoning of Raines, they lack a legally-cognizable interest,

3   whether proceeding as the House as a whole or as individual

4   members of Congress.  They lack a legally-cognizable in the

5   administration of the laws.

6          THE COURT:  And what about the statement at Raines at

7   the very end that the Court noted with to be significant or,

8   I'm not sure that was the word, that the full House had not

9   authorized the lawsuit?

10         MR. MCELVAIN:  Correct.  They made note of that fact

11  and they said we need not decide in this case whether the

12  outcome would be different in another case.  So they did not --

13         THE COURT:  But I do.

14         MR. MCELVAIN:  Of course.  I mean, they do not

15  formally decide in that case a claim brought institutionally by

16  the House.

17      But the reasoning of Raines compels the same result.

18         THE COURT:  Okay.

19         MR. MCELVAIN:  If you go through the three pages of

20  the historical discussion of a long history of very bitter

21  disputes between the legislature and the Executive, including

22  the Tenure of Office Act, the two political branches were

23  really at very close loggerheads at many times in our history.

24  And in Raines the Court emphasized that these sorts of

25  interbranch disputes have never been thought to a Court's

1  standing to one branch or the other to sue the other political

2  branch.

3        In analogous confrontations between one or both houses

4  of congress and the executive branch, no suit was brought on

5  the basis of claimed injury to official authority or power.

6  And that's 521 U.S. at 826.  And the Court went on to recite

7  there would be nothing irrational about a system that granted

8  standing in these cases.

9            THE COURT:  I actually have read the case.

10            MR. MCELVAIN:  Oh, of course.

11            THE COURT:  So you don't have to read it out load,

12  okay?

13            MR. MCELVAIN:  Okay.  So the bottom line that the

14  Court was presenting was that this is obviously not the regime

15  that has obtained under our constitution to date.  Perhaps in

16  other systems or under a different constitution it would be

17  perfectly fine for two branches to present questions to the

18  judiciary to decide without the presence of a private party,

19  but that's not the regime that exists here as the Raines court

20  described our history of our Article III jurisprudence.

21            THE COURT:  Okay.

22            MR. MCELVAIN:  Another way to look at it is if you

23  consider the Census case which was initially cited by the

24  plaintiffs and also discussed in our reply brief, U.S. House of

25  Representatives versus Department of Commerce.  This is a

1   three-judge panel from the D.C. District Court which postdates

2   Raines, which had to do with the House's request for

3   information of a particular form relating to the census from

4   the executive branch.  And there the District Court did find

5   that the House of Representatives had standing to bring that

6   claim because it had standing to assert a right to particular

7   information which they had by statute, and it could litigate

8   its own composition.  So there was a particularized injury to

9   the House itself.

10       But what's interesting about the District Court opinion

11  there is it took very close care to distinguish that very

12  particular injury that the House suffered on its own from a

13  claim that the House could litigate the general administration

14  of the law as it referred to the specter of general legislative

15  standing and took care to distinguish that standing for the

16  House under the particular circumstances of that case, did not

17  mean that the House could sue generally over the enforcement of

18  the laws under the reasoning of Raines and the long line of

19  Supreme Court authority demanding a particularized injury.

20       Now what's a footnote to that is that case went up to

21  the Supreme Court, the Supreme Court dismissed the House's --

22            THE COURT:  I promise, I even -- I really did read

23  your brief.

24            MR. MCELVAIN:  I just need to cover the bases, Your

25  Honor.

```
 1                THE COURT:  Okay.

 2                MR. MCELVAIN:  Please bear with me.

 3           So the footnote that I need to add is that the executive

 4  branch does not necessarily agree that even that case was

 5  correctly decided, but we don't need to wade into that here.

 6  What's interesting is even given standing in that case, that is

 7  very, very, very different from the claim that the House is

 8  asserting here.

 9                THE COURT:  Have you read the brief that was, the

10  amicus brief that was filed here by five or six states?

11                MR. MCELVAIN:  I have.

12                THE COURT:  The position of those states, there's

13  West Virginia, Texas -- I'm sorry that I'm not able to rattle

14  off the five or six states.  The position that they take is

15  that there's an argument being presented by the agencies

16  recently that no one can attack what the Executive is doing.  I

17  mean, that in every lawsuit attacking some aspect of mostly

18  ACA, but not entirely, the very first flush response of the

19  administration is you can't sue us.  Whoever you are, you don't

20  have standing.

21           And sometimes that comes out and the judge agrees, and

22  sometimes that comes out and the judge doesn't.  But those

23  states see that automaticity of that response to be alarming of

24  their own state's rights.  What's your response to that?

25                MR. MCELVAIN:  Well, I just don't think it's material
```

1  here.  I mean, there are other cases where other standing

2  issues may arise or may not.  I disagree with the factual

3  premise.  I mean, there are cases that do precede without

4  standing being disputed.

5          THE COURT:  Well, but the factual premise is that the

6  Government or that the executive in each of the states, each of

7  the instances that they cite, has forcefully taken a no

8  standing position and then only retreated when a judge did find

9  standing, if the judge did.  Sometimes the judge agreed.  But,

10  I mean, that, that doesn't surprise you?

11          MR. MCELVAIN:  I just think that each case needs to

12  be evaluated on its own terms.  And if there's no standing

13  here, there's no standing here.  In other cases there may be

14  standing or there may not.

15          THE COURT:  You're not getting my point.

16      My point that I'm asking you is, is the Executive taking

17  a full bore thrust?  Our response to any challenge is, you

18  don't have standing to sue us?  Because that is the concern

19  expressed by those states.

20      So I'm asking you whether that, what's the response to

21  the perception of those states that that's what the Executive

22  says?  The President can act unilaterally, you can't sue?

23          MR. MCELVAIN:  The answer to your question is no,

24  each case is evaluated on its own terms.  If a party has

25  standing, the party has standing and the case goes forward.  If

1    the party doesn't have standing, then we have a duty to present

2    that Article III difficulty to the Court.

3              THE COURT:  I don't disagree with that statement in

4    the least.  Go ahead.

5              MR. MCELVAIN:  Okay.  So again, I mentioned there are

6    three interlocking reasons why the House lacks standing here.

7    And so, we've already discussed --

8              THE COURT:  Well you did one.

9              MR. MCELVAIN:  Correct.

10             THE COURT:  So did you want to do anything specific

11   about two or three?

12             MR. MCELVAIN:  Absolutely.

13             THE COURT:  The general intent interest to vindicate

14   the rule of law?

15             MR. MCELVAIN:  Right.  So under fundamental

16   principles the House lacks or any plaintiff lacks standing to

17   assert just a generalized interest in the vindication of

18   federal law.  This has been repeated by the Supreme Court over

19   and over, notably in the Hollingsworth versus Perry case.  And

20   that case I think is interesting because the parties seeking

21   review in that case were the proponents of the ballot

22   referendum that was at issue.

23             And what they said was, well we have a particularized

24   injury because we played a special role in the enactment of

25   this referendum.  We were the ones who put it forward and

1 financed the campaign and what have you.  And the Supreme Court

2 said no, you're misconceiving the inquiry, you may or may not

3 have had a special role in enacting that provision, but you

4 have nothing to do with the enforcement of the provision after

5 if has gone into effect.  And, therefore, you lack any

6 particularized injury in the enforcement or not of that

7 provision or the particular details of how it was enforced.

8         THE COURT:  Okay.  So I'm sorry to be backing up, but

9 you don't disagree as a matter of fact that the House of

10 Representatives debated and decided not to appropriate money

11 for 1402 in 2014?

12         MR. MCELVAIN:  Well --

13         THE COURT:  And for 2015?

14         MR. MCELVAIN:  There was no additional appropriation

15 after the permanent appropriation that was tied into with the

16 passage of the Affordable Care Act.  Is that responsive to your

17 question?

18         THE COURT:  That's, that's your ultimate answer, but

19 I have a little bit of a more specific question.  The House of

20 Representatives and the Senate discussed and decided through

21 the process that they use, so take this as discussed and

22 decided, that they would not fund 1402.  And so, whatever,

23 however you want to read the law later, that you think that --

24 this is my question:  That you think that the funding for 1401

25 carried over to 1402; is that -- that's right?  Is that not

```
 1   correct what you're saying?

 2          MR. MCELVAIN:  There's a system of advanced payments,

 3   they're both forms of the subsidy and the advanced payments are

 4   paid together.  And because they are paid together, they come

 5   from the same source under principals of appropriations law.

 6   So both sources come from the same permanent appropriation

 7   as --

 8          THE COURT:  Okay.  That's fine.

 9          MR. MCELVAIN:  Okay.

10          THE COURT:  But let me back up a minute to my

11   question, which is, at the time that the House was looking at

12   the appropriation for 2014, it at least thought that it needed,

13   because of course the administration had asked specifically for

14   money for 1402, right?

15          MR. MCELVAIN:  There was initially a request and that

16   request was later withdrawn because the administration took a

17   second look and realized that there were principles of

18   appropriations law that made the request unnecessary.

19          THE COURT:  Okay.  There was a request and the House

20   said no money; is that correct?

21          MR. MCELVAIN:  I'm actually not sure.  I think the

22   matter was considered in the committee.  I don't know if it

23   actually went -- if there was ever any actual vote.  There was

24   certainly no legislation enacted saying no money.

25          THE COURT:  Right.
```

1        MR. MCELVAIN:  It just didn't proceed to a vote.

2        THE COURT:  Neither the House nor the Senate included

3   money for the line item that people thought was going to turn

4   into 1402 money, neither House appropriated money for that line

5   item in fiscal '14; is that right?

6        MR. MCELVAIN:  Because the administration didn't push

7   the request because the request was unnecessary, there was

8   already an appropriation in place.  This is our view of the

9   merits, which --

10       THE COURT:  No, I'm not talking about merits.  I'm

11  not talking about law, I'm talking about fact.  I just want to

12  get the facts straight.  It's important to me to understand the

13  facts.

14       I'm sure the House of Representatives can, I mean, they

15  described some of this in their brief.  Neither House

16  appropriated money for the line item of 1402 as had originally

17  at least been requested by the administration; is that not

18  true?

19       MR. MCELVAIN:  It did not lead to the passage of a

20  statute appropriating more money.  I agree with that.

21       THE COURT:  It did lead to the passage of a statute

22  appropriating money, it's just that statute -- and the

23  President signed it, but that statute did not fund 1402

24  offsets; is that correct?

25       MR. MCELVAIN:  There's no separate appropriation.

1   There's a prior appropriation that's in place under our --

2           THE COURT:  You know --

3           MR. MCELVAIN:  I'm sorry, I'm not trying to dodge

4   your question, Your Honor.

5           THE COURT:  You are dodging my question.  I want you

6   to answer me as a matter of fact.  I know what your legal

7   position is, you have now articulated it for the first time.

8       I want to know as a matter of fact, the administration

9   asked for money, the House said no, the Senate said no, there

10  was no appropriation when the appropriation bill was signed by

11  the President.  At some point you say during that fiscal '14

12  process the administration changed its position and decided it

13  didn't need to ask for money.

14      I don't know that at all.  That is not in front of me,

15  no one has told me that.  I'm trying to figure out, the House

16  had before it a request for money, the Senate had before it a

17  request for money, and both houses said no money; is that

18  correct?

19          MR. MCELVAIN:  The reason that I'm -- that perhaps

20  we're communicating past each other here is that last sentence

21  is something I can't disagree with.  There was no legislation

22  from the House or Senate saying no money.  I do agree -- but

23  I'm sorry --

24          THE COURT:  Of course there isn't.  Not in the

25  appropriate process.  You either appropriate money or you

1    don't.

2            MR. MCELVAIN:  Right.

3            THE COURT:  Nobody says, oh, and we're not, unless

4    you do it partially.  Sometimes you can appropriate money for

5    an agency and say, you get all of this but you can't spend any

6    penny of it on X.

7            MR. MCELVAIN:  Right.  And that's --

8            THE COURT:  That's one way to do it.

9            MR. MCELVAIN:  And that's why I think I'm having

10   trouble conveying the idea I'm trying to express to you.  I am

11   trying to answer your question.

12       There is no statute that says no fund shall be spent on

13   X.  There just was an absence.  By the same token, there was no

14   2014 appropriation specifically appropriating funds here.  So

15   we're not --

16           THE COURT:  There was a line item number that went

17   with the 1402 offset.

18           MR. MCELVAIN:  Oh, no, Your Honor, that's not from

19   the statute.  That's from internal budget papers.

20           THE COURT:  Yes, I agree.

21           MR. MCELVAIN:  Okay.

22           THE COURT:  In the budget request from the

23   administration from the, probably it was both Treasury and HHS

24   together because Treasury pays, but HHS authorizes, so I'm not

25   sure who has the money.  There was a line item specifically for

1   this purpose, number 0014, whatever, you understand my point.

2   There's an accounting line for it.

3          MR. MCELVAIN:   Right.   And if your question is was

4   there an additional 2014 statute passed providing for those

5   funds, the answer is no.   We're not relying on a 2014 statute.

6   We're relying on a preexisting permanent appropriation.

7          THE COURT:   Okay.   You don't disagree that there was

8   no money appropriated in 2014 for that purpose?

9          MR. MCELVAIN:   There was no 2014 statute

10  appropriating new money.   There was a preexisting permanent

11  appropriation.

12         THE COURT:   That's your legal position.

13         MR. MCELVAIN:   Correct.

14         THE COURT:   I'm trying to get just -- I understand

15  that.   Nevermind, you've answered my question.   But this is the

16  problem I have with your brief:   It's not direct.   It's just

17  not direct.   You have to address the argument that they make

18  and you haven't.

19         MR. MCELVAIN:   I disagree, Your Honor.   Our views of

20  the merits are irrelevant to the question of standing.

21  Standing is logically prior.   You can assume that they are

22  right under legal theory.   We disagree under legal theory, but

23  you can assume that they are right under legal theory.

24         THE COURT:   Well you see, if you really agreed with

25  them, and I guess I have to take their facts as their facts

1  because you refuse to disagree, they say that they

2  affirmatively said no money for this purpose.  And, I mean,

3  that's how they voted, no money for this purpose, and the

4  administration has gone on spending billions of dollars.  Now

5  if that's absolutely true, it's a different question then if

6  it's really an issue of statutory interpretation.

7          MR. MCELVAIN:  No, Your Honor.

8          THE COURT:  Whether it's a budget --

9          MR. MCELVAIN:  I'm sorry, I didn't mean to cut you

10 off.

11         THE COURT:  Thank you.  Whether it's a budget we're

12 interpreting or not, are you saying that it's your legal

13 position that the House of Representatives could say we will

14 fund lines 1 through 10 and 12 through 20, but not 11, and the

15 President, any President, could still spend money for line 11?

16         MR. MCELVAIN:  This case is exactly the same as the

17 binding D.C. authority of Chenoweth versus Clinton.  In

18 Chenoweth the plaintiffs allege precisely this:  That there was

19 no appropriation, not just a disagreement over the meaning of a

20 particular appropriation statute.

21         The plaintiff's allegation was there was no

22 appropriation whatsoever, and that the executive branch was

23 spending unappropriated funds.

24         THE COURT:  Right.

25         MR. MCELVAIN:  The D.C. Circuit considered that to be

1  irrelevant, it did not wait until the merits, the merits were

2  not briefed.  It assumed that allegation to be true for the

3  purposes and it still held that there was no standing.

4         THE COURT:  And so it is your position that if the

5  House of Representatives and the Senate both affirmatively

6  voted down a proposal to fund something, and it went in an

7  appropriations bill to the President who signed it, that that

8  vote could be ignored by the administration because after all

9  no one can sue them?

10        MR. MCELVAIN:  No, I wouldn't say that that vote

11  could be ignored.  What I'm saying is that the House or the

12  Senate or individual members of congress don't vindicate that

13  interest in a court of law.  They refer to their political

14  remedies which are numerous as to the executive branch.

15        THE COURT:  And that's the only way that they can

16  respond if they have affirmatively voted down money, but it's

17  spent anyway?

18        MR. MCELVAIN:  They have any number of ways:  They

19  can pass a new statute; they can repeal the underlying

20  regulatory authority; they can decline to enact other

21  legislation preferred by the administration.  The conversation

22  between the two political branches is continuous and ongoing,

23  and the negotiations are complex and multi varied over many

24  issues going over time.  So there are any number of tools that

25  the legislature can use to exert its influence on the executive

1  branch.  It does not need reference to the judiciary, which is

2  why we've never seen a lawsuit like this one in the last 230

3  years.

4          THE COURT:  Okay.  Thank you, sir.

5          MR. MCELVAIN:  Thank you.

6          THE COURT:  I didn't mean to give you a hard time.

7          MR. MCELVAIN:  It's okay.  Again, I apologize, I

8  wasn't trying to dodge the question.  I think that I may have

9  been talking past you, but.

10          THE COURT:  Thank you.

11          MR. MCELVAIN:  Yes.  So we've discussed two of the

12  three --

13          THE COURT:  I think it's Mr. Turley's turn.

14          MR. MCELVAIN:  Of course.

15          THE COURT:  I actually think I got your argument.

16          MR. MCELVAIN:  Thank you, Your Honor.

17          THE COURT:  Thank you, sir.

18          MR. TURLEY:  Good morning, Your Honor.

19          THE COURT:  Good morning, sir.

20          MR. TURLEY:  Jonathan Turley representing the United

21  States House of Representatives.  I would like to address a few

22  of the issues that the Court has raised.

23          Specifically, the administration, in its briefs, put

24  together something of a peddler's wagon of lots of reasons and

25  issues that are involved here.  We view this as relatively

1    simple.  As was explored by the Court and as was conceded by

2    opposing counsel, there are three accepted facts for the

3    purposes of this motion:  First, congress never appropriated

4    money for the 1402 program.  Second, the administration came

5    back to congress and asked for an annual appropriation and was

6    rebuffed.  Third, the administration then ordered the payment

7    of billions of dollars from the treasury.  There's nothing

8    abstract about that and we don't think it's particularly

9    complex.

10        Now I have to correct my esteemed colleague in one

11   respect.  The Court asked specifically about whether the

12   congress stated that you did not have funding for 1402.  And I

13   may be putting words in his mouth, but I believe counsel said

14   that it did not.  If you look on page 14 of our brief, the

15   committee report on page 123 says quite clearly there is no

16   mandatory appropriation for 1402.

17        And when the Department of Justice says that we're

18   really relying on principals of appropriation, I am still --

19   it's still a mystery to me what those principals are.  I'm

20   familiar with some principals.  One easy one is that when you

21   have a provision that does expressly state funding and then you

22   have a provision that follows immediately in the aftermath that

23   does not have that provision, you assume that congress knows

24   what it's doing when it appropriates for one and not the other.

25   And of course I'm referring to 1401 where funding was expressly

1    approved and 1402 where it was not.

2          Now on those three facts we believe that we have

3    established what can only be viewed as a concrete entry.  As

4    with the Court's questioning, I find it astonishing that this

5    case would be called an abstraction.  Now the administration

6    has committed $175 billion without congressional approval.

7    That constitutes $300 million a month.  That's what being paid

8    out this month.  If that's an abstraction, the entire budget is

9    illusory.

10          THE COURT:  Okay.  But let me interrupt you.

11          MR. TURLEY:  Of course, Your Honor.

12          THE COURT:  Fair is fair.

13          A hard point for you is indeed Chenoweth, where the D.C.

14   Circuit said, "It's uncontested that the House could terminate

15   this program if a sufficient number in each House were so

16   inclined.  But the party's dispute is therefore fully

17   susceptible to political resolution and we dismiss the

18   complaint to avoid meddling in the internal affairs of the

19   legislative branch."

20          MR. TURLEY:  Yes.  Thank you, Your Honor.  We believe

21   that Chenoweth actually supports our position in a couple of

22   respects.  First, we did that.  Congress has made the decision

23   here.  This is not a case -- first of all, it was brought by

24   four members of congress.  That's what Chenoweth primarily

25   turned on.

```
1        Four members of congress came to essentially try to

2   dictate the results between the two branches.  That was

3   rejected.  Second, the congress has done everything that the

4   courts talk about; that is, they made the decision.  They said

5   no appropriation.  And what the administration says well, could

6   you come back and do something else?

7        Well, first of all, there's no law to repeal because

8   they're acting without authority.  There is no law that gives

9   them the authority to make these appropriations.  And it's not

10  just clear in the law, it's clear in the constitution.  It's

11  Article I, you require an express appropriation, they don't

12  have it.

13       But then finally, what we would suggest with Chenoweth

14  is that, you know, there's an old saying that all generals tend

15  to fight the last war.  The administration seems to be fighting

16  the last case.  Actually not the last one, they lost the last

17  few cases.  But they still seem to be arguing as if this is an

18  individual legislature standing case.  The cases they keep on

19  coming back to like a mantra are those cases where --

20           THE COURT:  Well, that's the point at which Raines,

21  which is otherwise complex, but not in your favor.  Raines at

22  the very end says, and of course we don't even have the full

23  House of Representatives here and that's somewhat significant.

24  So you're right that you do have by formal determination the

25  full House of Representatives, all 594 or so of them, sitting
```

1   here.  That's why the courtroom is so full.

2       Now the Government's response is yeah, but you have to

3   look at the reasoning of Raines, and the reasoning applies

4   regardless of whether it's the full house or the partial house.

5   This is ultimately a battle between the congress and the

6   administration and they battle things out in the political

7   sphere as they did in the 19th Century.  They love those cases

8   from the 19th Century where no one ever sued.

9       And the House of Representatives, the Senate, they got

10  very much in the President's face about tenure of office, but

11  he put up with it, so never sued them.  So why should you be

12  able to sue them?

13      MR. TURLEY:  Well I think it's a very good reason,

14  and to put it into historical context, and as a law professor I

15  feel more comfortable in the 18th Century.  I feel more

16  confusion in this century.

17      But the problem I have with those cases is that, first

18  of all, let's start with Raines where the Court began with.  If

19  the Court was really intending to say there's no such thing

20  anymore as a legislative standing, they went about it in a

21  pretty curious way.  They didn't say that.  They did not throw

22  out the decision in Coleman.  They said it would be tough.  And

23  there's been a debate as to where the line rests between

24  Raines, where you had just six members of Congress going before

25  the Court, and the present case, where you have the entire

1  House of Representatives before this Court.

2       I would suggest that wherever that line is we don't need

3  to draw it, but it is certainly south of where we are.  I mean,

4  no Court in history has said that a House of congress does not

5  have the institutional standing to bring forth a constitutional

6  injury.  And of all the constitutional injuries we could bring

7  forth, this is the big ticket item.

8       I mean, the problem with the logic of the administration

9  is it doesn't explain Miers or AT&T or Holder or Census case.

10 All of those are cases that follow the Raines' decision and

11 found standing for the House of Representatives.  It doesn't

12 explain Windsor.  The fact is that the Court has never rejected

13 standing for the House of Representatives nor could it because

14 that would mean that the Court has spent decades to finding

15 this absolute right of Congress.  But it turns out according to

16 the Department of Justice, it has absolutely no enforcement in

17 the federal courts.

18      And I guess what I would ask the judge, respectfully,

19 is, does that track with what the Court understands about the

20 framers?  That they spent so much time in the convention

21 balancing these powers, creating an independent judiciary, but

22 that this power of the purse can be effectively decorative

23 because the President can order appropriations.

24      I want to correct something about the appropriations.

25 You know, the administration keeps on coming back and saying we

1  have a permanent appropriations.  And I just want to put that

2  into context.  If this is a permanent appropriation, then it is

3  effectively an open account on the United States Treasury.  You

4  could have -- not have a more serious situation.

5       There are annual appropriations, which is what

6  originally the administration asked for.  That is what most

7  federal programs have.  That's one option congress has.  A

8  second option is no appropriations, which is what happened

9  here.  This is a complex scheme.  These involve payments to

10 insures.  Congress did not approve the appropriation.  Now

11 there's a lot of reasons for that, but we don't have to get

12 into them.

13      And then the third one is what the administration is

14 claiming.  And that's what is really the sticker shock moment.

15 It's referring to the tax refund account.  You're talking about

16 an account that's there for Medicare and for judgments.  These

17 are things where congress allows for payments to be made

18 without annual submissions.

19      The suggestion of the administration that it has such

20 permanent appropriations is just baffling.  I mean, that would

21 mean that there's nothing that we could do that would stop them

22 because we've already done what we're suppose to do.  We've

23 already said you don't get appropriations under this provision.

24 So no matter what we do according to all those myriad of things

25 that we do, it doesn't change that fact.  We've done what we

1    are suppose to do.

2         So what I would submit to the Court is that of all of

3    the cases we've had, if you look at Miers, AT&T, Holder, Census

4    case, many of these dealt with subpoena powers.  And the

5    arguments being made by my able opposing counsel are identical

6    to the arguments that were made in those cases.  And they were

7    rejected and they're trying again.  But what they're trying to

8    fashion is something new that is, let's not make any mistake

9    about it, every child in this country is told as a mantra that

10   the definitional power of congress is the power of the purse.

11        That's what it's all about, right?  These things that we

12   all carry around in terms of the constitution are the owners'

13   manual.  And in that owners' manual it stays that the congress

14   is defined by this power as a check on the administration.

15        If the administration is correct, it can use some

16   undefined notion of appropriations principals to say, yeah, we

17   asked you for appropriation, but after you turned us down, we

18   decided principals allow the President to order that.  Next

19   year that will be over $6 billion.

20        THE COURT:  Okay.  Well let's -- and I appreciate

21   that.  But let me go back to my problem, which is standing.

22        MR. TURLEY:  Yes, ma'am.

23        THE COURT:  But let me clarify one statement.  Your

24   learned opponent said that the reason there was no

25   appropriation was because, in 2014, because the administration

1   withdrew its request for an appropriation for 1402.  Do you

2   know whether that is factually accurate?

3          MR. TURLEY:  I don't believe it is accurate.  But

4   ultimately that is a fact that has to be considered in favor of

5   congress anyway.  But I do not, with all due respect, believe

6   that that is accurate.  The request for appropriations was

7   rebuffed.  And then what followed was this argument.

8          THE COURT:  Okay.  Okay.

9      All right.  Now let me go to a few other things.  Here's

10  a quote from Bowser which says, "Once Congress makes its choice

11  in enacting legislation, its participation ends.  Congress can

12  thereafter control the execution of the enactment only and

13  directly by passing new legislation."

14     Now that's a very broad statement, but it's been quoted

15  of course many, many times in all sorts of contexts.  In the

16  context of appropriations, if the -- why would that principle

17  not apply?

18         MR. TURLEY:  I think the problem with that, Your

19  Honor, is that there's no limiting principle.  If what the

20  Government is arguing is that this is just a matter of

21  interpretation or implementation and that cannot be subject to

22  review, if that's the case, it would swallow up Article I.

23  That is, you know, there's a difference between nullification

24  and interpretation that Courts draw all the time.

25         THE COURT:  What about impeachment, is that an

1  option?  I mean, I don't want to suggest -- don't anybody write

2  that down.  I merely, I mean, I'm just trying to think of the

3  kinds of responses that the House of Representative might take

4  as a House of Representatives.  And that one wasn't mentioned.

5          MR. TURLEY:  Well I shutter at that thought.

6          THE COURT:  I do too.

7          MR. TURLEY:  I handled the last impeachment for a

8  judge in the Senate.  But I'm going to assume that the

9  administration is not arguing that we should impeach President

10 Obama.

11         THE COURT:  They're not.

12         MR. TURLEY:  But I may be wrong and they can correct

13 me, but there's a reason why impeachment --

14         THE COURT:  They're not.

15         MR. TURLEY:  Okay.  Thank you.  Because there's many

16 things today that have surprised me.

17         The reason impeachment is not in our view a

18 determinative fact is that yes, there are circumstances we can

19 impeach the President.  But no Court has ever said that if you

20 have any other possible remedy no matter how extreme it must be

21 used.  It's essentially a ticket price to get into federal

22 court.  We don't have to adopt these radical extremes.  You

23 know, could we not pass any budget?  Could we start to

24 impeachment people?  The most likely would be to impeach

25 Burwell, but then what would happen?  If we impeach Burwell,

1  she'll be replaced by an acting secretary that we wouldn't be

2  able to impeach.

3       But more importantly, it wouldn't stop the funding.  We

4  already did stop the funding.  We already said there's no

5  funding.  So it would simply continue.  But to use impeachment

6  as a check for these types of disputes over the power of the

7  President is like running a nuclear plant with an off/on

8  switch.  It's not a very good idea.

9       THE COURT:  Well I'm not encouraging it.  It was

10 merely to ask the question, I promise.

11      Okay.  So you need to be able to demonstrate an injury

12 in fact.  The arguments made by former Senator Byrd and others

13 were institutional kinds of injuries to their voting power and

14 that sort of thing.  In this instance we're talking about the

15 entire House of Representatives.  So what's the injury in fact?

16 I said it was an insult, but no, that won't do.  You really

17 need a real injury.

18      MR. TURLEY:  Yes, there is, Your Honor.  First of

19 all, if we look back at friends of the earth in Lujan about the

20 conditions upon which standing would be based.  You're already

21 familiar with that.  There's not really a big disagreement

22 about two of those.  You know, there's not a disagreement that

23 the injury is fairly traceable since the injury here is --

24      THE COURT:  Right, right.

25      MR. TURLEY:  And so, and there's also not a lot of

1    debate that it's redressable.  So the only question is this

2    injury in fact.  And we would look through to cases like Valley

3    Forge where the, you know, the Court has said you shouldn't

4    shrink from these confrontations among branches.  That's the

5    function of the Court.  And, in fact, that function was carried

6    out in these cases that follow Raines, in AT&T, in Miers, in

7    Holder, in the Census case.

8         And the Census case ultimately went to the Supreme

9    Court, the House prevailed.  The Court didn't attack back in

10   that case either when it did go to the Supreme Court.

11        Now, in terms of injuries, we've laid out what we think

12   are pretty concrete injuries.  Putting aside the money just

13   generally in terms of Article I, we have the control of the

14   appropriations.  And to put it in perspective for next year

15   that amount is the same amount that funds this entire branch.

16        So what the administration is arguing is that

17   appropriation principles allow it to order a funding level that

18   is what we pay for the entire court system without a vote of

19   Congress, without approval of Congress.  And once again, I'd

20   say does that track?  Does that make sense in terms of what we

21   know about Article I?

22        There's also nullification of legislation on both sides,

23   both in terms of the appropriation counts that we've laid out

24   and in terms of the nullification counts.

25        And then we also have the injury to the checks and

1    balances over agencies.  There's a great deal of discussion as

2    the Court knows, both in cases and in congress itself over the

3    rise of the fourth branch.  And this question of whether the

4    center of gravity in our system is shifting towards the

5    emergence of a more independent fourth branch.

6         Nothing could be worse at this time than for the

7    administration to argue that it can actually just give itself a

8    permanent appropriation on the Treasury.  We would lose that

9    oversight, that check and balance over the agencies as well as

10   oversight authority, which is the final and fourth injury.  Any

11   of those injuries would be sufficient for these purposes.

12        THE COURT:  Okay.  But not appropriating money is an

13   affirmative in action, if I could say.  It would be possible to

14   affirmatively pass a law that says thou shalt not use money

15   from the tax refund accounts for the offset purpose.  Right?

16        MR. TURLEY:  Well, theoretically, that's possible.

17   What I would submit to the Court is that that would create this

18   obligation, sort of like a one free bite rule under the

19   constitution, that the administration can violate Article I and

20   then we just keep on coming back and say the same thing.  We

21   already said it.  You know, when my opposing counsel says look

22   there's an ongoing conversation, I don't know of any

23   conversation between the branches in this regard.  Unless a

24   proclamation can be defined as a conversation, congress had its

25   say.  It was asked, it rebuffed the funding for this provision.

1          For the administration to say well, why don't you come

2    back and do it again?  Why don't you make it express, why don't

3    you put it in this form, that's not in Article I and it's sure

4    not in Article II.  I would submit to the Court that Section 9

5    of Article I is fairly unique.  And the only other section like

6    it is Article 10, where after stating all the affirmative

7    powers of congress, the framers went one step further in

8    Section 9 and said, and by the way, referring to the executive

9    branch and the other branches, you are prohibited from spending

10   money without an expressed appropriation.

11          They said it twice to make sure it was understood.  Why?

12   Because this is the thumping heart of Article I.  This is it.

13   And it's the one thing that the Court comes back like a mantra.

14   You know, the Supreme Court and the courts of this circuit have

15   repeatedly come back with some disputes and said you know what,

16   we don't want to intervene here.  But in every case they say

17   and you know why, because you've got the power of the purse,

18   nobody contests that.

19          In fact, the Justice Department made the best argument

20   for us.  When they were in another courtroom in Miers fighting

21   the right to enforce a subpoena, which they lost on these same

22   grounds, they told the Court you don't have to enforce

23   subpoenas because they've got the power of the purse and we

24   can't take that away.  And so they say that in Miers, and then

25   they walk over here and they say you know what, you don't have

1    to enforce the power of the purse.  The only positive thing I

2    can say is they're not saying this because we have subpoena

3    power.

4            THE COURT:  Okay.  Let me ask you the other question,

5    the other part of this.  I don't want to -- I don't need to get

6    into the two halves of what it is you're complaining about.

7    But I do want you to address whether or not you have a right if

8    you have a cause of action to declaratory judgment.  That's

9    another aspect of the Government's brief that, you know, even

10   if and even if, you can't get declaratory judgment because that

11   doesn't provide, that statute standing alone doesn't provide

12   you any basis to be here.

13           MR. TURLEY:  Well, I'm afraid I think the Government

14   is dead wrong on DJA or a lot of cases are dead wrong that

15   preceded this one.  First of all, as it was stated in Miers

16   where this argument was last phrased, this is a law that is

17   supposed to be liberally construed to achieve its objectives.

18   And, in fact, if you take a look at 28 USC 2201(a), the DJA

19   itself says that here's where Courts, quote, can declare the

20   rights and other legal relations of any party.

21           What the administration is trying to use, ignoring cases

22   like Miers where this argument didn't work, so for the most

23   part is to distinguish cases like Hayward that says well, you

24   know, it doesn't really mean that you can use this in novel

25   types of actions or unconventional claims.

1          The opposite is true.  We have a cause of action.  It's

2    the United States Constitution, it was violated.  The DJA is a

3    procedural means by which to bring it before the Court.  That

4    is clearly the purpose of the DJA.  And to me I find it rather

5    bizarre that they're saying well, you know, maybe if you had

6    some type of property dispute of, you know, $10,000 you might

7    be able to use DJA.

8          But if you're saying that the entire Article I is being

9    gutted, that's really not a cause of action cognizable in the

10   federal court.  And that would destroy the purpose of DJA,

11   which is to allow for these declaratory acts to occur.  But it

12   also doesn't track with the purpose of DJA.  And I think what

13   they're trying to do is create new law here.

14          And what they're relying on are things like Ali versus

15   Rumsfeld, where you had an extraterritorial claim.  The problem

16   in that case, there was no cause of action because the Court

17   couldn't reach anything in that case.  If you look at the cases

18   that they cite, they pale in comparison to the injuries we have

19   in this case.

20          I'll also note that they also challenge the APA, but I

21   will simply, and for the record, that argument was not raised

22   by the Government in its motion.  And so the first time we saw

23   it was on reply, we believe that it's waived.  But having said

24   that, we believe that that clearly is wrong on the face of the

25   Section 701(b)(2) of the statute which defines persons very

1  broadly.  And, in fact, congress has been defined as a public

2  organization.  If you look at 5 USC 701(b)(1), it doesn't make

3  any sense at all to suggest that congress would not be able to

4  proceed under APA.  But in our view that argument was waived.

5          THE COURT:  Okay.  Thank you, sir.

6          MR. TURLEY:  Thank you, Your Honor.

7          THE COURT:  Did you want to take a break or are you

8  ready to -- did you want to take a break?  Let me ask you

9  particularly since people have been talking fast?

10          THE COURT REPORTER:  If you would, please.

11          THE COURT:  If you would please, okay.  In the

12  interest of having a record, we will take a break for let's say

13  quarter after, okay?  Thank you.

14          (Recess at 11:00 a.m., resumed at 11:16 a.m.)

15          THE COURT:  Mr. McElvain, I didn't give Mr. Turley as

16  much trouble as I gave you, so I promise I'll be much nicer

17  now.

18          MR. MCELVAIN:  Thank you, Your Honor.

19          I'll aim to, not to try to repeat myself, but there are

20  a few additional points I would like to make in response to

21  Mr. Turley.

22          First, I think what underlies his presentation is the

23  notion that the -- what I'll call the nullification line of

24  precedence that come from Coleman, Coleman versus Miller, would

25  allow the House to present a claim if they really, really,

1  really believe that there is a very strong and compelling case

2  on the merits.  But that's a misreading of Coleman.  And just

3  to back up for a moment.

4      The dispute here involves whether there's a permanent

5  appropriation in place that was referenced in the Affordable

6  Care Act in 2010.

7      THE COURT:  Well you've never said that.  You have

8  never said that in your briefs.  And so I don't think that you

9  can say that's what it, that's what it involves now.

10     MR. MCELVAIN:  We haven't briefed the merits because

11 the merits are irrelevant.

12     THE COURT:  I'm sorry, you haven't even given me a

13 hint as to why I shouldn't just take the allegations in the

14 complaint, as I'm suppose to anyway, straight up.  They voted

15 no, you spent money anyway.  I mean, and I promised I wouldn't

16 be bad, forgive me.

17     But your briefs, your brief argues that it's just an

18 interpretation of law, but you didn't say what law.  So I think

19 it's just an interpretation of the constitution that's at

20 issue.  Oh, no, it turns out, there is a law you think you

21 have.  I don't know where it is, but you think you have an

22 appropriation somewhere.  I don't know in what law you have it

23 because you haven't told me, it's just an interpretation of

24 law.

25     If it's an interpretation of law, I suggest you should

1  tell me what that means because without that, there is no

2  response.  It's just, I thought from everything I read in your

3  briefs that you were talking about, it's just an interpretation

4  of Article I, how much authority does the House of

5  Representatives have over the appropriation budget.

6       MR. MCELVAIN:  So there are two things I need to say

7  in response to that:  First is, we have a theory.  Our

8  understanding is that the permanent appropriation of 31 USC

9  1324 is available for these funds.  The second thing that I

10  need to say is, nothing in our theory of standing turns on

11  that.  Standing comes before the merits and you can assume that

12  they are right on the merits.  You can assume that there is no

13  appropriation.

14       THE COURT:  I appreciate that circle.  You have

15  completely rounded it.  Okay.  Go ahead.

16       MR. MCELVAIN:  So even assuming that they are right

17  on the merits that there is some meaning to the failure to

18  enact an additional appropriation specifically addressing this

19  in 2014 in addition to whatever the meaning of the 2010 session

20  is, assuming that they are right about that and that there is

21  no appropriation, that does not change the bottom line result.

22       The plaintiffs appear to be relying on a theory of,

23  quote, unquote, nullification.  If the administration is really

24  acting contrary to what the House understands to be federal

25  law, that in a, you know, a very strong case in the merits

1   would accord them standing where they otherwise would not have

2   it.  That is a misreading of what the Supreme Court meant by

3   the term nullification.

4           THE COURT:  Okay.

5           MR. MCELVAIN:  I will refer the Court to Campbell,

6   which I imagine the Court is already familiar with.  Campbell

7   went into detail discussing Coleman versus Miller and

8   discussing Raines versus Byrd, and said when the Supreme Court

9   said use the term nullification which may or might accord some

10  legislature's standing to sue in some circumstances,

11  nullification doesn't just mean that the executive branch is

12  acting contrary to or without statutory authority.

13  Nullification means that there's not a proper record of

14  legislative action.  That a vote that was passed was treated as

15  not passed or vice versa.

16      So the analogy here would be if the Affordable Care Act

17  appeared in the statutes at large and for some reason the

18  executive branch were denying that the Affordable Care Act

19  actually appeared in the statues at large, that's not what we

20  have here at all.  It's common ground among all parties that

21  the Affordable Care Act was validly enacted into law.

22      So the nullification line of precedence just simply do

23  not support the plaintiffs here under Campbell, under

24  Chenoweth, interpreting Raines.  There simply is no available

25  claim here for a claim that the federal law has been

1   misapplied.

2          THE COURT:  Well Chenoweth doesn't actually, I mean,

3   I do think that the language is good, but the facts are not --

4   are really one off from here considerably.  And I know about

5   Coleman and I'll go back and study Campbell again.  Go on.

6          MR. MCELVAIN:  Well what's relevant as to Chenoweth

7   is the claim there was that by executive order the President

8   had directed the spending of funds for which there was no

9   appropriation.

10          THE COURT:  Right.

11          MR. MCELVAIN:  And the merits weren't briefed, so we

12   took that allegation to be true.  And still at the end of the

13   day those legislators did not have standing.

14          THE COURT:  Right.

15          MR. MCELVAIN:  Right.  So what I understand

16   Mr. Turley to be saying in response is well, Chenoweth isn't

17   really authority because those were individual members, not the

18   House as an institution.

19          And I think I've already responded in some detail to the

20   notion that there might be some relevant distinction there.  I

21   just would like to add a couple of points on that.

22          First, I would refer the Court again to Campbell.  It

23   has an interesting footnote.  One of the grounds asserted by

24   the Government, I should say, one of the grounds asserted by

25   the executive branch, in that case was well, there were

1  individual members who were suing lack standing because they

2  didn't represent a majority of their House.  Campbell has a

3  footnote saying we're aware tat this argument has been made.

4  We do not rely on it because under our theory that there is no

5  valid claim, there's no claim stating an injury that could

6  support Article III standing, does not turn in any way whether

7  it was just a few members of Congress or whether it was a

8  majority.  It's just that this is the type of claim that is not

9  a cognizable injury by a legislator even though private parties

10 might be able to bring the same claim.

11         THE COURT:  Which is what happened with the claim

12 in -- that Senator Byrd brought.

13         MR. MCELVAIN:  Right.  So yes, Senator Byrd lacked

14 standing.  And then I think the next term or maybe the next two

15 terms there was a party outside of the Government.

16         THE COURT:  Right.

17         MR. MCELVAIN:  Right.  One further point I would make

18 as to this question of whether there's a distinction between

19 individual legislators and the House as an institution.  I

20 think in some ways actually the House has a significantly worse

21 claim to standing then an individual member.  As I know, an

22 individual member has no claim of standing, so I don't -- so

23 it's hard to say what's worse than zero.  But there's an even

24 greater reason to believe that they have no claim to standing

25 here than individual legislators.

1          First, the cases such as Chenoweth and Campbell and

2     Raines discuss other political remedies that members of

3     Congress may have.  Whatever you may say, the House as an

4     institution certainly has greater recourse to those political

5     remedies than any individual member might.

6          THE COURT:  Well, but let me ask you this:  It's a

7     really interesting sideways look at standing.  If I have

8     standing, we'll take -- not I, but somebody sitting back there,

9     has standing for a lawsuit because they've been injured and

10    it's redressable and all of that.  The fact that they could

11    also do something other than sue, they have alternative ways to

12    put pressure on the defendant, doesn't mean they don't have

13    standing to sue.  I mean, if a boss has standing to sue an

14    employee or hit him with his car, the fact that the boss could

15    also fire the employee, that wouldn't bar him from his lawsuit,

16    right?

17         So why does the fact that there may be alternative

18    political pressures affect a bar on standing in a Court?

19         MR. MCELVAIN:  I think when the Courts refer to those

20    alternative political remedies they're making that reference as

21    a way to underscore that a claim by a legislator as to supposed

22    diminution of legislative power has never been understood to

23    present a case or controversy that falls within, I guess what

24    you'd say the traditional common law rules of an Article III

25    court in adjudicating particular cases.

1          So when they refer to the fact of well, legislators

2    should go to the legislative process, my reading of the case is

3    what they mean to say is that this is the type of claim that

4    belongs in the political process.  It's not a judicial claim

5    which should invite a Court to resolve, direct interbranch

6    conflicts.  That's my reading of the case law.

7          THE COURT:  Okay.  And what do you do with the

8    provision of a statement that the Court can't shrink from

9    interbranch conflicts in the appropriate case?

10         MR. MCELVAIN:  In the appropriate case where a

11   private party's interests are at stake and the Court needs to

12   resolve that case or controversy to decide what the rights are

13   or obligations of that private party, then of course the Court

14   shouldn't shrink from a separation of powers question the same

15   way.

16         THE COURT:  Well that is surely what Justice Scalia

17   says, but as far as I know he's usually in the dissent.  So is

18   it the Executive's position that, that congress cannot sue the

19   Executive in any circumstance at all?

20         MR. MCELVAIN:  I think there are some circumstances

21   which would be far removed from this case where there may be

22   standing.  We previously discussed the Census case.

23         THE COURT:  I mean, you don't think it has to be a

24   private party?

25         MR. MCELVAIN:  Well the question is whether the

1  plaintiff, private or legislative or what have you, is

2  presenting a concrete and particularized injury.  So one case I

3  would refer you to is the Census case cited by the plaintiffs.

4  We've already discussed it a little bit.

5       There the holding was this is the unique, narrow

6  circumstance where the House is not suing just about the

7  general administration of the law not asserting an interest

8  shared by everybody --

9       THE COURT:  Okay.

10      MR. MCELVAIN:  -- the House was asserting a

11 particularized interest unique to the House itself as to its

12 own composition.

13      THE COURT:  And why isn't the House's appropriation

14 role unique to the House?

15      MR. MCELVAIN:  Because under authorities like

16 Chenoweth and under Harrington versus Bush, the fact that they

17 have an existing appropriation that may be misused or even the

18 possibility that there's just no appropriation and the

19 executive is proceeding without an appropriation, does not

20 invade the legislative capacity.  The legislation, the

21 legislators can always come back and enact new authority.

22 Nothing limits the power to enact new legislation as well as

23 the power to exercise whatever other tools that the legislature

24 has.

25      THE COURT:  Okay.

```
 1              MR. MCELVAIN:  One further point I would add if I
 2    could on the question of individual cases, individual members
 3    of congress as compared to the House as a whole.  One of the
 4    points we've made is that there's a real separation of powers
 5    difficulty here if the House were to be accorded standing under
 6    Bowsher versus Synar.  One of the, the Article I legislative
 7    authorities is not, is not an authority to bring suit to
 8    enforce law.  That's an executive authority, not a legislative
 9    authority.
10              THE COURT:  What about a suit to enforce non law?
11    That is, there isn't an appropriation to enforce, it's the very
12    failure of the House to adopt an appropriation from their
13    perspective that creates the problem.  So they're not suing to
14    enforce the law, they're suing to enforce their vote which is
15    no appropriation, no law.
16              MR. MCELVAIN:  And again, that's the same thing as
17    Chenoweth.  I mean, that was the claim in Chenoweth, that there
18    had never been an appropriation and there were funds that just
19    could not be tied to any appropriation whatsoever.
20              THE COURT:  Okay.
21              MR. MCELVAIN:  So turning also to Mr. Turley's
22    reference to cases involving the investigatory power of the
23    district court decisions that were issued in Miers and Holder,
24    we don't concede that those decisions were rightly decided, but
25    we can cabin that dispute here.  Because even assuming they're
```

1   correct, they're very, very different from the case we have

2   here.  Those Courts were careful to distinguish between what

3   they saw as the Article I power to investigate which carries

4   with it a power to issue a subpoena and then carries with it a

5   power to come to court to enforce the subpoena.

6         That analogy breaks down when you're talking about a

7   claimed Article I power to enforce the law because there is no

8   such Article I power.  So the notion that there is, there's

9   some inherent legislative power to bring suit to enforce the

10  law defeats -- they attempt to analogize this case where House

11  committees were attempting to proceed with investigations.

12               THE COURT:  Okay.

13               MR. MCELVAIN:  And then the last point I would add is

14  as to the question of a cause of action.  As to a Declaratory

15  Judgment Act, I think our papers are clear.  There's very

16  direct D.C. Circuit precedent that the Declaratory Judgment Act

17  does not create its own cause of action.  You need to look to

18  some other substantive source of law, which, which the House

19  simply cannot identify.  To the extent that they are relying on

20  an applied right of action under Article I for the reasons

21  we've already discussed, there is no cause of action created by

22  Article I for the legislature to attempt to enforce the law

23  through a lawsuit.

24         And I'd also like to respond to the question of whether

25  they have a separate cause of action under the APA.  We didn't

1   brief that in our initial motion to dismiss because it wasn't a

2   theory asserted in the complaint.  In the opposition, they

3   asserted the possibility of an APA cause of action for one of

4   the counts in their complaint.  And that's simply foreclosed to

5   them by Newport News.  Newport News was a case where one

6   executive branch asserted, had authority under -- it was not

7   the APA, it was a different jurisdictional provision, but it

8   was a provision according persons who are aggrieved by agency

9   action authority to proceed to federal court.

10          And the court said that language is a term of art that

11  limits private rights to be litigated by private parties, not

12  for governmental entities to assert the same right to proceed

13  to federal court.  You could always have more language in a

14  federal statute that would make clear that governmental parties

15  could proceed in the same fashion, but that language standing

16  alone does not bring -- does not include a governmental party.

17          And so under the authority of Newport News, congress

18  cannot assert that as a person aggrieved or adversely affected

19  within that term of art as the way it was used in the APA.

20          THE COURT:  All right.

21          MR. MCELVAIN:  Okay.  Thank you, Your Honor.

22          THE COURT:  Thank you, sir.  Thank you very much.

23          MR. TURLEY:  Thank you, Your Honor.  The House of

24  Representatives has only a few points to make, won't delay you

25  any further.  I'd like to respectfully disagree with a couple

1    of statements that were made by the Government.  But before I

2    do that, I would like to put to rest one issue which even

3    putting aside the fact that certain facts have to be assumed

4    for the purposes of this motion, one of the facts that the

5    administration keeps on coming back to as somehow uncertain is

6    anything but.  And that is, whether Congress was quite explicit

7    about the lack of funding for 1402, and whether there's any

8    source where it clearly says funding for this, not that.

9         We already cited the committee report.  But on the other

10   aspect of that which is cited in our brief, I would point the

11   Court to 32 USC Section 1324(b)(2).  And what that refers to is

12   basically this issue of the permanent appropriations that my

13   esteemed opposing counsel has repeatedly referenced.  Those

14   permanent appropriations, to take that step you have to be put

15   on a special list.  And as you might imagine, before anything

16   is put on that list, congress spends a great deal of time

17   because this is like giving a credit card to an open account.

18        So those type of appropriations generate a great deal of

19   attention.  And the result then is a formal vote to amend a

20   list which allows for permanent appropriations.  And at 31 USC

21   1324(b)(2) you will see the reference to Section 1401 and not

22   1402.  The reference is actually to 36(b), which is the term

23   used for 1401.  And if you look at that it conspicuously does

24   not include 1402.  We believe that should put that matter to

25   rest.

1      Second, I feel like I'm in a parallel universe when I

2  hear the Department of Justice say, you know, actually an

3  institutional case is not as strong as an individual case.  I

4  just find that baffling.  I mean, for the last 20 years they've

5  been saying well, you don't represent the entire House, you're

6  just six members or one member.  And then finally we come back

7  as the House of Representatives and they go well, it's not like

8  you're an individual member.

9      And I don't know what to do with that type of moving

10  goalpost, but what I would say is that, once again, Raines is a

11  very weird opinion.  If they were mentioning institutional

12  status as a way of pointing out something that would be even

13  weaker, they went about it in a rather odd way.

14      Third, on the nullification issue, first of all, that is

15  one of the four injuries that we have talked about.  I have to

16  disagree with my esteemed colleague.  First of all, Coleman v.

17  Miller is still good law.  And I'll just point out a couple of

18  things about Coleman which escaped the attention of my

19  colleague.

20      First of all, Coleman wasn't even an institutional

21  lawsuit.  Coleman was a lawsuit brought by 20 members of the

22  Kansas legislature, and I know the Court is already familiar

23  with this, but it was a vote that was 50/50.  It was 20 members

24  on one side, 20 members on the other, and a lieutenant governor

25  that casted the deciding vote.  There was never even an

1  institutional vote.  They weren't there with authorization as

2  we are today.

3       Furthermore, this goes back to my first point, when the

4  Government says look, it's not like they said something in

5  legislation and we're saying they didn't, that we're

6  nullifying.  The citation I just gave you is exactly that.  We

7  said this is going to be appropriated and that means this is

8  not.  It's a very standard decision made in appropriations law.

9       Fourth, on the DJA, our position is clear that we

10  believe the constitution itself is a cause of action.  We also

11  happen to believe that the DJA does create a cause of action,

12  but you don't have to go there.  That we believe that it is

13  sufficient to establish the constitutional violation.

14       On the APA, I have to strongly disagree with my opposing

15  counsel.  If you look at count five of the complaint this was,

16  in fact, raised and so they are indeed waived.  If they're not

17  waived on this argument, then the federal rules have very

18  little meaning in terms of what you have to advance in the

19  federal court.

20       And then I would end just with this, Your Honor:  You

21  know, the question for us is just in what rational universe is

22  exercising the House appropriation power not a concrete injury?

23  We just don't -- we can't imagine how we go from this point

24  forward if this core guarantee is, in fact, not guaranteed.  In

25  order for the Department of Justice to achieve what it's trying

1    to achieve in this case, it has to limit not just the

2    legislative branch, but the judicial branch.

3          It's saying first of all, an entire House of Congress

4    doesn't have institutional standing to bring forth the

5    constitutional injury for the first time in history to

6    establish that.  But then also it says that the Courts have no

7    ability to reach that issue.  And what would emerge from that,

8    I would submit, is a different system and a dangerous one.

9          It is, in fact, the system that the framers sought to

10   avoid.  It's the very danger the framers sought to avoid.  And

11   we will rest there, Your Honor.

12          THE COURT:  Okay, thank you.  Thank you everybody.  I

13   will say that your arguments have been wonderful.  You've

14   presented me with a nice problem, set of problems.  I have no

15   idea.  No, I have lots of ideas, I just haven't decided yet and

16   we will get to work on it.  But I really thank you for the

17   vigor and intelligence of your arguments.  They have been quite

18   wonderful.  Thank you very much.

19          MR. TURLEY:  Thank you, Your Honor.

20          (Proceedings concluded at 11:40 a.m.)

21                              -oOo-

22

23

24

25

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____          _____

/s/Crystal M. Pilgrim, RPR, FCRR          Date: June 8, 2015

| | | |
|---|---|---|
| **$** | 50/50 [1]   59/23 | 23/23 30/15 32/21 33/16 |
| $10,000 [1]   45/6 | 324 [1]   17/8 | 42/7 48/13 50/2 51/20 |
| $175 [1]   32/6 | 594 [1]   33/25 | 58/22 59/2 |
| $300 [1]   32/7 | | add [4]   19/3 50/21 55/1 |
| $300 million [1]   32/7 | **7** | 56/13 |
| $6 [1]   37/19 | 701 [2]   45/25 46/2 | addition [2]   5/23 48/19 |
| $6 billion [1]   37/19 | | additional [4]   22/14 27/4 |
| | **8** | 46/20 48/18 |
| **'** | 826 [1]   17/6 | address [5]   6/15 6/16 |
| '14 [2]   24/5 25/11 | | 27/17 30/21 44/7 |
| | **A** | addressing [1]   48/18 |
| **–** | a.m [4]   1/6 46/14 46/14 | adjudicate [1]   4/15 |
| | 61/20 | adjudicating [1]   52/25 |
| -------------------------- | ab[1]ty [2]   61/7 62/3 | administration [46]   5/7 |
|  1/8 | able [9]   10/16 19/13 | 6/8 9/15 9/21 10/6 11/22 |
| -ooo [1]   61/21 | 34/12 37/5 40/2 40/11 | 14/10 15/4 15/5 16/5 |
| | 45/7 46/3 51/10 | 18/13 19/19 23/13 23/16 |
| **/** | about [44]   3/18 4/1 6/15 | 24/6 24/17 25/8 25/12 |
| /s/Crystal [1]   62/12 | 8/15 11/1 12/3 12/5 12/10 | 26/23 28/4 29/8 29/21 |
| | 12/11 12/11 13/16 16/6 | 30/23 31/4 31/6 32/5 33/5 |
| **0** | 17/7 18/10 21/11 24/10 | 33/15 34/6 35/8 35/25 |
| 0014 [1]   27/1 | 24/11 24/11 31/8 31/11 | 36/6 36/13 36/19 37/14 |
| | 33/4 34/10 34/20 35/19 | 37/15 37/25 39/9 41/16 |
| **1** | 35/24 36/15 37/9 37/11 | 42/7 42/19 43/1 44/21 |
| 10 [2]   28/14 43/6 | 38/25 40/14 40/19 40/22 | 48/23 54/7 58/5 |
| 10:07 [1]   1/6 | 41/21 44/6 48/3 48/20 | admitted [1]   10/2 |
| 11 [2]   28/14 28/15 | 50/4 54/6 55/10 56/6 58/7 | adopt [2]   39/22 55/12 |
| 11:00 [1]   46/14 | 59/13 59/15 59/18 | advance [1]   60/18 |
| 11:16 [1]   46/14 | above [2]   62/3 62/6 | advanced [4]   7/10 8/25 |
| 11:40 [1]   61/20 | absence [2]   13/9 26/13 | 23/2 23/3 |
| 12 [1]   28/14 | absolute [1]   35/15 | adversaries [2]   13/2 13/4 |
| 123 [1]   31/15 | absolutely [3]   21/12 28/5 | adversariness [2]   12/25 |
| 1324 [4]   8/20 48/9 58/11 | 35/16 | 13/20 |
|  58/21 | abstract [7]   4/19 5/5 6/9 | adverse [1]   13/22 |
| 14 [1]   31/14 | 6/13 7/19 7/22 31/8 | adversely [1]   57/18 |
| 14-1967 [1]   1/4 3/2 | abstraction [2]   32/5 32/8 | affairs [1]   32/18 |
| 1401 [4]   22/24 31/25 | ACA [2]   6/20 19/18 | affect [1]   52/18 |
|  58/21 58/23 | accept [1]   8/6 | affected [1]   57/18 |
| 1402 [16]   22/11 22/22 | accepted [1]   31/2 | affirmative [3]   6/19 |
|  22/25 23/14 24/4 24/16 | accord [2]   49/1 49/9 | 42/13 43/6 |
|  24/23 26/17 31/4 31/12 | accorded [2]   5/16 55/5 | affirmatively [7]   6/18 |
|  31/16 32/1 38/1 58/7 | according [3]   35/15 36/24 | 6/18 6/22 28/2 29/5 29/16 |
|  58/22 58/24 | 57/8 | 42/14 |
| 18th [1]   34/15 | account [4]   36/3 36/15 | Affordable [8]   6/19 7/8 |
| 1967 [2]   1/4 3/2 | 36/16 58/17 | 7/8 22/16 47/5 49/16 |
| 19th [2]   34/7 34/8 | accounting [1]   27/2 | 49/18 49/21 |
| | accounts [1]   42/15 | afraid [1]   44/13 |
| **2** | accurate [3]   38/2 38/3 | after [8]   5/20 10/1 22/4 |
| 20 [6]   1/22 28/14 59/4 | 38/6 | 22/15 29/8 37/17 43/6 |
|  59/21 59/23 59/24 | accuses [1]   9/8 | 46/13 |
| 2000 [1]   1/19 | achieve [3]   44/17 60/25 | aftermath [1]   31/22 |
| 20001 [2]   1/22 2/4 | 61/1 | again [12]   9/1 10/11 |
| 20052 [1]   1/19 | act [16]   6/19 7/8 7/8 | 14/20 21/5 30/7 37/7 |
| 2010 [2]   47/6 48/19 | 7/11 7/13 8/15 8/16 16/22 | 41/19 43/2 50/5 50/22 |
| 2014 [9]   22/11 23/12 | 20/22 22/16 47/6 49/16 | 55/16 59/10 |
|  26/14 27/4 27/5 27/8 27/9 | 49/18 49/21 56/15 56/16 | agencies [3]   19/15 42/1 |
|  37/25 48/19 | acting [4]   33/8 40/1 | 42/9 |
| 2015 [3]   1/5 22/13 62/12 | 48/24 49/12 | agency [2]   26/5 57/8 |
| 20515 [1]   1/16 | action [19]   3/2 5/25 | aggrieved [2]   57/8 57/18 |
| 219 [1]   1/16 | 42/13 44/8 45/1 45/9 | agree [4]   19/4 24/20 |
| 2201 [1]   44/18 | 45/16 49/14 56/14 56/17 | 25/22 26/20 |
| 230 [1]   30/2 | 56/20 56/21 56/25 57/3 | agreed [5]   6/23 10/2 |
| 28 [2]   1/5 44/18 | 57/9 60/10 60/11 62/8 | 12/24 20/9 27/24 |
| | 62/10 | agreeing [1]   12/14 |
| **3** | actions [2]   8/9 44/25 | agreement [1]   8/7 |
| 31 [3]   8/20 48/8 58/20 | active [2]   5/19 15/14 | agrees [1]   19/21 |
| 32 [1]   58/11 | acts [2]   12/8 45/11 | ahead [2]   21/4 48/15 |
| 333 [1]   2/4 | actual [2]   4/15 23/23 | aided [1]   2/6 |
| 36 [1]   58/22 | actually [20]   6/14 6/16 | aim [1]   46/19 |
| | 8/4 11/8 12/16 15/13 | alarming [1]   19/23 |
| **5** | 15/14 15/21 17/9 23/21 | Ali [1]   45/14 |
| 50 [1]   59/23 | | |

**A**

all [40]   3/20 3/23 3/25
 4/6 5/12 7/10 8/1 8/25
 10/1 25/14 26/5 29/8
 32/23 33/7 33/14 33/25
 34/18 35/6 35/10 36/24
 37/2 37/11 37/12 38/5
 38/9 38/15 38/24 40/19
 43/6 44/15 46/3 49/20
 49/20 52/10 53/19 57/20
 59/14 59/16 59/20 61/3
allegation [3]   28/21 29/2
 50/12
allegations [1]   47/13
allege [1]   28/18
allow [5]   3/17 37/18
 41/17 45/11 46/25
allows [2]   36/17 58/20
allude [1]   11/6
alone [2]   44/11 57/16
already [15]   5/8 21/7
 24/8 36/22 36/23 40/4
 40/4 40/20 42/21 49/6
 50/19 54/4 56/21 58/9
 59/22
also [13]   17/24 40/25
 41/22 41/25 45/12 45/20
 45/20 52/11 52/15 55/21
 56/24 60/10 61/6
alternative [5]   14/4
 14/17 52/11 52/17 52/20
always [2]   54/21 57/13
am [7]   4/1 4/8 12/14
 26/10 31/18 62/7 62/9
amend [1]   58/19
amicus [1]   19/10
among [2]   41/4 49/20
amount [2]   41/15 41/15
analogize [1]   56/10
analogous [1]   17/3
analogy [2]   49/16 56/6
annual [3]   31/5 36/5
 36/18
another [7]   8/12 12/22
 14/23 16/12 17/22 43/20
 44/9
answer [6]   10/25 20/23
 22/18 25/6 26/11 27/5
answered [1]   27/15
Antideficiency [2]   8/15
 8/16
any [31]   5/6 5/25 8/2
 9/16 9/23 10/12 14/9
 14/25 20/17 21/16 22/5
 23/23 26/5 28/15 29/18
 29/24 37/8 39/20 39/23
 42/10 42/22 44/12 44/20
 46/3 51/6 52/5 53/19
 55/19 57/25 58/7 62/8
anybody [1]   39/1
anymore [1]   34/20
anything [5]   11/8 21/10
 45/17 58/6 58/15
anyway [5]   9/25 29/17
 38/5 47/14 47/15
APA [7]   45/20 46/4 56/25
 57/3 57/7 57/19 60/14
apologize [1]   30/7
appear [1]   48/22
APPEARANCES [2]   1/13 2/1

appeared [3]   49/17 49/19
applied [1]   56/20
applies [2]   14/14 34/3
apply [1]   38/17
appreciate [4]   10/13 11/3
 37/20 48/14
appropriate [6]   22/10
 25/25 25/25 26/4 53/9
 53/10
appropriated [5]   24/4
 24/16 27/8 31/3 60/7
appropriates [1]   31/24
appropriating [6]   15/10
 24/20 24/22 26/14 27/10
 42/12
appropriation [58]   7/1
 7/6 8/17 8/19 8/21 9/10
 9/14 9/22 10/7 10/10
 14/22 22/14 22/15 23/6
 23/12 24/8 24/25 25/1
 25/10 25/10 26/4 27/6
 27/11 28/19 28/20 28/22
 31/5 31/16 31/18 33/5
 33/11 36/2 36/10 37/17
 37/25 38/1 41/17 41/23
 42/8 43/10 47/5 47/22
 48/5 48/8 48/13 48/18
 48/21 50/9 54/13 54/17
 54/18 54/19 55/11 55/12
 55/15 55/18 55/19 60/22
appropriations [23]   8/22
 15/12 15/16 23/5 23/18
 29/7 33/9 35/23 35/24
 36/1 36/5 36/8 36/20
 36/23 37/16 38/6 38/16
 41/14 58/12 58/14 58/18
 58/20 60/8
approval [2]   32/6 41/19
approve [1]   36/10
approved [1]   32/1
are [61]   4/7 4/15 7/11
 7/12 8/9 9/23 9/23 11/6
 11/12 12/17 12/18 14/22
 15/10 15/16 19/19 20/1
 20/3 21/5 23/3 23/4 25/5
 27/20 27/21 27/23 28/12
 29/14 29/23 29/24 30/25
 31/2 31/19 33/19 35/3
 35/10 36/5 36/17 37/1
 37/5 37/12 39/18 41/12
 43/9 44/14 45/14 46/7
 46/19 47/11 48/6 48/12
 48/16 48/20 50/3 50/4
 53/11 53/12 53/20 56/15
 56/19 57/8 60/2 60/16
argue [2]   3/17 42/7
argued [1]   7/18
argues [1]   47/17
arguing [4]   33/17 38/20
 39/9 41/16
argument [15]   3/8 3/14
 10/4 10/14 19/15 27/17
 30/15 38/7 43/19 44/16
 44/22 45/21 46/4 51/3
 60/17
arguments [6]   3/19 37/5
 37/6 40/12 61/13 61/17
arise [1]   20/2
around [1]   37/12
art [2]   57/10 57/19
Article [26]   4/14 5/15

 13/3 14/8 17/20 21/2
 33/1 38/22 41/13 41/21
 42/19 43/3 43/4 43/5 43/6
 43/12 45/8 48/4 51/6
 52/24 55/6 56/3 56/7 56/8
 56/20 56/22
articulated [1]   25/7
as [78]
aside [2]   41/12 58/3
ask [7]   10/2 25/13 35/18
 40/10 44/4 46/8 52/6
asked [10]   9/16 9/21 10/1
 23/13 25/9 31/5 31/11
 36/6 37/17 42/25
asking [4]   9/3 9/5 20/16
 20/20
asks [1]   4/18
aspect [3]   19/17 44/9
 58/10
assert [5]   5/10 18/6
 21/17 57/12 57/18
asserted [5]   50/23 50/24
 57/2 57/3 57/6
asserting [3]   19/8 54/7
 54/10
assume [7]   11/12 27/21
 27/23 31/23 39/8 48/11
 48/12
assumed [2]   29/2 58/3
assuming [3]   48/16 48/20
 55/25
assure [1]   4/2
astonishing [1]   32/4
attack [2]   19/16 41/9
attacking [1]   19/17
attempt [2]   56/10 56/22
attempting [1]   56/11
attention [2]   58/19 59/18
attorney [4]   12/13 13/21
 14/1 14/2
authorities [2]   54/15
 55/7
authority [20]   7/24 15/1
 15/16 17/5 18/19 28/17
 29/20 33/8 33/9 42/10
 48/4 49/12 50/17 54/21
 55/7 55/8 55/9 57/6 57/9
 57/17
authorization [1]   60/1
authorized [1]   16/9
authorizes [1]   26/24
automaticity [1]   19/23
available [6]   8/21 8/25
 9/10 10/11 48/9 49/24
Ave [1]   1/22
Avenue [1]   2/4
avoid [3]   32/18 61/10
 61/10
aware [1]   51/3
away [1]   43/24

**B**

back [21]   7/7 10/11 23/10
 31/5 33/6 33/19 35/25
 37/21 40/19 41/9 42/20
 43/2 43/13 43/15 47/3
 50/5 52/8 54/21 58/5 59/6
 60/3
backing [1]   22/8
backtrack [1]   6/5
bad [1]   47/16

**B**

baffling [2]   36/20 59/4
balance [1]   42/9
balances [1]   42/1
balancing [1]   35/21
ballot [1]   21/21
bar [2]   52/15 52/18
based [1]   40/20
bases [1]   18/24
basically [1]   58/12
basis [2]   17/5 44/12
battle [2]   34/5 34/6
be [76]
bear [3]   3/16 11/19 19/2
bears [1]   3/16
because [57]   3/13 3/14
 3/20 3/20 7/17 7/18 8/17
 9/9 11/5 11/9 11/10 11/17
 12/7 12/13 13/21 13/24
 14/9 14/12 14/13 15/11
 18/6 20/18 21/20 21/24
 23/4 23/13 23/16 24/6
 24/7 26/24 28/1 29/8 33/7
 35/13 35/23 36/22 37/25
 37/25 39/15 43/12 43/17
 43/23 44/2 44/10 45/16
 47/10 47/23 48/1 50/17
 51/1 51/4 52/9 54/15
 55/25 56/7 57/1 58/17
been [21]   5/8 12/13 12/20
 12/21 14/5 16/25 21/18
 24/17 30/9 34/23 38/14
 46/1 46/9 49/25 51/3 52/9
 52/22 55/18 59/5 61/13
 61/17
before [9]   1/10 25/16
 25/16 34/24 35/1 45/3
 48/11 58/1 58/15
began [1]   34/18
being [5]   19/15 20/4 32/7
 37/5 45/8
believe [14]   7/1 31/13
 32/2 32/20 38/3 38/5
 45/23 45/24 47/1 51/24
 58/24 60/10 60/11 60/12
belongs [1]   53/4
below [1]   12/24
best [2]   43/19 62/3
between [12]   13/8 15/14
 16/21 17/3 29/22 33/2
 34/5 34/23 38/23 42/23
 51/18 56/2
bicameralism [1]   12/8
big [2]   35/7 40/21
bill [3]   6/23 25/10 29/7
billion [2]   32/6 37/19
billions [2]   28/4 31/7
binding [1]   28/17
bit [5]   3/18 5/1 6/5
 22/19 54/4
bite [1]   42/18
bitter [1]   16/20
bizarre [1]   45/5
bone [2]   7/23 7/23
bore [1]   20/17
boss [2]   52/13 52/14
both [10]   7/10 17/3 23/3
 23/6 25/17 26/23 29/5
 41/22 41/23 42/2
bottom [2]   17/13 48/21

Bowser [1]   38/10
Bowsher [1]   53/6
branch [25]   4/20 5/21
 11/16 11/22 13/8 14/9
 17/1 17/2 17/4 18/4 19/4
 28/22 29/14 30/1 32/19
 41/15 42/3 42/5 43/9
 49/11 49/18 50/25 57/6
 61/2 61/2
branches [7]   16/22 17/17
 29/22 33/2 41/4 42/23
 43/9
break [3]   46/7 46/8 46/12
breaks [1]   56/6
breath [1]   11/14
brief [14]   6/14 9/4 11/6
 17/24 18/23 19/9 19/10
 24/15 27/16 31/14 44/9
 47/17 57/1 58/10
briefed [6]   7/16 9/2 11/9
 29/2 47/10 50/11
briefs [6]   3/23 3/24
 30/23 47/8 47/17 48/3
bring [9]   18/5 35/5 35/6
 45/3 51/10 55/7 56/9
 57/16 61/4
broad [1]   38/14
broadly [1]   46/1
brought [5]   16/15 17/4
 32/23 51/12 59/21
budget [9]   9/15 10/3
 26/19 26/22 28/8 28/11
 32/8 39/23 48/5
Building [1]   1/16
burden [2]   3/16 3/16
BURWELL [5]   1/6 3/3 10/9
 39/25 39/25
Bush [1]   54/16
business [1]   4/4
Byrd [5]   5/3 40/12 49/8
 51/12 51/13

**C**

CA [1]   1/4
cabin [1]   55/25
call [2]   11/18 46/23
called [1]   32/5
came [6]   6/23 10/1 12/21
 12/22 31/4 33/1
campaign [1]   22/1
Campbell [7]   49/5 49/6
 49/23 50/5 50/22 51/2
 52/1
can [37]   5/2 5/10 10/17
 11/12 13/3 14/17 15/7
 19/16 20/22 24/14 26/4
 27/21 27/23 29/9 29/15
 29/19 29/19 29/20 29/25
 32/3 35/22 35/23 37/15
 38/11 39/12 39/18 42/7
 42/19 42/24 44/2 44/19
 44/24 47/9 48/11 48/12
 54/21 55/25
can't [14]   3/20 8/4 10/24
 12/9 12/9 15/6 19/19
 20/22 25/21 26/5 43/24
 44/10 53/8 60/23
Cannon [1]   1/16
cannot [7]   5/13 5/24
 11/21 38/21 53/18 56/19
 57/18

capacity [1]   54/20
capstone [1]   12/6
car [1]   52/14
card [1]   58/17
care [11]   6/19 6/19 7/8
 7/8 18/11 18/15 22/16
 47/6 49/16 49/18 49/21
careful [1]   56/2
carried [2]   22/25 41/5
carries [2]   56/3 56/4
carry [1]   37/12
case [61]   12/17 12/20
 12/21 12/22 12/25 13/7
 13/10 14/2 14/6 14/8
 15/20 16/11 16/12 16/15
 17/9 17/23 18/16 18/20
 19/4 19/6 20/11 20/24
 20/25 21/19 21/20 21/21
 28/16 32/5 32/23 33/16
 33/18 34/25 35/9 37/4
 38/22 41/7 41/8 41/10
 43/16 45/16 45/17 45/19
 47/1 48/25 50/25 52/23
 53/2 53/6 53/9 53/10
 53/12 53/21 53/22 54/2
 54/3 56/1 56/10 57/5 59/3
 59/3 61/1
cases [25]   3/25 4/15 17/8
 20/1 20/3 20/13 33/17
 33/18 33/19 34/7 34/17
 35/10 37/3 37/6 41/2 41/6
 42/2 44/14 44/21 44/23
 45/17 52/1 52/25 55/2
 55/22
cast [1]   8/6
casted [1]   59/25
cause [12]   5/25 44/8 45/1
 45/9 45/16 56/14 56/17
 56/21 56/25 57/3 60/10
 60/11
cautionary [2]   7/9 15/2
census [8]   17/23 18/3
 35/9 37/3 41/7 41/8 53/22
 54/3
center [1]   42/4
century [4]   34/7 34/8
 34/15 34/16
certain [2]   10/14 58/3
certainly [3]   23/24 35/3
 52/4
CERTIFICATE [1]   62/1
certify [2]   62/2 62/7
Chadha [6]   12/3 12/5 12/6
 12/7 12/16 12/20
challenge [2]   20/17 45/20
change [2]   36/25 48/21
changed [1]   25/12
charged [1]   5/19
check [3]   37/14 40/6 42/9
checks [1]   41/25
Chenoweth [14]   28/17
 28/18 32/13 32/21 32/24
 33/13 49/24 50/2 50/6
 50/16 52/1 54/16 55/17
 55/17
child [1]   37/9
choice [1]   38/10
circle [1]   48/14
circuit [4]   28/25 32/14
 43/14 56/16
circular [1]   8/18

**C**

circumstance [2]   53/19
  54/6
circumstances [5]   11/23
  18/16 39/18 49/10 53/20
citation [1]   60/6
cite [2]   20/7 45/18
cited [7]   3/25 13/12
  14/11 17/23 54/3 58/9
  58/10
civil [1]   3/2
claim [24]   5/14 6/9 14/14
  16/15 18/6 18/13 19/7
  45/15 46/25 49/25 49/25
  50/7 51/5 51/5 51/8 51/10
  51/11 51/21 51/22 51/24
  52/21 53/3 53/4 55/17
claimed [2]   17/5 56/7
claiming [1]   36/14
claims [1]   44/25
clarify [1]   37/23
clear [8]   5/4 6/9 14/13
  33/10 33/10 56/15 57/14
  60/9
clearly [6]   13/19 14/7
  31/15 45/4 45/24 58/8
Clinton [1]   28/17
close [3]   7/22 16/23
  18/11
cognizable [7]   5/7 6/7
  14/10 16/2 16/4 45/9 51/9
Coleman [10]   34/22 46/24
  46/24 47/2 49/7 50/5
  59/16 59/18 59/20 59/21
colleague [3]   31/10 59/16
  59/19
COLLYER [1]   1/10
COLUMBIA [2]   1/1 2/3
come [12]   4/9 7/23 10/3
  23/4 23/6 33/6 43/1 43/15
  46/24 54/21 56/5 59/6
comes [5]   9/4 19/21 19/22
  43/13 48/11
comfortable [1]   34/15
coming [4]   33/19 35/25
  42/20 58/5
commend [1]   13/24
Commerce [1]   17/25
committed [1]   32/6
committee [3]   23/22 31/15
  58/9
committees [1]   56/11
common [2]   49/20 52/24
communicating [1]   25/20
compared [1]   55/3
comparison [1]   45/18
compelling [1]   47/1
compels [1]   16/17
complaining [3]   6/15 6/17
  44/6
complaint [7]   9/23 9/24
  32/18 47/14 57/2 57/4
  60/15
completely [1]   48/15
complex [4]   29/23 31/9
  33/21 36/9
comply [1]   14/24
composition [2]   18/8
  54/12
computer [1]   2/6
computer-aided [1]   2/6
concede [1]   53/24
conceded [1]   31/1
concern [1]   20/18
concluded [1]   61/20
concrete [6]   5/14 11/25
  32/3 41/12 54/2 60/22
conditions [1]   40/20
confirmation [1]   15/4
conflicts [2]   53/6 53/9
confrontations [2]   17/3
  41/4
confusing [1]   12/15
confusion [1]   34/16
congress [43]   4/4 5/18
  6/7 8/23 15/7 16/4 17/4
  29/12 31/3 31/5 31/12
  31/23 32/22 32/24 33/1
  33/3 34/5 34/24 35/4
  35/15 36/7 36/10 36/17
  37/10 37/13 38/5 38/10
  38/11 41/19 41/19 42/2
  42/24 43/7 46/1 46/3 51/7
  52/3 53/18 55/3 57/17
  58/6 58/16 61/3
congressional [3]   11/24
  11/25 32/6
consent [1]   15/3
consider [1]   17/23
considerably [1]   50/4
considered [3]   23/22
  28/25 38/4
conspicuously [1]   58/23
constituents [1]   5/13
constitute [2]   13/2 13/3
constitutes [1]   32/7
constitution [10]   2/4 9/7
  17/15 17/16 33/10 37/12
  42/19 45/2 47/19 60/10
constitutional [4]   35/5
  35/6 60/13 61/5
construed [1]   44/17
contests [1]   43/18
context [3]   34/14 36/2
  38/16
contexts [1]   38/15
continue [1]   40/5
continued [1]   2/1
continuous [1]   29/22
contrary [2]   48/24 49/12
control [2]   38/12 41/13
controlling [1]   14/12
controversies [1]   4/16
controversy [6]   13/7
  13/11 14/3 14/9 52/23
  53/12
convention [1]   35/20
conversation [4]   29/21
  42/22 42/23 42/24
conveying [1]   26/10
core [1]   60/24
correct [16]   8/11 10/10
  13/14 16/10 21/9 23/1
  23/20 24/24 27/13 27/13
  31/10 35/24 37/15 39/12
  56/1 62/2
correctly [1]   19/5
could [34]   11/16 11/24
  12/14 13/1 14/8 14/22
  15/1 15/1 15/2 15/4 18/7
  18/13 18/17 28/13 28/15
29/8 29/11 32/14 33/5
  35/6 38/13 36/4 36/21
  39/23 39/23 42/6 42/13
  51/5 52/10 52/14 55/2
  55/19 57/13 57/15
couldn't [1]   45/17
counsel [7]   31/2 31/13
  37/5 42/21 58/13 60/15
  62/7
count [1]   60/15
country [1]   37/9
counts [3]   41/23 41/24
  57/4
couple [4]   32/21 50/21
  57/25 59/17
course [16]   10/19 11/2
  11/19 14/12 14/18 14/24
  16/14 17/10 23/13 25/24
  30/14 31/25 32/11 33/22
  38/15 53/13
court [76]
Court's [3]   5/2 16/25
  32/4
courtroom [2]   34/1 43/20
courts [9]   4/15 33/4
  35/17 38/24 43/14 44/19
  52/19 56/2 61/6
cover [1]   18/24
create [4]   42/17 45/13
  56/17 60/11
created [3]   13/20 14/2
  56/21
creates [1]   55/13
creating [1]   35/21
credit [1]   58/17
credits [1]   7/9
CRYSTAL [2]   2/2 62/12
curious [1]   34/21
current [1]   14/22
cut [1]   28/9

**D**

D.C [6]   1/5 18/1 28/17
  28/25 32/13 56/16
danger [1]   61/10
dangerous [1]   61/8
date [3]   17/15 62/5 62/12
day [2]   2/1 3/20 50/13
DC [4]   1/16 1/19 1/22 2/4
dead [2]   44/14 44/14
deal [4]   11/1 42/1 58/16
  58/18
dealt [1]   37/4
debate [2]   34/23 41/1
debated [2]   6/18 22/10
decades [1]   35/14
decide [6]   4/5 8/4 16/11
  16/15 17/18 53/12
decided [9]   6/18 19/5
  22/10 22/20 22/22 25/12
  37/18 55/24 61/15
deciding [1]   59/25
decision [6]   5/2 32/22
  33/4 34/22 35/10 60/8
decisions [2]   55/23 55/24
declaratory [5]   44/8
  44/10 45/11 56/14 56/16
declare [2]   7/14 44/19
decline [3]   15/3 15/4
  29/20
declining [1]   13/9

**D** Case 1:14-cv-01967-RMC

decorative [1]   35/22
defeats [1]   56/10
defendant [3]   1/7 1/20
 52/12
defense [1]   3/5
defined [3]   37/14 42/24
 46/1
defines [1]   45/25
definitional [1]   37/10
delay [1]   57/24
demanding [1]   18/19
demonstrate [1]   40/11
denying [1]   49/18
Department [7]   1/21 17/25
 31/17 35/16 43/19 59/2
 60/25
depends [1]   7/19
deported [2]   12/20 12/21
described [3]   7/25 17/20
 24/15
desire [1]   5/11
destroy [1]   45/10
detail [2]   49/7 50/19
detailed [1]   8/5
details [1]   22/7
determination [1]   33/24
determinative [1]   39/18
dictate [1]   33/2
did [25]   14/19 14/20
 16/12 18/4 18/16 18/22
 20/8 20/9 21/8 21/10
 24/19 24/21 24/23 29/1
 31/12 31/14 32/22 34/7
 34/21 36/10 40/4 41/10
 46/7 46/8 50/13
didn't [18]   9/12 9/16
 10/20 10/23 12/25 24/1
 24/6 25/13 28/9 30/6
 34/21 41/9 44/22 46/15
 47/18 51/2 56/25 60/5
difference [1]   38/23
different [12]   6/1 6/2
 8/9 8/13 12/2 16/12 17/16
 19/7 28/5 56/1 57/7 61/8
difficulty [2]   21/2 55/5
dilution [1]   6/9
diminution [1]   52/22
direct [5]   5/18 27/16
 27/17 53/5 56/16
directed [1]   50/8
directing [1]   13/10
directly [3]   13/25 14/23
 38/13
directs [1]   7/12
disagree [15]   6/25 9/11
 10/17 14/20 20/2 21/3
 22/9 25/21 27/7 27/19
 27/22 28/1 57/25 59/16
 60/14
disagreed [1]   14/1
disagreement [10]   6/13
 7/2 7/5 7/25 10/15 10/16
 14/21 28/19 40/21 40/22
disagrees [1]   9/11
discuss [2]   6/6 52/2
discussed [8]   17/24 21/7
 22/20 22/21 30/11 53/22
 54/4 56/21
discussing [2]   49/7 49/8

discussion [2]   16/20 43/1
dismiss [3]   5/10 52/17
 57/1
dismissed [1]   18/21
disposed [1]   14/3
dispute [9]   4/19 5/5 9/6
 13/8 15/14 32/16 45/6
 47/4 55/25
disputed [1]   20/4
disputes [4]   16/21 16/25
 40/6 43/15
disrespect [1]   10/22
disrespectful [1]   10/23
dissent [5]   13/13 13/16
 14/11 14/12 53/17
distinction [2]   50/20
 51/18
distinguish [4]   18/11
 18/15 44/23 56/2
district [10]   1/1 1/1
 1/11 2/3 2/3 18/1 18/4
 18/10 55/23 62/5
DJA [9]   44/14 44/18 45/2
 45/4 45/7 45/10 45/12
 60/9 60/11
do [43]   3/21 3/22 3/22
 4/22 8/12 10/4 12/9 13/10
 13/23 14/17 15/6 15/10
 16/13 16/14 18/2 20/3
 21/10 22/4 26/2 26/4
 26/8 33/6 33/24 36/21
 36/22 36/24 36/25 37/1
 38/1 38/5 39/6 40/16 43/2
 44/7 45/13 49/22 50/3
 51/4 52/11 53/7 53/7 58/2
 59/9
Docket [1]   1/4
dodge [2]   25/3 30/8
dodging [1]   25/5
does [23]   3/12 5/18 7/13
 10/12 15/12 19/4 30/1
 31/21 31/23 35/4 35/19
 41/20 41/20 48/4 48/21
 51/6 52/17 54/19 56/17
 57/16 57/16 58/23 60/11
doesn't [19]   6/14 7/17
 10/14 15/11 19/22 20/10
 21/1 35/9 35/11 36/25
 44/11 44/11 44/24 45/12
 46/2 49/11 50/2 52/12
 61/4
doing [2]   19/16 31/24
dollars [2]   28/4 31/7
DOMA [4]   12/14 12/14
 12/16 13/3
don't [56]   3/21 3/24 4/21
 4/24 6/16 6/21 8/1 10/4
 10/25 11/8 11/17 11/17
 15/21 15/22 17/11 19/5
 19/19 19/25 20/18 21/3
 22/9 23/22 25/14 26/1
 27/7 29/12 31/8 33/11
 33/22 35/2 36/11 36/23
 38/3 39/1 39/1 39/22
 42/22 43/1 43/2 43/2
 43/16 43/22 43/25 44/5
 44/5 47/8 47/21 47/22
 51/22 52/12 53/23 55/24
 59/5 59/9 60/12 60/23
done [3]   33/3 36/22 36/25
down [6]   9/22 29/6 29/16

discussions [2]   16/6 57/15
divided [3]   59/10 59/12
 57/1
draw [2]   68/3 38/24
due [1]   38/5
during [1]   25/11
duty [1]   21/1

**E**

each [7]   3/17 20/6 20/6
 20/11 20/24 25/20 32/15
earth [1]   40/19
easy [1]   31/20
effect [1]   22/5
effectively [2]   35/22
 36/3
efficiency [1]   10/9
either [2]   25/25 41/10
ELENI [2]   1/14 3/4
else [1]   33/6
emerge [1]   61/7
emergence [1]   42/5
emphasized [1]   16/24
employed [1]   62/8
employee [2]   52/14 52/15
enact [4]   29/20 48/18
 54/21 54/22
enacted [4]   5/8 5/20
 23/24 49/21
enacting [2]   22/3 38/11
enactment [2]   21/24 38/12
enacts [1]   5/20
encouraging [1]   40/9
end [6]   11/4 16/7 33/22
 50/12 60/20
ends [1]   38/11
enforce [12]   43/21 43/22
 44/1 55/8 55/10 55/11
 55/14 55/14 56/5 56/7
 56/9 56/22
enforced [1]   22/7
enforcement [4]   18/17
 22/4 22/6 35/16
enough [2]   15/23 15/24
entire [8]   32/8 34/25
 40/15 41/15 41/18 45/8
 59/5 61/3
entirely [1]   19/18
entities [2]   13/20 57/12
entitled [1]   9/11
entry [1]   32/3
equal [1]   11/16
escaped [1]   59/18
Esquire [6]   1/14 1/14
 1/15 1/17 1/20 1/21
essentially [2]   33/1
 39/21
establish [2]   60/13 61/6
established [1]   32/3
establishes [1]   7/9
esteemed [3]   31/10 58/13
 59/16
evaluated [2]   20/12 20/24
even [17]   14/14 18/22
 19/4 19/6 33/22 44/9
 44/10 47/12 48/16 51/9
 51/23 54/17 55/25 58/2
 59/12 59/20 59/25
ever [3]   23/23 34/8 39/19
every [3]   19/17 37/9
 43/16
everybody [5]   3/7 4/2
 12/24 54/8 61/12

E  Case 1:14-cv-01967-RMC  Document 52-2  Filed 09/05/14  Page 69 of 78

everything [4]  7/18 7/19
  33/3 48/2
exactly [2]  28/16 60/6
Except [1]  12/24
Excuse [1]  6/20
execution [1]  38/12
executions [1]  5/20
executive [28]  3/12 3/14
  4/20 5/21 11/17 11/19
  11/22 13/8 16/21 17/4
  18/4 19/3 19/16 20/6
  20/16 20/21 28/22 29/14
  29/25 43/8 49/11 49/18
  50/7 50/25 53/19 54/19
  55/8 57/6
Executive's [5]  3/9 3/9
  3/13 12/7 53/18
exercise [2]  4/16 54/23
exercising [1]  60/22
exert [1]  29/25
existing [2]  11/23 54/17
exists [1]  17/19
explain [2]  35/9 35/12
explanation [1]  9/5
explication [2]  9/2 14/13
explicit [1]  58/6
explored [1]  31/1
express [3]  26/10 33/11
  43/2
expressed [2]  20/19 43/10
expressly [2]  31/21 31/25
extent [3]  8/3 10/14
  56/19
extraterritorial [1]
  45/15
extreme [1]  39/20
extremes [1]  39/22

F
face [2]  34/10 45/24
fact [28]  4/22 11/7 12/11
  16/10 22/9 24/11 25/6
  25/8 35/12 36/25 38/4
  39/18 40/12 40/15 41/2
  41/5 43/19 44/18 46/1
  52/10 52/14 52/17 53/1
  54/16 58/3 60/16 60/24
  61/9
facts [10]  9/23 24/12
  24/13 27/25 27/25 31/2
  32/2 50/3 58/3 58/4
factual [2]  20/2 20/5
factually [1]  38/2
failure [2]  48/17 55/12
fair [4]  8/3 8/4 32/12
  32/12
fairly [2]  40/23 43/5
falls [1]  52/23
familiar [4]  31/20 40/21
  49/6 59/22
far [2]  53/17 53/21
fashion [2]  37/8 57/15
fast [1]  46/9
favor [2]  33/21 38/4
FCRR [2]  2/2 62/12
federal [14]  4/20 11/23
  21/18 35/17 36/7 39/21
  45/10 48/24 49/25 57/9
  57/13 57/14 60/17 60/19

feel [3]  34/15 34/15 59/1
few [6]  46/20 51/7 57/24
fight [1]  33/15
fighting [2]  33/15 43/20
figure [2]  7/24 25/15
filed [2]  3/10 19/10
final [1]  42/10
finally [2]  33/13 59/6
financed [1]  22/1
financially [1]  62/9
find [6]  7/5 18/4 20/8
  32/4 45/4 59/4
finding [2]  11/5 35/14
fine [2]  17/17 23/8
finished [1]  4/1
fire [1]  52/15
firmly [1]  13/18
first [26]  3/19 5/6 5/9
  6/6 13/25 16/1 19/18 25/7
  31/3 32/22 32/23 33/7
  34/17 40/18 44/15 45/22
  46/22 48/7 50/22 52/1
  59/14 59/16 59/20 60/3
  61/3 61/5
fiscal [2]  24/5 25/11
five [3]  19/10 19/14
  60/15
flush [1]  19/18
follow [2]  35/10 41/6
followed [1]  38/7
follows [2]  5/9 31/22
footnote [4]  18/20 19/3
  50/23 51/3
forcefully [1]  20/7
foreclosed [1]  57/4
foregoing [1]  62/2
Forge [1]  41/3
forgive [1]  47/16
form [2]  18/3 43/3
formal [2]  33/24 58/19
formally [1]  16/15
former [1]  40/12
forms [2]  8/25 23/3
forth [3]  35/5 35/7 61/4
forward [4]  4/10 20/25
  21/25 60/24
found [1]  35/11
foundational [1]  4/14
four [3]  32/24 33/1 59/15
fourth [4]  42/3 42/5
  42/10 60/9
framers [4]  35/20 43/7
  61/9 61/10
free [1]  42/18
friends [1]  40/19
front [1]  25/14
full [8]  7/1 9/14 16/8
  20/17 33/22 33/25 34/1
  34/4
full-time [1]  9/14
fully [1]  32/16
function [3]  5/21 41/5
  41/5
fund [6]  6/18 22/22 24/23
  26/12 28/14 29/6
fundamental [2]  5/17
  21/15
funding [13]  14/17 14/23
  22/24 31/12 31/21 31/25
  40/3 40/4 40/5 41/17

funds [7]  26/14 27/5
  28/23 41/15 48/9 50/8
  55/18
further [7]  9/2 43/7
  51/17 55/1 57/25 62/7
  62/9
Furthermore [1]  60/3
FY2014 [2]  9/12 9/15

G
gave [2]  46/16 60/6
general [10]  4/16 5/10
  12/13 13/21 14/1 14/2
  18/13 18/14 21/13 54/7
generalized [3]  5/12 5/13
  21/17
generally [2]  18/17 41/13
generals [1]  33/14
generate [1]  58/18
George [1]  1/18
get [10]  9/16 24/12 26/5
  27/14 36/11 36/23 39/21
  44/5 44/10 61/16
gets [1]  7/15
getting [1]  20/15
give [4]  9/3 30/6 42/7
  46/15
given [2]  19/6 47/12
gives [1]  33/8
giving [1]  58/17
go [12]  16/19 21/4 37/21
  38/9 41/10 48/15 50/5
  50/5 53/2 59/7 60/12
  60/23
goalpost [1]  59/10
goes [3]  13/16 20/25 60/3
going [9]  3/17 4/7 15/22
  15/24 24/3 29/24 34/24
  39/8 60/7
gone [2]  22/5 28/4
good [8]  3/7 4/13 30/18
  30/19 34/13 40/8 50/3
  59/17
goodness [1]  13/17
goof [1]  11/19
got [4]  30/15 34/9 43/17
  43/23
Government [12]  3/9 4/3
  4/17 11/16 20/6 38/20
  44/13 45/22 50/24 51/15
  58/1 60/4
government's [3]  3/8 34/2
  44/9
governmental [3]  57/12
  57/14 57/16
governor [1]  59/24
granted [1]  17/7
grapple [1]  10/24
gravity [1]  42/4
great [3]  42/1 58/16
  58/18
greater [2]  51/24 52/4
ground [1]  49/20
grounds [4]  13/25 43/22
  50/23 50/24
guarantee [1]  60/24
guaranteed [1]  60/24
guess [4]  14/5 27/25
  35/18 52/23
gutted [1]  45/9

had [20]   9/13 11/5 16/8
18/2 18/5 18/6 18/7 22/3
23/13 24/16 25/16 25/16
34/24 37/3 42/24 45/5
45/15 50/8 55/18 57/6
halves [1]   44/6
handled [1]   39/7
happen [3]   10/18 39/25
60/11
happened [2]   36/8 51/11
happens [1]   8/1
hard [5]   4/23 15/23 30/6
32/13 51/23
Harrington [1]   54/16
has [42]   5/8 7/23 8/8
14/13 17/15 20/7 20/24
20/25 21/18 22/5 25/15
26/25 28/4 30/22 32/6
32/22 33/3 35/4 35/12
35/14 35/16 36/7 36/19
38/4 39/19 41/3 46/1
49/25 50/23 51/2 51/3
51/20 51/22 52/4 52/9
52/13 52/22 53/23 54/24
57/24 58/13 61/1
have [119]
haven't [7]   7/16 9/1
27/18 47/10 47/12 47/23
61/15
having [5]   14/3 15/23
26/9 45/23 46/12
Hayward [1]   44/23
he [8]   12/21 13/16 13/19
13/25 14/3 14/7 14/13
34/11
he's [1]   53/17
head [2]   10/21 10/25
hear [1]   59/2
hearing [2]   1/10 62/9
heart [1]   43/12
held [1]   29/3
helpful [1]   10/20
here [49]   3/8 3/20 4/11
5/10 5/17 5/25 8/13 9/2
10/15 11/13 12/1 12/7
13/4 13/25 13/25 15/10
15/11 15/17 15/19 17/19
19/5 19/8 19/10 20/1
20/13 20/13 21/6 25/20
26/14 30/25 32/23 33/23
34/1 36/9 40/23 43/16
43/25 44/12 45/13 47/4
49/16 49/20 49/23 49/25
50/4 51/25 55/5 55/25
56/2
here's [2]   38/9 44/19
HHS [2]   26/23 26/24
him [2]   52/14 52/15
hint [1]   47/13
his [5]   13/24 31/13 46/22
52/14 52/15
historical [2]   16/20
34/14
history [5]   16/20 16/23
17/20 35/4 61/5
hit [1]   52/14
Holder [4]   35/9 37/3 41/7
55/23
holding [2]   13/5 54/5

Honor [27]   3/7 4/8 4/11
4/22 6/3 7/16 7/21 8/14
11/2 18/25 25/4 26/18
27/19 28/7 30/16 30/18
32/11 32/20 38/19 40/18
46/6 46/18 57/21 57/23
60/20 61/11 61/19
HONORABLE [1]   1/10
hopes [1]   15/5
house [101]
House's [3]   18/2 18/21
54/13
houses [3]   15/15 17/3
25/17
how [9]   3/18 6/23 7/2
7/22 22/7 28/3 39/20 48/4
60/23
however [1]   22/23

I

I'd [4]   6/12 41/19 56/24
57/25
I'll [7]   11/18 45/20
46/16 46/19 46/23 50/5
59/17
I'm [48]   3/17 4/3 7/17
7/24 9/3 9/5 9/20 9/23
10/22 10/23 12/4 12/10
12/11 12/11 12/14 15/22
15/23 16/8 19/13 19/13
20/16 20/20 22/8 23/21
24/10 24/10 24/11 24/14
25/3 25/3 25/15 25/19
25/23 26/9 26/10 26/24
27/14 28/9 29/11 31/19
31/25 39/2 39/8 40/9
44/13 47/12 47/14 59/1
I've [6]   3/23 3/24 3/24
3/25 15/24 50/19
idea [4]   10/1 26/10 40/8
61/15
ideas [1]   61/15
identical [1]   37/5
identify [2]   5/24 56/19
ignore [1]   4/18
ignored [2]   29/8 29/11
ignoring [1]   44/21
II [2]   13/7 43/4
III [7]   4/15 5/15 14/8
17/20 21/2 51/6 52/24
illusory [1]   32/9
imagine [3]   49/6 58/15
60/23
immediately [1]   31/22
impeach [5]   39/9 39/19
39/24 39/25 40/2
impeachment [6]   38/25
39/7 39/13 39/17 39/24
40/5
implementation [5]   4/20
8/1 9/6 11/22 38/21
implemented [1]   7/3
implicated [1]   8/17
important [2]   3/22 24/12
importantly [1]   40/3
inclined [1]   32/16
include [2]   57/16 58/24
included [1]   24/2
including [1]   16/21
indeed [2]   32/13 60/16

independent [2]   35/21
42/5
individual [14]   16/3
29/12 33/18 50/17 51/1
51/19 51/21 51/22 51/25
52/5 55/2 55/2 59/3 59/8
influence [1]   29/25
information [2]   18/3 18/7
inherent [1]   56/9
initial [1]   57/1
initially [3]   10/5 17/23
23/15
injured [1]   52/9
injuries [7]   35/6 40/13
41/11 41/12 41/12 45/18
59/15
injury [24]   5/14 6/7
11/25 14/10 17/5 18/8
18/12 18/19 21/24 22/6
35/6 40/11 40/15 40/17
40/23 40/23 41/2 41/25
42/10 51/5 51/9 54/2
60/22 61/5
inquiry [1]   22/2
instance [1]   40/14
instances [1]   20/7
instead [1]   9/6
institution [3]   50/18
51/19 52/4
institutional [8]   6/9
35/5 40/13 59/3 59/11
59/20 60/1 61/4
institutionally [1]   16/15
insult [2]   9/7 40/16
insulting [1]   6/21
insures [1]   36/10
intelligence [1]   61/17
intended [1]   8/23
intending [1]   34/19
intent [1]   21/13
interbranch [3]   16/25
53/5 53/9
interconnected [2]   5/4
5/23
interest [12]   5/7 5/10
5/11 5/12 5/13 16/2 21/13
21/17 29/13 46/12 54/7
54/11
interested [1]   62/10
interesting [5]   18/10
19/6 21/20 50/23 52/7
interests [2]   8/13 53/11
interlocking [1]   21/6
internal [2]   26/19 32/18
interpretation [8]   28/6
38/21 38/24 47/18 47/19
47/23 47/25 48/3
interpreting [2]   28/12
49/24
interrelated [1]   6/6
interrupt [1]   32/10
interrupted [1]   15/24
intervene [1]   43/16
invade [1]   54/20
investigate [1]   56/3
investigations [1]   56/11
investigatory [1]   55/22
invite [1]   53/5
involve [1]   36/9
involved [1]   30/25
involves [2]   47/4 47/9

**I** Case 1:14-cv-01967-RMC

involving [1] 55/22
irrational [1] 17/7
irrelevant [3] 27/20 29/1 47/11
is [241]
isn't [5] 8/16 25/24 50/16 54/13 55/11
issue [10] 3/14 13/9 21/22 28/6 47/20 56/4 58/2 58/12 59/14 61/7
issued [1] 55/23
issues [5] 15/3 20/2 29/24 30/22 30/25
it [147]
it's [70]
item [6] 24/3 24/5 24/16 26/16 26/25 35/7
its [19] 5/7 5/12 8/17 14/9 18/8 18/12 20/12 20/24 25/12 29/25 30/23 38/1 38/10 38/11 42/24 44/17 45/22 54/11 56/17
itself [7] 5/17 18/9 42/2 42/7 44/19 54/11 60/10

**J**

JOEL [2] 1/20 3/5
JONATHAN [3] 1/17 3/5 30/20
judge [11] 1/11 4/6 10/18 18/1 19/21 19/22 20/8 20/9 20/9 35/18 39/8
judgment [5] 13/10 44/8 44/10 56/15 56/16
judgments [1] 36/16
judicial [2] 53/4 61/2
judiciary [3] 17/18 30/1 35/21
June [1] 62/12
jurisdictional [1] 57/7
jurisprudence [1] 17/20
just [55] 4/6 6/12 7/19 7/25 8/4 10/8 10/11 10/21 10/24 10/24 15/22 18/24 19/25 20/11 21/17 24/1 24/11 24/22 26/13 27/14 27/16 28/19 33/10 34/24 36/1 36/20 38/20 39/2 41/12 42/7 42/20 47/2 47/13 47/17 47/19 47/23 48/2 48/3 49/11 49/22 50/21 51/7 51/8 54/6 54/18 55/18 59/4 59/6 59/17 60/6 60/20 60/21 60/23 61/1 61/15
Justice [12] 1/21 13/12 13/15 13/17 13/23 14/11 31/17 35/16 43/19 53/16 59/2 60/25

**K**

Kansas [1] 59/22
keep [3] 15/24 33/18 42/20
keeps [2] 35/25 58/5
KERRY [1] 1/14 3/4
kinds [2] 39/3 40/13
KIRCHER [2] 1/14 3/4
know [37] 3/24 6/11 6/11

7/5 23/22 25/2 25/6 25/8 29/14 33/14 35/25 36/2 38/23 39/23 40/22 41/3 41/21 42/21 42/22 43/14 43/15 43/17 43/25 44/9 44/24 45/5 45/6 47/21 47/22 48/25 50/4 51/21 53/17 59/2 59/9 59/22 60/21
knows [3] 13/17 31/23 42/2

**L**

lack [6] 11/13 16/2 16/4 22/5 51/1 58/7
lacked [1] 51/13
lacks [9] 5/5 5/6 5/24 6/7 14/9 16/1 21/6 21/16 21/16
laid [2] 41/11 41/23
language [4] 50/3 57/10 57/13 57/15
large [2] 49/17 49/19
last [10] 25/20 30/2 33/15 33/16 33/16 33/16 39/7 44/16 56/13 59/4
later [3] 10/6 22/23 23/16
law [48] 1/18 4/5 4/20 5/8 5/11 6/8 6/13 7/2 8/1 8/22 11/23 18/14 21/14 21/18 22/23 23/5 23/18 24/11 29/13 33/7 33/8 33/10 34/14 42/14 44/16 45/13 47/18 47/18 47/20 47/22 47/24 47/25 48/25 49/21 49/25 52/24 53/6 54/7 55/8 55/10 55/14 55/15 56/7 56/10 56/18 56/22 59/17 60/8
lawful [2] 8/10 11/7
laws [5] 4/5 5/20 14/10 16/5 18/18
lawsuit [10] 3/10 3/15 16/9 19/17 30/2 52/9 52/15 56/23 59/21 59/21
lead [2] 24/19 24/21
learned [1] 37/14
least [3] 21/4 23/12 24/17
legal [8] 10/3 25/6 27/12 27/22 27/22 27/23 28/12 44/20
legally [4] 5/7 6/7 16/2 16/4
legally-cognizable [2] 16/2 16/4
legislation [10] 15/3 23/24 25/21 29/21 38/11 38/13 41/22 54/20 54/22 60/5
legislative [14] 6/10 14/9 18/14 32/19 34/20 49/14 52/22 53/2 54/1 54/20 55/6 55/8 56/9 61/2
legislator [2] 51/9 52/21
legislators [5] 50/13 51/19 51/25 53/1 54/21
legislature [8] 5/22 12/8 16/21 29/25 33/18 54/23 56/22 59/22

legislature's [1] 49/10
legitimate [2] 13/2 13/3
let [11] 3/23 5/1 6/5 23/10 32/10 37/21 37/23 38/9 44/4 46/8 52/6
let's [4] 34/18 37/8 37/20 46/12
level [1] 41/17
liberally [1] 44/17
LIEBER [2] 1/21 3/6
lieutenant [1] 59/24
like [23] 6/12 11/6 30/2 30/21 33/19 40/7 41/2 42/18 43/5 43/13 44/22 44/23 45/14 46/20 50/21 54/15 56/24 57/25 58/2 58/17 59/1 59/7 60/4
likely [1] 39/24
limit [1] 61/1
limiting [1] 38/19
limits [2] 54/22 57/11
line [15] 5/3 17/13 18/18 24/3 24/4 24/16 26/16 26/25 27/2 28/15 34/23 35/2 46/23 48/21 49/22
lines [1] 28/14
list [3] 58/15 58/16 58/20
litigate [6] 4/19 5/5 11/13 12/13 18/7 18/13
litigated [1] 57/11
little [6] 3/18 5/1 6/5 22/19 54/4 60/18
load [1] 17/11
loggerheads [1] 16/23
logic [2] 14/7 35/8
logically [1] 27/21
long [2] 16/20 18/18
look [18] 13/6 15/22 17/22 23/17 31/14 34/3 37/3 40/19 41/2 42/21 44/18 45/17 46/2 52/7 56/17 58/23 60/4 60/15
looking [1] 23/11
lose [1] 42/8
lost [2] 33/16 43/21
lot [3] 36/11 40/25 44/14
lots [2] 30/24 61/15
love [2] 3/21 34/7
Lujan [1] 40/19

**M**

ma'am [2] 6/21 37/22
machine [1] 2/6
made [16] 6/8 10/7 12/7 16/10 23/18 32/22 33/4 36/17 37/5 37/6 40/12 43/19 51/3 55/4 58/1 60/8
majority [4] 13/6 14/1 51/2 51/8
make [14] 5/4 9/10 11/18 27/17 33/9 37/8 41/20 43/2 43/11 46/2 46/20 51/17 57/14 57/24
makes [1] 38/10
making [1] 52/20
mandatorily [2] 7/12 7/14
mandatory [3] 7/11 8/23 31/16
mantra [3] 33/19 37/9 43/13

Case 1:14-cv-01967-RMC   Document 30-22   Filed 06/15/17   Page 73 of 78

**M**

manual [2]   37/13 37/13
many [6]   16/23 29/23 37/4
 38/15 38/15 39/15
Massachusetts [1]   1/22
material [1]   19/25
matter [11]   4/22 8/8 22/9
 23/22 25/6 25/8 36/24
 38/20 39/20 58/24 62/6
may [18]   1/5 4/13 11/23
 20/2 20/2 20/13 20/14
 22/2 22/2 30/8 31/13
 39/12 49/9 52/3 52/3
 52/17 53/21 54/17
maybe [3]   12/14 45/5
 51/14
MCELVAIN [4]   1/20 3/5 4/7
 46/15
me [36]   3/23 4/24 5/1 6/5
 6/21 7/18 8/19 9/3 10/17
 10/24 11/1 11/20 13/12
 19/2 23/10 24/12 25/6
 25/14 25/15 31/19 32/10
 37/21 37/23 38/9 39/13
 39/16 44/4 45/4 46/8
 47/12 47/16 47/23 48/1
 52/6 61/14 62/4
mean [29]   6/21 15/7 16/14
 18/17 19/17 20/1 20/3
 20/10 24/14 28/2 28/9
 30/6 35/3 35/8 35/14
 36/20 36/21 39/1 39/2
 44/24 47/15 49/11 50/2
 52/12 52/13 53/3 53/23
 55/17 59/4
meaning [5]   14/21 28/19
 48/17 48/19 60/18
means [6]   3/18 14/14 45/3
 48/1 49/13 60/7
meant [2]   10/22 49/2
meddling [1]   32/18
Medicare [1]   36/16
member [5]   51/21 51/22
 52/5 59/6 59/8
members [14]   16/4 29/12
 32/24 33/1 34/24 50/17
 51/1 51/7 52/2 55/2 59/6
 59/21 59/23 59/24
mentioned [2]   21/5 39/4
mentioning [1]   59/11
merely [3]   9/6 39/2 40/10
merits [18]   7/15 9/1
 10/12 11/9 11/10 24/9
 24/10 27/20 29/1 29/1
 47/2 47/10 47/11 48/11
 48/12 48/17 48/25 50/11
Miers [8]   35/9 37/3 41/6
 43/20 43/24 44/15 44/22
 55/23
might [8]   10/16 39/3 45/6
 49/9 50/20 51/10 52/5
 58/15
Miller [3]   46/24 49/7
 59/17
million [1]   32/7
mind [1]   15/23
minute [1]   23/10
misapplied [1]   50/1
misconceiving [1]   22/2
misreading [2]   47/2 49/2

mistake [1]   37/8
misused [1]   54/17
moment [3]   10/11 36/14
 47/3
money [38]   6/22 9/16 9/17
 9/21 9/23 9/24 11/7 22/10
 23/14 23/20 23/24 24/3
 24/4 24/4 24/16 24/20
 24/22 25/9 25/13 25/16
 25/17 25/17 25/22 25/25
 26/4 26/25 27/8 27/10
 28/2 28/3 28/15 29/16
 31/4 41/12 42/12 42/14
 43/10 47/15
month [2]   32/7 32/8
more [11]   3/24 5/2 5/23
 22/19 24/20 34/15 34/15
 36/4 40/3 42/5 57/13
morning [4]   3/7 4/13
 30/18 30/19
most [3]   36/6 39/24 44/22
mostly [1]   19/17
motion [7]   1/10 3/10 3/13
 31/3 45/22 57/1 58/4
mouth [1]   31/13
moving [1]   59/9
Mr. [7]   4/7 30/13 46/15
 46/15 46/21 50/16 55/21
Mr. McElvain [2]   4/7
 46/15
Mr. Turley [3]   46/15
 46/21 50/16
Mr. Turley's [2]   30/13
 55/21
Ms [2]   12/22 13/8
Ms. [1]   13/22
Ms. Windsor [1]   13/22
much [8]   3/18 34/10 35/20
 46/16 46/16 48/4 57/22
 61/18
multi [1]   29/23
must [1]   39/20
my [19]   20/15 20/16 22/24
 23/10 25/5 27/1 27/15
 31/10 37/5 37/21 42/21
 53/2 53/6 58/12 59/16
 59/18 60/3 60/14 62/3
myriad [1]   36/24
myself [1]   46/19
mystery [1]   31/19

**N**

narrow [2]   13/18 54/5
necessarily [1]   19/4
need [16]   7/7 10/4 13/16
 16/11 18/24 19/3 19/5
 25/13 30/1 35/2 40/11
 40/17 44/5 48/6 48/10
 56/17
needed [3]   10/2 14/3
 23/12
needs [2]   20/11 53/11
negotiations [1]   29/23
neither [6]   15/18 15/19
 24/2 24/4 24/15 62/7
never [11]   11/16 16/25
 30/2 31/3 34/11 35/12
 47/7 47/8 52/22 55/18
Nevermind [1]   27/15
new [7]   27/10 29/19 37/8

38/13 45/13 54/21 54/22
Newport [3]   57/5 57/5
 57/17
News [3]   57/5 57/5 57/17
next [5]   9/4 37/18 41/14
 51/14 51/14
nice [3]   4/10 4/11 61/14
nicer [1]   46/16
no [91]
nobody [3]   12/13 26/3
 43/18
nod [1]   10/21
nominees [1]   15/5
non [1]   55/10
not [141]
notably [1]   21/19
note [2]   16/10 45/20
noted [1]   16/7
notes [1]   62/4
nothing [8]   11/10 17/7
 22/4 31/7 36/21 42/6
 48/10 54/22
notion [4]   37/16 46/23
 50/20 56/8
novel [1]   44/24
now [19]   4/18 7/13 8/19
 9/19 10/1 15/9 18/20 25/7
 28/4 31/10 32/2 32/5 34/2
 36/10 38/9 38/14 41/11
 46/17 47/9
nuclear [1]   40/7
nullification [11]   38/23
 41/22 41/24 46/23 48/23
 49/3 49/9 49/11 49/13
 49/22 59/14
nullifying [1]   60/6
number [7]   3/25 14/25
 26/16 27/1 29/18 29/24
 32/15
numerous [1]   29/14
NW [3]   1/19 1/22 2/4

**O**

Obama [1]   39/10
objectives [1]   44/17
obligation [1]   42/18
obligations [1]   53/13
obtained [1]   17/15
obviously [1]   17/14
occur [1]   45/11
odd [1]   59/13
off [4]   19/14 28/10 40/7
 50/4
off/on [1]   40/7
office [2]   16/22 34/10
official [2]   2/2 17/5
officials [1]   5/19
offset [3]   6/22 26/17
 42/15
offsets [1]   24/24
oh [7]   7/18 10/3 11/7
 17/10 26/3 26/18 47/20
okay [42]   6/4 6/20 8/12
 8/18 10/8 11/14 14/16
 15/24 16/18 17/12 17/13
 17/21 19/1 21/5 22/8 23/8
 23/9 23/19 26/21 27/7
 30/4 30/7 32/10 37/20
 38/8 38/8 39/15 40/11
 42/12 44/4 46/5 46/11
 46/13 48/15 49/4 53/7

**O** Case 1:14-cv-01967-RMC   Document 30-28   Filed 06/15/   Page 73 of 78

okay... [6]   54/9 54/25
55/20 56/12 57/21 61/12
old [1]   33/14
once [4]   3/24 38/10 41/19
59/10
one [43]   12/21 12/23
13/18 14/16 15/22 17/1
17/3 19/16 21/8 25/15
26/8 29/9 30/2 31/10
31/20 31/20 31/24 33/16
34/8 36/7 36/13 37/23
39/4 42/18 43/7 43/13
44/15 50/4 50/23 50/24
51/17 54/2 55/1 55/3 55/6
57/3 57/5 58/2 58/4 59/6
59/15 59/24 61/8
ones [2]   15/10 21/25
ongoing [2]   29/22 42/22
only [11]   5/10 12/8 13/19
20/8 29/15 32/3 38/12
41/1 43/5 44/1 57/24
ooo [1]   61/21
open [2]   36/3 58/17
opinion [4]   13/6 13/24
18/10 59/11
opponent [1]   37/24
opposing [5]   31/2 37/5
42/21 58/13 60/14
opposite [1]   45/1
opposition [1]   57/2
option [3]   36/7 36/8 39/1
oral [1]   3/8
order [5]   35/23 37/18
41/17 50/7 60/25
ordered [1]   31/6
organization [1]   46/2
originally [2]   24/16 36/6
other [29]   3/20 3/22 4/2
5/3 11/23 14/25 15/3 17/1
17/1 17/16 20/1 20/1
20/13 25/20 29/20 31/24
38/9 39/20 43/5 43/9 44/4
44/5 44/20 52/2 52/11
54/23 56/18 58/9 59/24
others [1]   40/12
otherwise [4]   13/21 33/21
49/1 62/10
our [26]   9/1 9/9 10/3
10/11 11/10 16/23 17/15
17/20 17/20 17/24 20/17
24/8 25/1 27/19 31/14
32/21 39/17 42/4 46/4
48/7 48/10 51/4 56/15
57/1 58/10 60/9
out [19]   5/1 6/23 7/25
12/21 12/22 17/11 19/21
19/22 25/15 32/8 34/6
34/22 35/15 41/6 41/11
41/23 47/20 59/12 59/17
outcome [2]   16/12 62/10
outside [1]   51/15
over [20]   4/17 4/20 6/16
7/2 7/5 9/6 18/17 21/18
21/19 22/25 28/19 29/23
29/24 37/19 40/6 42/1
42/2 42/9 43/25 48/5
oversight [2]   42/9 42/10
own [9]   5/7 14/9 18/8
18/12 19/24 20/12 20/24

54/12 56/17
owners [2]   37/12 57/13

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
3/1
page [2]   31/14 31/15
pages [2]   16/19 62/3
paid [6]   7/12 7/14 8/24
23/4 23/4 32/7
pale [1]   45/18
panel [1]   18/1
papers [2]   26/19 56/15
parallel [1]   59/1
part [5]   6/11 6/11 7/11
44/5 44/23
partial [1]   34/4
partially [1]   26/4
participation [1]   38/11
particular [7]   18/3 18/6
18/12 18/16 22/7 28/20
52/25
particularized [8]   5/14
11/25 18/8 18/19 21/23
22/6 54/2 54/11
particularly [2]   31/8
46/9
parties [6]   21/20 49/20
51/9 57/11 57/14 62/8
party [12]   3/17 12/19
14/5 17/18 20/24 20/25
21/1 44/20 51/15 53/13
53/24 57/16
party's [2]   32/16 53/11
pass [5]   4/6 14/22 29/19
39/23 42/14
passage [3]   22/16 24/19
24/21
passed [3]   27/4 49/14
49/15
passing [2]   4/5 38/13
past [2]   25/20 30/9
Patient [1]   6/20
pay [1]   41/18
payment [3]   8/21 8/25
31/6
payments [11]   7/1 7/10
7/10 7/11 8/17 8/23 9/10
23/2 23/3 36/9 36/17
pays [1]   26/24
peddler's [1]   30/24
penny [1]   26/6
people [3]   24/3 39/24
46/9
perception [1]   20/21
perfectly [1]   17/17
perhaps [2]   17/15 25/19
permanent [15]   9/13 10/6
22/15 23/6 27/6 27/10
36/1 36/2 36/20 42/8 47/4
48/8 58/12 58/14 58/20
permit [2]   4/19 5/25
Perry [1]   21/19
person [1]   57/18
personal [1]   11/18
persons [2]   45/25 57/8
perspective [2]   41/14
55/13
persuasive [1]   13/24
petitioner [1]   14/5
philosophy [1]   4/4

phrased [1]   44/16
PILGRIM [2]   2/2 62/12
place [3]   24/8 25/1 47/5
places [1]   11/6
plaintiff [7]   1/4 1/14
3/4 11/24 12/1 21/16 54/1
plaintiff's [1]   28/21
plaintiffs [5]   17/24
28/18 48/22 49/23 54/3
plant [1]   40/7
play [1]   5/18
played [1]   21/24
please [6]   4/9 4/12 4/14
19/2 46/10 46/11
point [15]   6/1 6/2 20/15
20/16 25/11 27/1 32/13
33/20 51/17 55/1 56/13
58/10 59/17 60/3 60/23
pointing [1]   59/12
points [4]   46/20 50/21
55/4 57/24
political [11]   16/22 17/1
29/13 29/22 32/17 34/6
52/2 52/4 52/18 52/20
53/4
position [12]   11/15 19/12
19/14 20/8 25/7 25/12
27/12 28/13 29/4 32/21
53/18 60/9
positive [1]   44/1
possibility [3]   14/4
54/18 57/3
possible [3]   39/20 42/13
42/16
postdates [1]   18/1
power [24]   4/16 6/10 17/5
35/22 37/10 37/10 37/14
40/6 40/13 43/17 43/23
44/1 44/3 52/22 54/22
54/23 55/22 56/3 56/4
56/5 56/7 56/8 56/9 60/22
powers [7]   5/18 15/15
35/21 37/4 43/7 53/14
55/4
precede [1]   20/3
preceded [1]   44/15
precedence [2]   46/24
49/22
precedent [2]   5/6 56/16
precedents [1]   5/3
precisely [1]   28/18
preexisting [2]   27/6
27/10
preferred [1]   29/21
prefers [1]   15/4
premise [4]   3/11 8/5 20/3
20/5
presence [2]   14/4 17/18
present [7]   13/20 14/8
17/17 21/1 34/25 46/25
52/23
presentation [1]   46/22
presented [3]   13/25 19/15
61/14
presenting [2]   17/14 54/2
presentment [1]   12/8
President [18]   4/4 6/24
9/22 11/16 11/17 14/2
20/22 24/23 25/11 28/15
28/15 29/7 35/23 37/18
39/9 39/19 40/7 50/7

**P** Case 1:14-cv-01967-RMC

President's [1]  34/10
pressure [1]  52/12
pressures [1]  52/18
pretty [2]  34/21 41/12
prevailed [1]  41/9
previously [2]  53/22 62/6
price [1]  39/21
primarily [1]  32/24
primary [1]  15/25
principals [6]  23/5 31/18
 31/19 31/20 37/16 37/18
principle [5]  4/14 4/18
 5/9 38/16 38/19
principles [5]  5/17 8/22
 21/16 23/17 41/17
prior [2]  25/1 27/21
private [9]  12/19 17/18
 51/9 53/11 53/13 53/24
 54/1 57/11 57/11
probably [2]  8/3 26/23
problem [8]  27/16 34/17
 35/8 37/21 38/18 45/15
 55/13 61/14
problems [1]  61/14
procedural [1]  45/3
proceed [7]  5/25 24/1
 46/4 56/11 57/9 57/12
 57/15
proceeding [2]  16/3 54/19
proceedings [3]  2/6 61/20
 62/5
process [5]  22/21 25/12
 25/25 53/2 53/4
proclamation [1]  42/24
produced [1]  2/6
professor [1]  34/14
program [4]  7/11 8/22
 31/4 32/15
programs [1]  36/7
prohibited [1]  43/9
promise [3]  18/22 40/10
 46/16
promised [1]  47/15
proper [2]  14/5 49/13
property [1]  45/6
proponents [1]  21/21
proposal [1]  29/6
protection [1]  6/20
provide [3]  8/5 44/11
 44/11
provided [1]  62/4
providing [1]  27/4
proving [1]  3/17
provision [12]  6/19 22/3
 22/4 22/7 31/21 31/22
 31/23 36/23 42/25 53/8
 57/7 57/8
provisions [1]  6/23
public [1]  46/1
pull [1]  14/17
purpose [9]  9/16 27/1
 27/8 28/2 28/3 42/15 45/4
 45/10 45/12
purposes [5]  13/2 29/3
 31/3 42/11 58/4
purse [5]  35/22 37/10
 43/17 43/23 44/1
push [1]  24/6
put [13]  8/6 21/25 30/23
 34/11 34/14 36/1 41/14
 43/23 52/13 58/2 58/14
 58/16 58/24
puts [1]  12/6
putting [3]  31/13 41/12
 58/3

**Q**

quarter [1]  46/13
question [29]  4/3 7/18
 8/12 10/8 10/25 20/23
 22/17 22/19 22/24 23/11
 25/4 25/5 26/11 27/3
 27/15 27/20 28/5 30/8
 40/10 41/1 42/3 44/4
 51/18 53/14 53/25 55/2
 56/14 56/24 60/21
questioning [1]  32/4
questions [1]  17/17
quite [4]  15/13 31/15
 58/6 61/17
quote [4]  6/9 38/10 44/19
 48/23
quoted [1]  38/14

**R**

radical [1]  39/22
Raines [22]  5/3 6/8 14/8
 14/13 14/14 16/2 16/6
 16/17 16/24 17/19 18/2
 18/18 33/20 33/21 34/3
 34/18 34/24 41/6 49/8
 49/24 52/2 59/10
Raines' [1]  35/10
raised [3]  30/22 45/21
 60/16
raises [1]  8/12
rather [2]  45/4 59/13
rational [1]  60/21
rattle [1]  19/13
reach [2]  45/17 61/7
read [12]  3/23 3/23 3/24
 3/25 3/25 13/15 17/9
 17/11 18/22 19/9 22/23
 48/2
reading [3]  6/25 53/2
 53/6
ready [1]  46/8
real [3]  10/15 40/17 55/4
realized [1]  10/6 23/17
really [25]  4/21 4/25
 7/19 7/22 12/25 15/16
 16/23 18/22 27/24 28/6
 31/18 34/19 36/14 40/16
 40/21 44/24 45/9 46/25
 46/25 47/1 48/23 50/4
 50/17 52/7 61/16
reason [8]  13/23 25/19
 34/13 37/24 39/13 39/17
 49/17 51/24
reasoned [1]  14/7
reasoning [5]  16/2 16/17
 18/18 34/3 34/3
reasons [8]  5/4 5/24 6/6
 16/1 21/6 30/24 36/11
 56/20
rebuffed [3]  31/6 38/7
 42/25
received [1]  12/23
recently [1]  19/16
Recess [1]  46/14

recise [1]  17/6
record [3]  45/21 46/12
 49/13
recorded [1]  2/6
recourse [1]  52/4
redressable [2]  41/1
 52/10
reduction [1]  7/9
reductions [1]  15/2
refer [8]  5/2 7/7 29/13
 49/5 50/22 52/19 53/1
 54/3
reference [5]  30/1 52/20
 55/22 58/21 58/22
referenced [2]  47/5 58/13
referendum [2]  21/22
 21/25
referred [1]  18/14
referring [3]  31/25 36/15
 43/8
refers [1]  58/11
refund [4]  12/23 13/9
 36/15 42/15
refunds [1]  8/21
refuse [1]  28/1
regard [1]  42/23
regardless [1]  34/4
regime [2]  17/14 17/19
regulatory [1]  29/20
rejected [3]  33/3 35/12
 37/7
related [1]  62/7
relating [1]  18/3
relations [1]  44/20
relatively [1]  30/25
relevant [2]  50/6 50/20
rely [1]  51/4
relying [6]  27/5 27/6
 31/18 45/14 48/22 56/19
remedies [4]  29/14 52/2
 52/5 52/20
remedy [1]  39/20
removed [1]  53/21
repeal [4]  15/1 15/2
 29/19 33/7
repeat [1]  46/19
repeated [1]  21/18
repeatedly [2]  43/15
 58/13
replaced [1]  40/1
reply [2]  17/24 45/23
report [2]  31/15 58/9
Reporter [2]  2/2 2/2
represent [2]  51/2 59/5
Representative [1]  39/3
REPRESENTATIVES [30]  1/3
 1/15 3/3 3/11 3/12 3/15
 6/17 9/8 10/16 11/15
 15/10 17/25 18/5 22/10
 22/20 24/14 28/13 29/5
 30/21 33/23 33/25 34/9
 35/1 35/11 35/13 39/4
 40/15 48/5 57/24 59/7
Representatives' [1]  7/24
representing [1]  30/20
request [14]  10/5 10/7
 18/2 23/15 23/16 23/18
 23/19 24/7 24/7 25/16
 25/17 26/22 38/1 38/6
requested [1]  24/17
require [2]  9/2 33/11

**R** Case 1:14-cv-01967-RMC

requirement [1]   5/15
reserved [1]   5/21
resolution [1]   32/17
resolve [3]   15/21 53/5
 53/12
respect [3]   12/17 31/11
 38/5
respectfully [2]   35/18
 57/25
respective [1]   15/15
respects [1]   32/22
respond [2]   29/16 56/24
responded [1]   50/19
response [10]   19/18 19/23
 19/24 20/17 20/20 34/2
 46/20 48/2 48/7 50/16
responses [1]   39/3
responsive [1]   22/16
rest [3]   58/2 58/25 61/11
rests [1]   34/23
result [3]   16/17 48/21
 58/19
results [1]   33/2
resumed [1]   46/14
retreated [1]   20/8
return [1]   15/25
review [4]   13/3 13/21
 21/21 38/22
right [42]   4/6 7/20 8/2
 8/4 11/12 15/9 15/14
 15/21 18/6 21/15 22/25
 23/14 23/25 24/5 26/2
 26/7 27/3 27/22 27/23
 28/24 33/24 35/15 37/11
 38/9 40/24 40/24 42/15
 43/21 44/7 48/12 48/16
 48/20 50/10 50/14 50/15
 51/13 51/16 51/17 52/16
 56/20 57/12 57/20
rightly [1]   55/24
rights [5]   12/19 19/24
 44/20 53/12 57/11
rise [1]   42/3
role [5]   5/19 15/12 21/24
 22/3 54/14
ROSEMARY [1]   1/10
ROUMEL [2]   1/14 3/4
rounded [1]   48/15
RPR [2]   2/2 62/12
rule [3]   5/11 21/14 42/18
rules [2]   52/24 60/17
Rumsfeld [1]   45/15
running [1]   40/7

**S**

said [33]   10/9 13/7 16/11
 21/23 22/2 23/20 25/9
 25/9 25/17 28/2 31/13
 32/14 33/4 34/22 35/4
 36/23 37/24 39/19 40/4
 40/16 41/3 42/21 43/8
 43/11 43/15 45/23 47/7
 47/8 49/8 49/9 57/10 60/4
 60/7
same [16]   8/24 8/24 15/12
 16/17 23/5 23/6 26/13
 28/16 41/15 42/20 43/21
 51/10 53/14 55/16 57/12
 57/15

saw [2]   45/22 56/3
say [20]   9/23 10/23 11/8
 11/17 14/16 25/11 26/5
 28/1 28/13 29/10 34/19
 34/21 37/16 41/20 42/13
 42/20 42/25 43/1 43/16
 43/24 43/25 44/2 46/12
 47/9 47/18 48/6 48/10
 50/24 51/23 52/3 52/24
 53/3 59/2 59/10 61/13
saying [17]   9/24 10/24
 23/1 23/24 25/22 28/12
 29/11 33/14 35/25 44/2
 45/5 45/8 50/16 51/3 59/5
 60/5 61/3
says [18]   9/24 14/23
 20/22 26/3 26/12 31/15
 31/17 33/5 33/22 38/10
 42/14 42/21 44/19 44/23
 53/17 58/8 60/4 61/6
Scalia [4]   13/12 13/15
 13/17 53/16
Scalia's [2]   13/23 14/11
scheme [1]   36/9
School [1]   1/18
second [8]   5/9 7/7 23/17
 31/4 33/3 36/8 48/9 59/1
secretaries [3]   7/23 8/9
 8/13
secretary [2]   10/9 40/1
section [6]   43/4 43/5
 43/8 45/25 58/11 58/21
see [3]   19/23 27/24 58/21
seek [1]   15/5
seeking [1]   21/20
seem [1]   33/17
seems [1]   33/15
seen [1]   30/2
Senate [16]   6/23 12/12
 13/1 13/17 13/19 15/11
 15/15 22/20 24/2 25/9
 25/16 25/22 29/5 29/12
 34/9 39/8
Senator [3]   40/12 51/12
 51/13
sense [2]   41/20 46/3
sentence [1]   25/20
separate [2]   24/25 56/25
separation [3]   5/18 53/14
 55/4
serious [2]   8/7 36/4
seriously [1]   4/24
session [1]   48/19
set [1]   61/14
settled [1]   5/6
shake [1]   10/24
shall [2]   14/23 26/12
shalt [1]   42/14
shared [1]   54/8
shares [1]   5/12
she [2]   12/23 12/25
she'll [1]   40/1
Sheila [1]   3/5
SHELIA [1]   1/21
shifting [1]   42/4
shock [1]   36/14
shorthand [1]   2/6
should [12]   3/14 3/18 8/6
 10/3 12/25 34/11 39/9
 47/25 50/24 53/2 53/5
 58/24

shouldn't [3]   41/3 47/13
 53/14
shrink [3]   41/4 53/8
 53/14
shutter [1]   39/5
side [1]   59/24
sides [1]   41/22
sideways [1]   52/7
signed [5]   6/24 9/22
 24/23 25/10 29/7
significant [2]   16/7
 33/23
significantly [1]   51/20
similar [1]   12/17
simple [1]   31/1
simply [6]   40/5 45/21
 49/22 49/24 56/19 57/4
since [2]   40/23 46/9
sir [2]   4/7 4/10 30/4
 30/17 30/19 46/5 57/22
sitting [2]   33/25 52/8
situation [1]   36/4
six [4]   19/10 19/14 34/24
 59/6
smooth [1]   6/15
so [84]
some [17]   19/17 24/15
 25/11 31/20 37/15 43/15
 45/6 48/17 49/9 49/10
 49/17 50/19 50/20 51/20
 53/20 56/9 56/18
somebody [1]   52/8
somehow [1]   58/5
something [9]   25/21 29/6
 30/24 33/6 35/24 37/8
 52/11 59/12 60/4
sometimes [4]   19/21 19/22
 20/9 26/4
somewhat [1]   33/23
somewhere [1]   47/22
sorry [11]   3/9 7/17 9/20
 10/22 12/4 19/13 22/8
 25/3 25/23 28/9 47/12
sort [2]   40/14 42/18
sorts [2]   16/24 38/15
sought [2]   61/9 61/10
source [5]   8/24 8/24 23/5
 56/18 58/8
sources [1]   23/6
south [1]   35/3
speak [1]   4/7
special [3]   21/24 22/3
 58/15
specific [4]   9/16 11/24
 21/10 22/19
specifically [6]   23/13
 26/14 26/25 30/23 31/11
 48/18
specter [1]   18/14
spend [2]   26/5 28/15
spending [4]   28/4 28/23
 43/9 50/8
spends [1]   58/16
spent [6]   9/25 26/12
 29/17 35/14 35/20 47/15
sphere [1]   34/7
spin [1]   5/1
stake [1]   53/11
stakes [1]   12/20
stand [1]   10/20
standard [1]   60/8

**S** Case 1:14-cv-01967-RMC

standing [70]
standing being [1]   20/4
start [3]   3/14 34/18
   39/23
state [1]   31/21
state's [1]   19/24
stated [3]   31/12 44/15
   62/6
statement [8]   4/24 8/3
   8/5 16/6 21/3 37/23 38/14
   53/8
statements [1]   58/1
states [16]   1/1 1/3 1/11
   2/3 3/3 19/10 19/12 19/14
   19/23 20/6 20/19 20/21
   30/21 36/3 45/2 62/4
stating [2]   43/6 51/5
statues [1]   49/19
status [1]   59/12
statute [18]   5/20 6/20
   14/23 18/7 24/20 24/21
   24/22 24/23 26/12 26/19
   27/4 27/5 27/9 28/20
   29/19 44/11 45/25 57/14
statutes [2]   14/22 49/17
statutory [2]   28/6 49/12
stays [1]   37/13
stenographic [1]   62/4
step [2]   43/7 58/14
sticker [1]   36/14
still [8]   11/13 28/15
   29/3 31/18 31/19 33/17
   50/12 59/17
stop [3]   36/21 40/3 40/4
straight [2]   24/12 47/14
Street [1]   1/19
strong [3]   47/1 48/25
   59/3
strongly [1]   60/14
study [1]   50/5
subject [1]   38/21
submissions [1]   36/18
submit [4]   37/2 42/17
   43/4 61/8
subpoena [5]   37/4 43/21
   44/2 56/4 56/5
subpoenas [1]   43/23
subsidies [1]   7/10
subsidy [2]   8/25 23/3
substantive [2]   10/15
   56/18
such [5]   5/13 34/19 36/19
   52/1 56/8
sue [17]   3/12 8/2 11/16
   11/21 11/24 17/1 18/17
   19/19 20/18 20/22 29/9
   34/12 49/10 52/11 52/13
   52/13 53/18
sued [2]   34/8 34/11
suffered [1]   18/12
sufficient [3]   32/15
   42/11 60/13
suggest [5]   33/13 35/2
   39/1 46/3 47/25
suggestion [1]   36/19
suing [4]   51/1 54/6 55/13
   55/14
suit [4]   17/4 55/7 55/10
   56/9

supervision [2]   4/16 5/18
support [3]   5/13 49/23
   51/6
supports [1]   32/21
suppose [3]   36/22 37/1
   47/14
supposed [2]   44/17 52/21
Supreme [15]   5/2 6/8 13/2
   13/6 13/20 18/19 18/21
   18/21 21/18 22/1 41/8
   41/10 43/14 49/2 49/8
sure [6]   16/8 23/21 24/14
   26/25 43/3 43/11
surely [1]   53/16
surprise [1]   20/10
surprised [1]   39/16
survive [1]   3/16
susceptible [1]   32/17
swallow [1]   38/22
switch [1]   40/8
SYLVIA [2]   1/6 3/3
Synar [1]   55/6
system [7]   7/9 17/7 23/2
   41/18 42/4 61/8 61/9
systems [1]   17/16

**T**

take [14]   3/19 10/23
   19/14 22/21 27/25 39/3
   43/24 44/18 46/7 46/8
   46/12 47/13 52/8 58/14
taken [3]   20/7 62/5 62/9
takes [1]   13/18
taking [2]   4/23 20/16
talk [1]   33/4
talked [1]   59/15
talking [12]   12/10 12/11
   12/11 24/10 24/11 24/11
   30/9 36/15 40/14 46/9
   48/3 56/6
tat [1]   51/3
TATELMAN [2]   1/15 3/4
tax [6]   7/9 8/21 12/23
   13/9 36/15 42/15
tell [3]   4/24 8/19 48/1
tend [1]   33/14
tenure [2]   16/22 34/10
term [6]   49/3 49/9 51/14
   57/10 57/19 58/22
terminate [1]   32/14
terms [10]   20/12 20/24
   37/12 41/11 41/13 41/20
   41/23 41/24 51/15 60/18
Texas [1]   19/13
than [6]   3/24 42/6 51/23
   51/25 52/5 52/11
thank [23]   6/4 11/3 28/11
   30/4 30/5 30/10 30/16
   30/17 32/20 39/15 46/5
   46/6 46/13 46/18 57/21
   57/22 57/22 57/23 61/12
   61/12 61/16 61/18 61/19
that [450]
that the [1]   49/25
that's [57]   6/23 6/24
   7/24 8/3 8/4 8/8 8/18 9/1
   9/24 12/1 13/5 15/8 15/11
   15/13 17/6 17/19 20/21
   22/18 22/18 22/25 23/8
   25/1 26/7 26/8 26/9 26/18
   26/19 27/12 28/3 28/5

supervision [2]   4/16 5/18
supports [no-show...]  ...
   133/20933/23 3491 36/7
   36/14 36/16 37/11 38/14
   38/22 41/4 42/16 43/3
   44/8 45/9 47/2 47/9 47/9
   47/19 49/19 53/6 55/8
   55/16 57/4
their [10]   19/24 24/15
   27/25 27/25 29/13 40/13
   51/2 55/12 55/14 57/4
them [13]   4/1 11/18 12/15
   27/25 29/9 33/9 33/25
   34/11 34/12 36/12 36/21
   49/1 57/5
then [28]   4/9 10/5 11/14
   13/3 14/3 20/8 21/1 28/5
   31/6 31/21 33/13 36/2
   36/13 38/7 39/25 41/25
   42/20 43/24 51/14 51/21
   53/13 56/4 56/13 58/19
   59/6 60/17 60/20 61/6
theoretically [1]   42/16
theory [10]   11/10 12/7
   27/22 27/22 27/23 48/7
   48/10 48/22 51/4 57/2
there [86]
there's [41]   8/20 10/10
   10/15 11/24 15/14 19/12
   19/15 20/12 20/13 23/2
   24/25 25/1 27/2 31/7 33/7
   33/14 34/19 34/23 36/11
   36/21 38/19 38/23 39/13
   39/15 40/4 40/21 40/22
   40/25 41/22 42/1 42/22
   47/4 49/13 51/5 51/18
   51/23 54/18 55/4 56/8
   56/15 58/7
thereafter [1]   38/12
therefore [2]   22/5 32/16
these [21]   7/1 7/10 7/12
   9/10 9/23 16/24 17/8 33/9
   35/21 36/9 36/16 37/4
   37/11 39/22 40/6 41/4
   41/6 42/11 43/21 45/11
   48/9
they [103]
they're [18]   7/14 15/11
   23/3 33/8 37/7 37/7 39/11
   39/14 44/2 45/5 45/13
   45/14 52/20 55/13 55/14
   55/25 56/1 60/16
they've [3]   43/23 52/9
   59/4
thing [8]   4/2 34/19 40/14
   42/20 43/13 44/1 48/9
   55/16
things [12]   3/20 3/22
   14/16 34/6 36/17 36/24
   37/11 38/9 39/16 45/14
   48/6 59/18
think [42]   3/13 3/18 3/21
   4/21 4/24 6/12 8/6 9/6
   11/7 12/6 13/24 15/13
   19/25 20/11 21/20 22/23
   22/24 23/21 26/9 30/8
   30/13 30/15 31/8 34/13
   38/18 39/2 41/11 44/13
   45/12 46/22 47/8 47/18
   47/20 47/21 50/3 50/19
   51/14 51/20 52/19 53/20
   53/23 56/15

| | | |
|---|---|---|
| **T** | 46/15 46/31 50/16<br>Turley's [2] 30/15 33/21 | 45/3 49/9<br>used [9] 39/21 57/19 |
| thinking [1] 4/1 | turn [1] 10/12 14/3 24/3 | 58/23 |
| third [4] 5/16 31/6 36/13 | 30/13 51/6 | usually [1] 53/17 |
| 59/14 | turned [2] 32/25 37/17 | **V** |
| this [98] | turning [1] 55/21 | |
| those [24] 5/23 19/12 | turns [5] 10/14 11/10 | valid [1] 51/5 |
| 19/22 20/19 20/21 27/4 | 35/15 47/20 48/10 | validly [1] 49/21 |
| 31/19 32/2 33/19 34/7 | twice [2] 17/1 43/11 | Valley [1] 41/2 |
| 34/17 35/10 36/24 37/6 | two [10] 16/22 17/17 | varied [1] 29/23 |
| 40/22 42/11 50/13 50/17 | 21/11 29/22 30/11 33/2 | versa [1] 49/15 |
| 52/4 52/19 55/24 56/2 | 40/22 44/6 48/6 51/14 | versus [11] 3/3 5/3 17/25 |
| 58/13 58/18 | type [5] 45/6 51/8 53/3 | 21/19 28/17 45/14 46/24 |
| thou [1] 42/14 | 58/18 59/9 | 49/7 49/8 54/16 55/6 |
| though [3] 15/6 15/7 51/9 | types [2] 40/6 44/25 | very [39] 3/21 4/23 6/14 |
| thought [5] 16/25 23/12 | **U** | 8/7 10/20 12/1 12/17 |
| 24/3 39/5 48/2 | | 13/18 13/18 13/24 14/7 |
| three [12] 5/4 5/23 6/6 | U.S [4] 1/15 1/21 17/6 | 14/13 16/7 16/20 16/23 |
| 11/6 15/25 16/19 18/1 | 17/24 | 18/11 18/11 19/7 19/7 |
| 21/6 21/11 30/12 31/2 | ultimate [1] 22/18 | 19/7 19/18 33/22 34/10 |
| 32/2 | ultimately [3] 34/5 38/4 | 34/13 38/14 40/8 45/25 |
| three-judge [1] 18/1 | 41/8 | 47/1 48/25 55/11 56/1 |
| through [7] 12/8 16/19 | unappropriated [1] 28/23 | 56/1 56/15 57/22 59/11 |
| 22/20 28/14 28/14 41/2 | uncertain [1] 58/5 | 60/8 60/17 61/10 61/18 |
| 56/23 | uncontested [1] 32/14 | vice [1] 49/15 |
| throw [1] 34/21 | unconventional [1] 44/25 | view [8] 9/1 10/11 10/13 |
| thrust [1] 20/17 | undefined [1] 37/16 | 13/18 24/8 30/25 39/17 |
| thumping [1] 43/12 | under [29] 5/6 8/15 8/20 | 46/4 |
| Thursday [1] 1/5 | 8/22 14/7 16/1 17/15 | viewed [1] 32/3 |
| ticket [2] 35/7 39/21 | 17/16 18/16 18/18 21/15 | views [1] 27/19 |
| tied [2] 22/15 55/19 | 23/5 25/1 27/22 27/22 | vigor [1] 61/17 |
| time [16] 3/18 4/23 8/1 | 27/23 36/23 42/18 46/4 | vindicate [3] 5/11 21/13 |
| 9/14 15/23 23/11 25/7 | 49/23 49/23 51/4 54/15 | 29/12 |
| 29/24 30/6 35/20 38/24 | 54/16 55/5 56/20 56/25 | vindication [1] 21/17 |
| 42/6 45/22 58/16 61/5 | 57/6 57/17 | violate [2] 5/17 42/19 |
| 62/5 | underlies [1] 46/22 | violated [1] 45/2 |
| times [2] 16/23 38/15 | underlying [2] 15/1 29/19 | violation [1] 60/13 |
| today [3] 3/8 39/16 60/2 | underscore [1] 52/21 | Virginia [1] 19/13 |
| TODD [2] 1/15 3/4 | understand [7] 6/12 7/4 | vote [11] 23/23 24/1 29/8 |
| together [5] 8/24 23/4 | 9/4 24/12 27/1 27/14 | 29/10 41/18 49/14 55/14 |
| 23/4 26/24 30/24 | 50/15 | 58/19 59/23 59/25 60/1 |
| token [1] 26/13 | understanding [2] 9/9 | voted [6] 6/22 9/22 28/3 |
| told [4] 25/15 37/9 43/22 | 48/8 | 29/6 29/16 47/14 |
| 47/23 | understands [2] 35/19 | voting [1] 40/13 |
| too [1] 39/6 | 48/24 | **W** |
| took [4] 18/11 18/15 | understood [2] 43/11 | |
| 23/16 50/12 | 52/22 | wade [1] 19/5 |
| tools [3] 14/25 29/24 | unified [2] 7/11 8/22 | wagon [1] 30/24 |
| 54/23 | unilaterally [1] 20/22 | wait [3] 6/20 9/19 29/1 |
| tough [1] 34/22 | unique [4] 43/5 54/5 | 60/16 60/17 |
| towards [1] 42/4 | 54/11 54/14 | walk [1] 43/25 |
| traceable [1] 40/23 | UNITED [9] 1/1 1/3 1/11 | want [17] 3/19 7/5 11/17 |
| track [3] 35/19 41/20 | 2/3 3/2 30/20 36/3 45/2 | 11/17 21/10 22/23 24/11 |
| 45/12 | 62/4 | 25/5 25/8 35/24 36/1 39/1 |
| traditional [1] 52/24 | universe [2] 59/1 60/21 | 43/16 44/5 44/7 46/7 46/8 |
| transcript [3] 1/10 2/6 | University [1] 1/18 | wanted [1] 4/2 |
| 62/3 | unless [2] 26/3 42/23 | war [1] 33/15 |
| transcription [1] 2/6 | unnecessary [3] 10/7 | was [102] |
| treasury [5] 26/23 26/24 | 23/18 24/7 | Washington [6] 1/5 1/16 |
| 31/7 36/3 42/8 | unquote [1] 48/23 | 1/18 1/19 1/22 2/4 |
| treated [2] 8/23 49/14 | until [1] 29/1 | wasn't [5] 13/21 30/8 |
| trouble [3] 11/5 26/10 | up [12] 4/4 7/7 10/1 10/3 | 39/4 57/1 59/20 |
| 46/16 | 10/11 18/20 22/8 23/10 | way [15] 10/12 12/21 |
| true [6] 24/18 28/5 29/2 | 34/11 38/22 47/3 47/14 | 12/22 12/23 17/22 26/8 |
| 45/1 50/12 62/2 | upon [1] 40/20 | 29/15 34/21 43/8 51/6 |
| try [3] 11/18 33/1 46/19 | us [5] 19/19 20/18 37/17 | 52/21 53/15 57/19 59/12 |
| trying [13] 7/24 25/3 | 43/20 60/21 | 59/13 |
| 25/15 26/10 26/11 27/14 | USC [6] 8/20 44/18 46/2 | ways [3] 29/18 51/20 |
| 30/8 37/7 37/7 39/2 44/21 | 48/8 58/11 58/20 | 52/11 |
| 45/13 60/25 | use [9] 22/21 29/25 37/15 | we [101] |
| TURLEY [6] 1/17 3/5 30/20 | 40/5 42/14 44/21 44/24 | |

**W** Case 1:14-cv-01967-RMC

we'll [1]   52/8
we're [14]   3/8 3/19 25/20
  26/3 26/15 27/5 27/6
  28/11 31/17 36/22 40/14
  51/3 60/5 60/5
we've [15]   9/13 10/3
  14/11 21/7 30/2 30/11
  36/22 36/22 36/25 37/3
  41/11 41/23 54/4 55/4
  56/21
weaker [1]   59/13
weird [1]   59/11
well [44]   4/9 4/23 5/1
  6/11 6/14 7/4 9/3 10/13
  11/7 12/3 12/16 14/20
  15/9 19/25 20/5 21/8
  21/23 22/12 27/24 33/5
  33/7 33/20 34/13 37/20
  39/5 40/9 42/9 42/16 43/1
  44/13 44/23 45/5 47/7
  50/2 50/6 50/16 50/25
  52/6 53/1 53/16 53/25
  54/22 59/5 59/7
went [11]   13/15 17/6
  18/20 23/23 26/16 29/6
  34/20 41/8 43/7 49/7
  59/13
were [26]   5/16 12/20
  13/19 16/22 21/21 21/25
  23/17 29/1 32/15 37/6
  37/6 40/13 43/20 48/3
  49/18 50/17 50/25 51/1
  55/5 55/18 55/23 55/24
  56/2 56/11 58/1 59/11
weren't [2]   50/11 60/1
West [1]   19/13
what [89]
what's [8]   18/10 18/20
  19/6 19/24 20/20 40/15
  50/6 51/23
whatever [6]   6/20 22/22
  27/1 48/19 52/3 54/23
whatsoever [4]   10/12 15/2
  28/22 55/19
when [14]   20/8 25/10
  31/17 31/20 31/24 41/10
  42/21 43/20 49/8 52/19
  53/1 56/6 59/1 60/3
where [32]   7/5 7/13 8/19
  11/6 11/23 11/24 20/1
  31/25 32/1 32/13 33/19
  34/8 34/18 34/23 34/24
  34/25 35/3 36/17 41/3
  43/6 44/16 44/19 44/22
  45/15 47/21 49/1 53/10
  53/21 54/6 56/10 57/5
  58/8
wherever [1]   35/2
whether [26]   3/15 7/20
  8/4 8/8 8/9 10/15 14/1
  14/4 16/3 16/11 20/20
  28/8 28/11 31/11 34/4
  38/2 42/3 44/7 47/4 51/6
  51/7 51/18 53/25 56/24
  58/6 58/7
which [46]   5/3 5/12 5/14
  6/14 7/15 9/1 9/2 9/7
  10/9 13/8 17/23 18/1 18/2
  18/7 23/11 24/9 29/14

30/1 33/29 33/21 36/5
36/8 37/21 38/10 40/20
42/10 43/21 45/3 45/11
45/25 49/6 49/9 50/8
51/11 53/5 53/21 55/14
56/3 56/18 56/18 58/2
58/10 58/20 58/22 59/18
62/8
who [8]   10/1 13/18 15/10
  21/25 26/25 29/7 51/1
  57/8
whoever [1]   19/19
whole [3]   14/15 16/3 55/3
whose [1]   12/19
why [25]   4/24 4/24 5/24
  6/12 8/5 9/5 13/3 14/14
  15/11 16/1 21/6 26/9 30/2
  34/1 34/11 38/16 39/13
  43/1 43/2 43/2 43/11
  43/17 47/13 52/17 54/13
will [11]   3/15 11/19
  28/13 37/19 45/21 46/12
  49/5 58/21 61/11 61/13
  61/16
Windsor [7]   12/22 12/22
  13/5 13/6 13/8 13/22
  35/12
withdrawn [1]   23/16
withdrew [1]   38/1
within [2]   52/23 57/19
without [14]   9/22 12/12
  13/1 17/18 20/3 32/6 33/8
  36/18 41/18 41/19 43/10
  48/1 49/12 54/19
won't [2]   40/16 57/24
wonderful [2]   61/13 61/18
word [1]   16/8
words [1]   31/13
work [2]   44/22 61/16
workings [1]   4/17
worse [3]   42/6 51/20
  51/23
would [60]   4/9 5/17 5/25
  9/2 12/12 12/20 12/22
  14/5 14/24 16/12 17/7
  17/16 22/22 30/21 32/5
  33/13 34/22 35/2 35/14
  35/18 36/20 36/21 37/2
  38/16 38/22 39/24 39/25
  40/5 40/20 41/2 42/8
  42/11 42/13 42/17 42/17
  43/4 45/10 46/3 46/10
  46/11 46/20 46/24 49/1
  49/1 49/16 50/21 50/22
  51/17 53/21 54/3 55/1
  56/13 57/14 58/2 58/10
  59/10 59/12 60/20 61/7
  61/8
wouldn't [7]   12/21 12/23
  29/10 40/1 40/3 47/15
  52/15
write [1]   39/1
writes [1]   13/19
written [1]   6/14
wrong [4]   39/12 44/14
  44/14 45/24

**Y**

yeah [2]   34/2 37/16
year [2]   37/19 41/14
years [2]   30/3 59/4

yes [11]   4/8 6/2 6/5 15/9
  26/20 30/11 32/20 37/22
  39/18 40/18 51/13
yet [1]   61/15
you [210]
you'd [1]   52/24
you're [13]   7/20 8/3
  20/15 22/2 23/1 33/24
  36/15 40/20 44/6 45/8
  56/6 59/5 59/8
you've [6]   3/25 7/18
  27/15 43/17 47/7 61/13
your [58]   3/19 4/8 4/11
  4/13 4/22 6/2 6/14 7/16
  7/21 8/14 9/3 10/13 10/14
  10/21 10/25 11/2 11/5
  11/14 18/23 18/24 19/24
  20/23 22/16 22/18 25/4
  25/4 25/6 26/11 26/18
  27/3 27/12 27/16 27/19
  28/7 28/12 29/4 30/15
  30/16 30/18 32/11 32/20
  33/21 37/23 38/18 40/18
  46/6 46/18 47/8 47/17
  47/17 48/2 57/21 57/23
  60/20 61/11 61/13 61/17
  61/19

**Z**

zero [1]   51/23